## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                                    :
TRUEPOSITION, INC.,                                 :
                                                    :
                              Plaintiff,            :
                                                    :
                    v.                              :
                                                    :       CIVIL ACTION
                                                    :
LM ERICSSON TELEPHONE COMPANY                       :
(TELEFONAKTIEBOLAGET LM ERICSSON),                  :
QUALCOMM, INC.,                                     :       No. 11-4574
ALCATEL-LUCENT USA, INC.,                           :
EUROPEAN TELECOMMUNICATIONS                         :
STANDARDS INSTITUTE, and                            :
THIRD GENERATION PARTNERSHIP                        :
PROJECT a/k/a 3GPP,                                 :
                                                    :
                              Defendants.           :
_____:


### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                **MARCH 6, 2012**

Presently before the Court is the Motion for Protective Order filed by European

Telecommunications Standards Institute ("ETSI"), the response in opposition by Plaintiff,

Trueposition, Inc. ("Trueposition"), and ESTI's reply.  For the reasons provided below, ESTI's

Motion for a Protective Order will be denied.

## I.   FACTUAL AND PROCEDURAL HISTORY[1]

TruePosition describes itself as a "leading innovator in developing and marketing high

accuracy location products that operate over cellular telecommunications networks."  (Am.

Compl. ¶ 3.)  It devotes substantial resources annually to research and development for

_____

[1] A more in-depth factual and procedural background is provided in the Court's prior Memorandum
Opinion dated January 6, 2012.  See Trueposition, Inc. v. LM Ericsson Tel. Co., No. 11-4574, 2012 WL
33075 (E.D. Pa. Jan. 6, 2012).

positioning technology.  (Id. ¶ 10.)  TruePosition alleges that ETSI is a "not-for-profit" standard-setting organization ("SSO")[2]  located in France comprised of more than 700 member companies from 62 countries, including countries outside of Europe.  (Id. ¶ 15.)  According to TruePosition, "[t]he business of ETSI is, fairly and impartially, to create globally applicable standards for information and telecommunications technologies, including for mobile telecommunications." (Id.)

This action stems from the alleged anticompetitive conduct of major players in the international telecommunications market within the context of a SSO.  (Id. ¶¶ 1-9.)  TruePosition alleges that LM Ericsson Telephone Company (Telefonaktiebolaget LM Ericsson) ("Ericsson"), Qualcomm, Inc., and Alcatel-Lucent USA, Inc. ("ALU") (collectively, the "Corporate Defendants") conspired to exclude its positioning technology, Uplink Time Difference of Arrival ("UTDOA"),[3] from standards promulgated by a SSO, 3GPP.  (Id.)  According to TruePosition, the Corporate Defendants were able to exclude UTDOA by collaboratively manipulating 3GPP's processes and procedures.  (Id. ¶ 6.)  TruePosition further alleges that ETSI and 3GPP ("SSO Defendants") participated in the conspiracy to exclude UTDOA from 3GPP standards by failing in their obligations to ensure that the Corporate Defendants complied with 3GPP Rules.  (Id. ¶¶ 114-122.)

TruePosition filed a Complaint on July 20, 2011.  Therein, TruePosition alleged that the conduct described above violated United States antitrust law giving rise to two causes of action:

---

[2] Third Generation Partnership Project ("3GPP") is a not-for-profit SSO located in France that is in business to "fairly and impartially . . . create global standards for mobile telecommunications technologies based on objective technical merit."  (Am. Compl. ¶ 14.)

[3] "Positioning technology" refers to technology used to locate mobile handsets.

(1) violations of Section 1 of the Sherman Act, 15 U.S.C. § 1; and (2) violations of Section 2 of

the Sherman Act, 15 U.S.C. § 2.  TruePosition's Section 1 claim was asserted against all

Defendants, while TruePosition's Section 2 claim was only asserted against Ericsson and ALU.

A majority of Defendants moved to dismiss the Complaint.  Instead of dismissing the

action, we allowed Trueposition to file an amended complaint curing any defects set forth in our

January 6, 2012 Memorandum Opinion.  Notably, ETSI moved for dismissal on the premise that

we lack personal jurisdiction over it.  In our Memorandum Opinion, we concluded that

TruePosition's claim of jurisdiction was not frivolous, but limited jurisdictional discovery was

needed in order to determine whether personal jurisdiction exists over ETSI.    Trueposition filed

an Amended Complaint on February 3, 2012.  (See Am. Compl.)  The Amended Complaint

contains only one count asserted against all Defendants entitled "Combination Conspiracy in

Violation of Section 1 of the Sherman Act (15 U.S.C. § 1 )."  (Id. ¶¶ 139-153.)

## II.    DISCUSSION

### A.    The Hague Convention on Taking Evidence Abroad in Civil or Commercial Matters, 28 U.S.C.S. § 1781, Mar. 18, 1970

The matter before the Court is a discovery dispute between TruePosition and ETSI.  ETSI

has moved for a protective order on the premise that the jurisdictional discovery between the

parties must be secured through the Hague Convention on Taking Evidence Abroad in Civil or

Commercial Matters, 28 U.S.C.S. § 1781, Mar. 18, 1970 ("Hague Evidence Convention").

TruePosition argues that the discovery should proceed in accordance with the Federal Rules of

Civil Procedure.  For the reasons that follow, the jurisdictional discovery shall be conducted

pursuant to the Federal Rules.

The Hague Evidence Convention "prescribes certain procedures by which a judicial

authority in one contracting nation may request evidence located in another contracting state."[4] Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 524 (1987); see also In re Automotive Refinishing Paint Antitrust Litig., 358 F.3d 288, 299 (3d Cir. 2004).  Notably, the Hague Evidence Convention is not mandatory and "was intended to establish optional procedures that would facilitate the taking of evidence abroad." Id. at 538.  It "does not provide exclusive procedures for obtaining documents and information located in a foreign signatory nation's territory." In re Automotive Refinishing Paint, 358 F.3d at 300 (citing Aerospatiale, 482 U.S. at 533-36).  "Accordingly, the Convention does not deprive the District Court of its jurisdiction to order, under the Federal Rules of Civil Procedure, a foreign national party to the proceeding to produce evidence physically located within its territory." Id. (citing Aerospatiale, 482 U.S. at 539-40).

Significantly, the United States Supreme Court in Aerospatiale rejected a rule of first resort to the Hague Evidence Convention holding that the determination of whether to resort to the Hague Evidence Convention or the Federal Rules of Civil Procedure requires "prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that such resort will prove effective." Aerospatiale, 482 U.S. at 546.  "Aerospatiale rejects . . . a rule of first resort favoring the Convention on grounds of international comity and respect for 'judicial sovereignty' of the signatory nation in which evidence is sought is located." In re Automotive Refinishing Paint,

---

[4] There is no disagreement amongst the parties that both the United States and France are contracting states under the Hague Evidence Convention.  ETSI alleges, under the Hague Evidence Convention, that Letters of Request are the best method of taking discovery.  "Upon receipt of a Letter of Request, which must provide specific information regarding the lawsuit and information sought to be discovered, the signatory state 'shall [then] apply the appropriate measure of compulsion as is customary for the execution of orders issued by the authorities of its own country.'" Pronova Biopharma Norge AS v. Teva Pharm. USA, Inc., 708 F. Supp. 2d 450, 452 (D. Del. 2010) (quoting Hague Evidence Convention, Art. 3, 10).

358 F.3d at 300 (citing Aerospatiale, 482 U.S. at 542-43).  In Aerospatiale, the Supreme Court

identified the following five factors to be considered in a comity analysis: (1) the importance of

the documents or information requested to the litigation; (2) the degree of specificity of the

requests; (3) whether the information originated in the United States; (4) the availability of

alternative means of securing the information; and (5) the extent to which noncompliance with

the requests would undermine important interests of the United States, or compliance of the

requests would undermine important interests of the state where the information is located.[5]  482

U.S. at 543-44 & n.28.  Courts construing the holding in Aerospatiale have articulated two

additional factors to be considered: (1) good faith of the party resisting discovery; and (2) the

hardship of compliance on the party or witness from whom discovery is sought.  See Strauss v.

Credit Lyonnais, 249 F.R.D. 429, 454-56 (E.D.N.Y. 2008); In re Global Power Equipment Group

Inc., 418 B.R. 833, 847 (Bank. D. Del. 2009) (citing Strauss, 249 F.R.D. at 454-56).  It is

important to note that no one factor is dispositive.  In re Global Power, 418 B.R. at 847.

ETSI, as the proponent for the Hague Evidence Convention's application in this case,

bears the burden of persuasion as to the optional use of its procedures.  See In re Automotive

Refinishing Paint, 358 F.3d at 305; see also In re Vitamins Antitrust Litig., 120 F. Supp. 2d 45,

52 n.7 (D.D.C. 2000) (listing cases).  "The burden is not great, however, since the 'Convention

procedures are available whenever they will facilitate the gathering of evidence by the means

authorized in the Convention.'"  Id. (quoting Aerospatiale, 482 U.S. at 541).  When deciding

whether to require parties to resort to the Hague Evidence Convention, courts must be mindful of

"unnecessary, or unduly burdensome, discovery."  Id.

---

[5] The five factors listed above, elucidated by the Supreme Court in Aerospatiale, are set forth in the
Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c).

Importantly, we also point out that there is no exception to the Aerospatiale holding for jurisdictional discovery.  See In re Automotive Refinishing Paint, 358 F.3d at 302 ("[W]e see no legal barrier to exercising the discretion given to trial courts by Aerospatiale in cases of jurisdictional discovery.")  "It is well established that the trial court has inherent power and jurisdiction to decide whether it has jurisdiction."  Id. at 303.  "[T]he distinction drawn . . . between 'merits' discovery and 'jurisdictional' discovery [is] predicated on a false dichotomy of having and not having jurisdiction, [and] amounts to no real difference because the court has jurisdiction for either type of discovery."  Id.

   **B.     Analysis**

ETSI argues that it "faces potential criminal liability under French law if it responds to discovery requests that do not comply with the Hague Convention."  (ETSI Mem. Law Support Mot. Protective Order at 1.)  ETSI points to a French Blocking Statute, French Penal Code Law No. 80-538, which is a French criminal statute that prescribes sanctions for French nationals who disclose information during foreign discovery without using the procedures established under the Hague Evidence Convention.  See French Penal Code Law No. 80-538.  Specifically, the French Blocking Statute provides:

> Article 1A of French Penal Code Law No. 80–538
>
> Subject to applicable treaties or international agreements, it is prohibited for a natural person having the French citizenship or residing in France as well for a director, representative, agent or an employee of a legal entity having its registered office or a branch in France, to communicate by writing, orally or in any other form, in whatever place or location, to Foreign Public Authorities any documentation or information in economic, commercial, industrial, financial or technical fields, whenever such communication may be detrimental to the sovereignty, security or essential economic interests of France or to Public Order as specified if need be by the

6

administrative authority.

Article 1, bis

Subject to applicable treaties or international agreements and laws and regulations, it is prohibited for anyone to request, look for, or transmit in writing, orally or in any other form, any document or information in economic, commercial, industrial, financial or technical fields for the purpose of gathering evidence in view of foreign civil or administrative proceedings or in the framework of said proceedings.

Article 3

Subject to heavier penalties provided under the law, any infringement to provisions of Article 1 and 1 bis of this Statute shall be punishable by a term of imprisonment of six months and/or a fine of 18,000 Q.

French Penal Code Law No. 80-538.  Additionally, ETSI asserts that a proper balancing of French and United States interests pursuant to the comity analysis in Aerospatiale shows that due respect should be given to France's sovereign interest in ensuring that discovery in France is conducted in compliance with the Hague Evidence Convention.  (ETSI's Reply at 2.)

Trueposition argues that the procedures pursuant to the Hague Evidence Convention do not apply, even in light of the French Blocking Statute.  Relying upon the Supreme Court decision in Aerospatiale, and the United States Court of Appeals for the Third Circuit's holding in In re Automotive Refinishing Paint, Trueposition argues that its jurisdictional discovery was properly propounded under the Federal Rules of Civil Procedure.  (Trueposition's Mem. Law Opp'n ETSI's Mot. for Protective Order at 2.)  Trueposition argues that the French Blocking Statute does not mandate that jurisdictional discovery in this case be governed by the Hague Evidence Convention, and that the comity factors specified in Aerospatiale overwhelmingly support discovery pursuant to the Federal Rules of Civil Procedure.  (Id. at 13.)

7

The French Blocking Statute is not dispositve of whether the Hague Evidence Convention should be utilized in this case.  As noted by the Supreme Court in Aerospatiale, blocking statutes "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." Aerospatiale, 482 U.S. at 544 n.9; see also In re Automotive Refinishing Paint, 358 F.3d at 300 (stating that Aerospatiale reiterates the well-settled view that blocking statutes do not deprive U.S. courts of their jurisdiction to order a foreign national party to produce evidence located within its country through the Federal Rules); Schindler Elevator Corp. v. Otis Elevator Co., 657 F. Supp. 2d 525, 533-34 (D.N.J. 2009) (party's reliance on Swiss Penal Law unavailing pointing out that foreign statutes prohibiting discovery do not bind American courts); In re Aspartame Antitrust Litig., No. 06-1732, 2008 WL 2275531, at *4 (E.D. Pa. May 13, 2008) (finding that a Swiss blocking statute does not mandate that the Hague Convention should be utilized over the Federal Rules of Civil Procedure); Strauss, 249 F.R.D. at 454 ("The Supreme Court examined . . . the French Blocking Statute, and ordered discovery notwithstanding the penalties that could be imposed.")  Specifically addressing the French Blocking Statute, the Aerospatiale Court stated that "[i]t is clear that American courts are not required to adhere blindly to the directives of such a statute."  Aerospatiale, 482 U.S. at 544.

Our analysis of the comity factors as they pertain to the specific facts of this case shows that several factors favor Trueposition, while others favor ETSI.  The documents in question deal with jurisdictional discovery regarding ETSI's contacts with the United States and are relevant discovery.  In fact, such limited jurisdictional discovery, which is not nearly as intrusive as merits discovery, has been ordered by this Court so that we can determine whether personal jurisdiction

8

over ETSI is proper.  See In re Automotive Refinishing Paint, 358 F.3d at 302 ("[W]e see no

legal barrier to exercising the discretion given to trial courts by Aerospatiale in cases of

jurisdictional discovery.").  The discovery requests are specific and adequately tailored to the

jurisdictional issue at hand.  The majority of the documents at issue, or possibly all of the

documents, originated in France because ETSI's only offices and its employees are located in

France.

        As for the availability of alternative means of securing the information, "the Federal

Rules are the normal methods for litigation involving foreign national parties," In re Automotive

Refinishing Paint, 138 F.R.D. 288; however, the Hague Evidence Convention was intended to

establish optional procedures for facilitating the taking of evidence abroad.  See Aerospatiale,

482 U.S. at 538.  Even though both the Federal Rules and the Hague Evidence Convention are

means of securing information, it must be noted that the procedures required pursuant to the

Hague Evidence  Convention are much more likely to be time-consuming than the procedures

under the Federal Rules.  See In re Automotive Refinishing Paint, 358 F.3d at 300 ("Aerospatiale

notes that in many situations, the Convention procedures would be unduly time-consuming and

expensive, and less likely to produce needed evidence than direct use of the Federal Rules."); see

also In re Air Cargo Shipping Servs. Antitrust Litig., No. 06-1775, 2010 WL 1189341, at *2

(E.D.N.Y. Mar. 29, 2010) ("[T]he outcome of a request pursuant to the Convention is by no

means certain, and making the request will undeniably result in delays of unknown, and perhaps

considerable, duration.")  Both parties in this case have a strong interest in an efficient and

speedy means of obtaining this jurisdictional discovery so that the threshold issue of personal

jurisdiction over ETSI can be resolved, and this case, in which time is of the essence, can

progress forward.

Regarding the hardship of compliance potentially undermining important interests of the United States and France, we find that several strong national interests of the United States are implicated.  This action involves allegations of alleged anticompetitive conduct of major players in the international telecommunications market within the context of a conspiracy claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.  There is a strong national interest in enforcing the policies of free market competition that underlie the Sherman Act, especially in an antitrust case involving the international telecommunications market.  Trueposition has an interest in bringing these claims in a timely fashion before an American court and, similarly, the United States has an interest in fully and fairly adjudicating such suits before the federal judiciary.  The French interest is a sovereign interest in managing access to information within its borders, as well as attempting to protect its citizens from discovery in foreign litigation.  As previously stated, the discovery in this case is limited to jurisdictional discovery and does not seem to be the vexatious discovery that the French are attempting to protect their citizens from with the French Blocking Statute.  Upon consideration of the interests of both countries, it is clear that France's relatively weak national interest in prohibiting disclosure of information regarding jurisdictional contacts of a SSO with worldwide membership is outweighed by the significant national interests of the United States outlined above.

The final factors regarding the good faith of the party resisting discovery and the potential hardship that compliance with the discovery request imposes upon ETSI weigh slightly in favor of ETSI.  ETSI is a French entity and, thereby, it falls under the purview of the French Blocking  Statute which specifically prohibits production of documents relating to foreign

10

judicial or administrative proceedings.  "The prospect that the foreign litigant would face criminal penalties rather than civil penalties weighs in favor of the objecting party."  In re Global Power, 418 B.R. at 849 (quoting Strauss, 249 F.R.D. at 454).  "If, however, the objecting litigant is a party to the action, courts accord that party's hardship less weight."  Id. (quoting Strauss, 249 F.R.D. at 454).  Notably, as Trueposition points out, ETSI has presented no evidence that the French Blocking Statute has ever been enforced in the context of a federal suit, not even an antitrust case, filed in the United States regarding jurisdictional discovery.[6]  In addition, ETSI does not present any evidence showing that it faces a significant risk of prosecution by complying with Trueposition's discovery requests under the Federal Rules of Civil Procedure.  In fact, there are "other courts [that] have held 'the French Blocking Statute does not subject defendant to a realistic risk of prosecution, and cannot be construed as a law intended to universally govern the conduct of litigation within the jurisdiction of a United States court.'"  In re Global Power, 418 B.R. at 850 (quoting Bodner v,. Paribas, 202 F.R.D. 370, 375 (E.D.N.Y. 2000)).

In this case, the interests of comity as set forth by the Supreme Court in Aerospatiale weigh in favor of using the Federal Rules of Civil Procedure.  The strong national interest of the United States in enforcing the policies of free market competition that underlie the Sherman Act,

---

[6] In support of its argument that the French Blocking Statute is enforced, ETSI refers to In re Advocat "Christopher X," Cour de Cassation, Chambre Criminelle [Criminal Chamber of Supreme Court], Paris, Dec. 12, 2007, No. 07-83228, a 2007 case in which the French Supreme Court upheld the conviction and €10,000 fine against an attorney found to have violated the French Blocking Statute.  (ETSI Mem. Law Support Mot. Protective Order at 7 n.13.)  The facts in this case significantly differ from the facts in Christopher X.  This case involves a Court Order for jurisdictional discovery, and does not involve allegations of false statements as found in Christopher X.  Also, numerous courts have discounted the fear of criminal prosecution in light of the ruling in Christopher X as a basis for permitting French litigants to invoke the Hague Evidence Convention.  See In re Air Cargo, 2010 WL 1189341, at *3; In re Global Power, 418 B.R. at 849; Strauss, 249 F.R.D. at 450.

especially in an antitrust case involving the international telecommunications market, is significant in comparison to the weak national interest of France in prohibiting disclosure of information regarding jurisdictional contacts of a French entity with worldwide membership and protecting its citizens from burdensome discovery in foreign litigation.  Likewise, the United States has a strong interest in fully and fairly adjudicating Sherman Act suits before the federal judiciary in an efficient and timely fashion.  The French sovereign interest of managing access to information within its borders, as well as attempting to protect its citizens from discovery in foreign litigation, pales in comparison to the interests at stake for the United States.  In light of the above, and being sensitive to the fact that ETSI is a foreign litigant attempting to follow the laws of its own nation, we conclude that ETSI has failed to meet its burden of persuasion that the Hague Evidence Convention should be followed in this case.  Accordingly, ETSI is ordered to comply with Trueposition's discovery requests as set forth in the Federal Rules of Civil Procedure.

## III.   <u>CONCLUSION</u>

ETSI's Motion for a Protective Order requiring Trueposition to withdraw its jurisdictional discovery under the Federal Rules of Civil Procedure, and pursue such discovery in accordance with the Hague Evidence Convention, is denied.  A party seeking a protective order under Federal Rule of Civil Procedure 26(c) has the burden of establishing good cause.  Fed. R. Civ. P. 26(c); <u>see</u> <u>also</u> <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994) ("In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection.").  Additionally, as previously explained, the party seeking the application of the Hague Evidence

Convention rather than the Federal Rules bears the burden of persuasion.  <u>See</u> <u>In re Automotive Refinishing Paint</u>, 358 F.3d at 305.  ETSI has failed to meet either burden.  Consequently, its Motion for Protective Order is denied, and the jurisdictional discovery at issue shall proceed according to the Federal Rules of Civil Procedure.  ETSI's request for oral argument is denied.

An appropriate Order follows.