## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRUEPOSITION, INC.,

                   Plaintiff,

     v.

LM ERICSSON TELEPHONE COMPANY
(Telefonaktiebolaget LM Ericsson), QUALCOMM
INC., ALCATEL-LUCENT, S.A., THIRD
GENERATION PARTNERSHIP PROJECT a/k/a
3GPP, and EUROPEAN TELECOMMUNICATIONS
STANDARDS INSTITUTE,

                  Defendants.

CIVIL ACTION
2:11-cv-04574-RFK

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT EUROPEAN TELECOMMUNICATIONS
## STANDARDS INSTITUTE'S MOTION TO DISMISS
## TRUEPOSITION, INC.'S AMENDED COMPLAINT

A/74933641.1

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ....................................................................................1

II.    ARGUMENT.............................................................................................................3

    A.     TruePosition's Response to ETSI's Jurisdictional Arguments is
          Fundamentally Misdirected ..............................................................................3

    B.     TruePosition's Opposition Confirms Its Failure to State a Sherman Act
          Conspiracy Against ETSI ..................................................................................6

          1.     TruePosition's Attempt to Hold ETSI Vicariously Liable for the
                Conduct of 3GPP's Members Fails as a Matter of Law ............................7

          2.     TruePosition's Reliance on *Hydrolevel* is Misplaced.................................9

    C.     The Opposition Does Not Excuse TruePosition's Failure to Establish
          Antitrust Standing...............................................................................................11

    D.     The Opposition Establishes that TruePosition's Claims are Not Ripe for
          Judicial Review...................................................................................................13

III.   CONCLUSION ............................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Soc. of Mech. Eng., Inc. v. Hydrolevel Corp.,*
456 U.S. 556 (1982) ........................................................................................2, 9, 10, 11

*Council of Alt. Political Parties v. Hooks,*
179 F.3d 64 (3d Cir. 1999) .........................................................................................4, 5

*Devex Corp. v. Gen. Motors Corp.,*
857 F.2d 197 (3d Cir. 1988) ...........................................................................................4

*Eichorn v. AT & T Corp.,*
248 F.3d 131 (3d Cir. 2001) .........................................................................................12

*Helicopteros Nacionales de Columbia v. Hall,*
466 U.S. 408 (1984) ................................................................................................2, 3, 4

*In re Fla. Cement and Concrete Antitrust Litig.,*
746 F. Supp. 2d. 1291 (S.D. Fla. 2010) ..........................................................................7

*In re Ins. Brokerage Antitrust Litig.,*
618 F.3d 300 (3d Cir. 2010) ............................................................................................7

*In re Processed Egg Prods. Antitrust Litig.,*
08-md-02002, 2012 WL 1443625 (E.D. P.a. Apr. 24, 2012) ...........................................2, 8, 9

*In re Processed Egg Prods. Antitrust Litig.,*
821 F. Supp. 2d 709 (E.D. Pa. 2011).....................................................................*passim*

*James Julian, Inc. v. Raytheon Co.,*
557 F. Supp. 1058 (D. Del. 1983) ...................................................................................9

*Martorano v. PP & L Energy Plus,*
334 F. Supp. 2d 796 (E.D. Pa. 2004)............................................................................13

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.,*
62 F.3d 967 (7th Cir. 1995) .............................................................................................9

*Pa. ex rel. Zimmerman v. PepsiCo., Inc.,*
836 F.2d 173 (3d Cir. 1988) ............................................................................................1

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.,*
819 F.2d 434 (3d Cir. 1987) ............................................................................................5

TABLE OF AUTHORITIES
(continued)

Page

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.,*
   113 F.3d 405 (3d. Cir. 1997) ................................................................................. 13

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.,*
   608 F. Supp. 2d 1166 (N.D. Cal. 2009).................................................................... 7

*U.S. v. Paramount Pictures, Inc.,*
   334 U.S. 131 (1948) ................................................................................................. 9

*Warfield Phila., L.P. v. Nat'l Passenger R.R. Corp.,*
   Civil Act. No. 09-1002, 2009 WL 4043112 (E.D. Pa. Nov. 20, 2009) ................................... 12

Defendant European Telecommunications Standards Institute ("ETSI") submits this Reply Brief in further support of its Motion to Dismiss the Amended Complaint of plaintiff TruePosition, Inc. ("TruePosition") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (Dkt. 102), and in response to TruePosition's Opposition (Dkt. 105) to that Motion.[1]

## I.     PRELIMINARY STATEMENT

TruePosition's Opposition merely confirms the pleading deficiencies of the Amended Complaint as to ETSI. Indeed, it is now clear that TruePosition's claim against ETSI has not evolved at all since the original Complaint was dismissed, and is just as devoid of relevant factual allegations as it was when TruePosition first brought it nine months ago. Also, the arguments TruePosition asserts in opposition to ETSI's motion for the most part either recast the allegations of the Amended Complaint or are even contradicted by TruePosition's own pleading. Such arguments, therefore, offer no cure to the Amended Complaint's deficiencies. *See Pa. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

More particularly, for the following reasons TruePosition's Opposition offers no argument that cures the deficiencies of its Amended Complaint, which should be dismissed.

*First*, TruePosition makes no attempt to contest ETSI's showing that the jurisdictional allegations in the Amended Complaint are insufficient to justify the exercise of general personal jurisdiction over ETSI. Instead, TruePosition speculates only that jurisdictional discovery may

---

[1] Upon the completion of jurisdictional discovery, ETSI reserves the right to further brief issues in support of its motion to dismiss pursuant to Rule 12(b)(2). ETSI respectfully submits, however, that no further briefing should be

provide grounds to question this Court's prior ruling under *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984), that ETSI's core business is to develop standards for use in the European Union, and thus only those contacts relating to ETSI's core business are jurisdictionally relevant.  (Dkt. 105 at 2-3).  TruePosition's speculation, however, is entirely misdirected, both because it is contrary to the law of the case doctrine, and because it mischaracterizes the scope and purpose of the jurisdictional discovery permitted by the Court.

*Second*, TruePosition makes no attempt to argue that the Amended Complaint alleges concerted action by ETSI in furtherance of the alleged conspiracy among the Corporate Defendants, as required by Section 1 of the Sherman Act.  Rather, TruePosition simply reaffirms that its antitrust claim against ETSI relies entirely on its "acquiescence by inaction" theory – *i.e.*, that ETSI should be held vicariously liable for the alleged conduct of the Corporate Defendants undertaken in 3GPP because ETSI did nothing to stop such conduct.  But this theory is flawed as a matter of law, has been most recently expressly rejected by the Eastern District of Pennsylvania in *In re Processed Egg Products Antitrust Litigation*,[2] and is not supported by the Supreme Court's *Hydrolevel* decision[3] (or any other authority).  TruePosition's explanation of its theory is also contradicted by the factual allegations in the Amended Complaint.

*Third*, TruePosition does not identify any factual allegations or arguments that address its failure adequately to allege antitrust standing.  Rather, the Opposition confirms that TruePosition has not alleged and cannot allege any harm to competition that is not entirely speculative and conclusory, and that TruePosition's claims of harm, at best, concern only purported (yet not

---

allowed in connection with its motion pursuant to Rules 12(b)(1) and 12(b)(6).

[2] *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 745-50 (E.D. Pa. 2011) ("*Processed Egg Prods. I*"); *In re Processed Egg Prods. Antitrust Litig.*, 08-md-02002, 2012 WL 1443625, at *4 (E.D. P.a. Apr. 24, 2012) ("*Processed Egg Prods. II*"); *see also infra* pp. 7-9.

A/74933641.1

plausibly alleged) injury to TruePosition, and not to competition generally as required to state a claim under the Sherman Act. Moreover, the Opposition offers no contradiction to ETSI's showing that the Amended Complaint fails to allege a causal connection between the alleged conspiracy and any harm that TruePosition has suffered or might suffer in the future, and that TruePosition has not alleged and cannot allege that TruePosition and ETSI compete in the same market.

*Finally*, TruePosition's response to ETSI's ripeness argument ignores the inherently speculative nature of the allegations in the Amended Complaint concerning the harms TruePosition only *might* suffer in the uncertain event U-TDOA technology is excluded from the 4G/LTE specification. TruePosition argues that it has been and is presently being harmed by the alleged delay in the standardization of its technology, but it does not (and cannot) resolve the inconsistencies between such an argument and the factual allegations in the Amended Complaint, which themselves disprove any claim that TruePosition has suffered any hardship from the failure (to date) to include U-TDOA technology in the 4G/LTE specification.

## II. **ARGUMENT**

### A. **TRUEPOSITION'S RESPONSE TO ETSI'S JURISDICTIONAL ARGUMENTS IS FUNDAMENTALLY MISDIRECTED.**

TruePosition does not even attempt to rebut ETSI's showing that the jurisdictional allegations in the Amended Complaint are insufficient to justify the exercise of general personal jurisdiction over ETSI. Instead, TruePosition responds to ETSI's Rule 12(b)(2) argument solely by speculating that it may obtain evidence through jurisdictional discovery to challenge this Court's prior ruling under *Helicopteros*, 466 U.S. at 409-12, that only contacts that are central to

---

[3] *Am. Soc. of Mech. Eng., Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982).

ETSI's core business of developing standards for use in Europe are jurisdictionally relevant. (Dkt. 105 at 2-4; *see* Dkt. 86 at 32-34). This position fundamentally misconstrues the law of the case doctrine as respects the Court's prior ruling concerning the scope of ETSI's core business, and the scope and purpose of the jurisdictional discovery permitted by the Court in its January 6, 2012 Order (the "Order").

ETSI has not argued that this Court is constrained from considering additional relevant evidence that TruePosition may obtain in the limited jurisdictional discovery permitted by the Court. But that does not mean that it would be appropriate for TruePosition to expand the scope of discovery beyond that permitted and ask the Court to revisit its prior ruling based on the same legal arguments previously made and rejected regarding the core scope of ETSI's business.

More specifically, the Court has already determined as a legal matter that only certain types of contacts by ETSI with the United States are jurisdictionally relevant under *Helicopteros* – *i.e.*, the business of developing standards for use in Europe. (Dkt. 86 at 30-32). That ruling is the law of the case, and "[a]lthough a court has the power to revisit prior decisions ... 'as a rule courts should be loathe to do so in the absence of extraordinary circumstances, such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Devex Corp. v. Gen. Motors Corp.*, 857 F.2d 197, 200 (3d Cir. 1988) (following law of the case doctrine, and declining to disturb earlier ruling in favor of defendant) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). Reconsideration of a prior ruling is therefore justified only "in extraordinary circumstances such as where: (1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice." *Council of Alt. Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) (holding reconsideration was warranted because statute that was subject of

previous ruling had been amended) (citing *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998)).[4]

TruePosition does not argue that there are "extraordinary circumstances" that would justify reconsideration of this Court's ruling under *Helicopteros* today. Rather, it seeks to reargue the same position as previously rejected that ETSI's relevant contacts with the United States should be considered broadly regardless of their nature. Specifically, TruePosition argues that it has been permitted to take jurisdictional discovery to find evidence that "ETSI believes and consistently publishes that its mission extends beyond the European Union and involves promulgating *worldwide* standards, a significant aspect of which is applicability to the important United States market." (Dkt. 105 at 2-3 (emphasis in original)). This argument, however, is misdirected for two reasons.

*First*, as commented, this Court has already considered and rejected TruePosition's argument that ETSI's business "includes something akin to a lobbying component, the goal of which is to expand the reach of its standards to foreign nations, including the United States." (Dkt. 86 at 30). The Court rejected that argument not for lack of evidence, but instead because it would "hold nearly all activity by an entity is the 'bread and butter' of its business," and that "is not what the law mandates." (*Id.* at 31, citing *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 436 (3d Cir. 1987)). As a result, evidence cumulative to that which TruePosition already offered in support of its rejected theory will not make the theory any more

---

[4] Although TruePosition cites *Hooks*, in which the Third Circuit recognized that deviation from the law of the case doctrine is appropriate only in extraordinary circumstances (179 F.3d at 69), TruePosition discusses the doctrine as if it were entirely discretionary, and not a limitation at all. (Dkt. 105 at 3). That is not consistent with the Third Circuit's application of the law of the case doctrine in *Hooks* or the other cases cited above. In each of those cases, the courts carefully applied the "extraordinary circumstances" standard, and reconsidered a prior ruling only if such circumstances existed.

legally sound, and certainly would not constitute "extraordinary circumstances" warranting reconsideration by the Court of its prior ruling on this point under *Helicopteros.*

*Second*, TruePosition ignores that this Court authorized jurisdictional discovery of ETSI *only* as to a very specific issue – whether ETSI's relationships with certain U.S. entities "cause it to engage in 'continuous and substantial' contacts with the United States" sufficient to warrant the exercise of personal jurisdiction.  (Dkt. 86 at 33-34).  In order for such contacts to be jurisdictionally relevant under the Court's prior ruling, they must be central to ETSI's core business of developing standards for the European Union.  (*Id.* at 30-32).  Thus, while new evidence may potentially emerge regarding ETSI's relationships with the relevant U.S. entities for which the Order permitted discovery, such evidence would not go to the legal question already decided under *Helicopteros* concerning the core nature of ETSI's business.

## B.    TRUEPOSITION'S OPPOSITION CONFIRMS ITS FAILURE TO STATE A SHERMAN ACT CONSPIRACY AGAINST ETSI.

TruePosition does not even attempt to argue that the Amended Complaint alleges concerted action by ETSI in support of the alleged conspiracy, admitting that its allegations of concerted action are limited to the three Corporate Defendants.  (Dkt. 105 at 16-17, 19).  Rather, TruePosition confirms that its sole theory as to ETSI is that liability should be imputed to ETSI vicariously because of ETSI's purported inaction in not stopping the alleged conspiracy by the Corporate Defendants in connection with standards development activities in 3GPP, not in ETSI. TruePosition simply argues the conclusion that ETSI "had authority and an obligation to prevent rules violations by the corporate defendants, but did nothing."  (*Id.* at 17, 19).  This theory of antitrust conspiracy is flawed legally and factually.

1.    **TruePosition's Attempt to Hold ETSI Vicariously Liable for the Conduct of 3GPP's Members Fails as a Matter of Law.**

Where an entity is "not plausibly alleged … to have themselves entered into unlawful agreements" – and the Opposition confirms that TruePosition has made no such allegation as to ETSI – "there must be some 'other basis [for] imputing § 1 liability to'" that entity. *Processed Egg Prods. I*, 821 F. Supp. 2d at 747 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010)).  Here, TruePosition seeks to impute liability to ETSI based on the argument that "ETSI *is* 3GPP for all practical purposes."  This is so, says TruePosition, because ETSI provides administrative support for 3GPP and is one of its organizational partners, and ETSI should therefore be held liable for the conduct of 3GPP's members within 3GPP.  (Dkt. 105 at 16-17) (emphasis in original).  This argument fails for three reasons.

*First*, there is no legal authority to support the application of a "single enterprise" theory of liability to separate affiliated defendants such as ETSI and 3GPP as TruePosition seeks to do here.  This position has been expressly rejected.  *See, e.g., Processed Egg Prods. I*, 821 F. Supp. 2d at 745-50 ("Plaintiffs' proposed basis for imputing liability [to allegedly affiliated defendants] premised on a 'single enterprise' theory is unsupported by legal theory….").[5]  For example, in the *Processed Egg Prods.* litigation, the plaintiffs argued that liability under Section 1 of the Sherman Act could be imputed to defendants not alleged to have participated in the conspiracy based solely on their affiliation (*i.e.*, overlapping ownership and control, and participation in an alleged "vertical[ly] integrat[ed]" enterprise) with a defendant alleged to be involved in the conspiracy.  The court twice rejected that position, finding that it had no legal support.  *See*

---

[5] *See also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 341 n.44 (a defendant cannot be held liable under the Sherman Act based solely on its corporate relationship with an alleged co-conspirator); *In re Fla. Cement and Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1324 (S.D. Fla. 2010) (same); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1186 (N.D. Cal. 2009) (same).

*Processed Egg Prods. I*, 821 F. Supp. 2d at 745-46, 748-50; *Processed Egg Prods. II*, 2012 WL 1443625, at *4.

*Second*, the specific factual allegations on which TruePosition bases its argument that ETSI should be held vicariously liable for the conduct of 3GPP's members – namely that ETSI and 3GPP having overlapping memberships, that ETSI provides administrative support to 3GPP, including shared offices and employees, and that ETSI is an organizational partner of 3GPP – are indistinguishable from those twice rejected by this court in the *Processed Egg Prods.* litigation. *See Processed Egg Prods. I*, 821 F. Supp. 2d at 750-55; *Processed Egg Prods. II*, 2012 WL 1443625, at *5.  There, the plaintiffs made virtually identical allegations in an attempt to hold one trade association (UEA) liable for alleged anticompetitive conduct that took place within two other trade association defendants (UEP and USEM).  *See Processed Egg Prods. I*, 821 F. Supp. 2d at 750-55.  It was alleged, for example, that UEA, UEP and USEM had overlapping membership, leadership and staff, that the same individual was president of all three associations, that the three associations held meetings at concurrent times and locations, that UEA provided financial support for the others defendants' projects, and even that UEA leadership and staff participated directly in the alleged anticompetitive conduct.  *Id.* at 750-52.  The court held that these allegations did not state a claim against UEA, however, because the plaintiffs had not alleged any facts showing that UEA participated *as an entity* in the alleged conspiracy.  *Id.* at 753.[6]  The same is true here.[7]

----

[6] Even the allegations that UEA's leadership and staff *did* participate in the conduct (which is not alleged here as to ETSI), was insufficient to impute liability to UEA because the plaintiffs alleged no specific facts sufficient to demonstrate that such leadership and staff were acting "with the apparent authority of UEA." *Id.*

7 TruePosition's argument that ETSI and 3GPP are a "single enterprise" must also be rejected because it is contradicted by the Amended Complaint's allegations.  For example, TruePosition specifically alleges that ETSI and 3GPP have different memberships, that ETSI is only one of 3GPP's six organizational partners, and that ETSI's

*Third*, *Processed Egg Prods.* further compels rejection of TruePosition's imputation theory because the alleged conspiracy is among the Corporate Defendants, and the theory as respects 3GPP is also one of imputation. (Dkt. 105 at 17, 19; Amended Complaint ¶¶ 144-45). As held in *Processed Egg Prods.* (twice), however, the alleged concerted action by members of UEA could not be imputed to UEA as a matter of law. *See Processed Egg Prods. II*, 2012 WL 1443625, at *5 (participation of UEA members in alleged conspiracy was insufficient to "sustain a claim that UEA joined or participated in the alleged conpiracy, nor that it can be liable for Section 1 violations on account of secondary liability"); *Processed Egg Prods. I*, 821 F. Supp. 2d at 750-53 (same).[8]

### 2.   TruePosition's Reliance on *Hydrolevel* is Misplaced.

Nor can TruePosition support its theory of concerted action by ETSI under the Supreme Court's decision in *Hydrolevel*. (*See* Dkt. 105 at 16-20).[9]

TruePosition argues that *Hydrolevel* stands for the proposition that a "standard-setting body itself … faces antitrust liability whenever it allows the process by which it arrives at decisions to include or exclude certain technologies to be captured by committee chairs who manipulate the process toward the interest of their employers rather than allowing standards to

---

involvement in the 3GPP standard-setting process consists of mere attendance at and administrative support for 3GPP meetings. (Amended Complaint ¶¶ 14-15).

[8] TruePosition's only attempt to distinguish *Processed Egg Prods.* is to note that the *Processed Egg Prods.* cases involved "trade associations" rather than standards organizations. (Dkt. 105 at 17). TruePosition offers no explanation how or why this distinction is of any consequence, nor is any apparent.

[9] Notably, TruePosition no longer argues, as it did in opposition to ETSI's motion to dismiss the original Complaint, that under the Pennsylvania Partnership Act and Pennsylvania common law, ETSI could be held liable for conduct by the Corporate Defendants within 3GPP based solely on its status as an organizational partner of 3GPP. (Dkt. 71 at 45-48). Equally notable, TruePosition no longer argues, as it did incorrectly in opposition to ETSI's motion to dismiss the original Complaint, that *U.S. v. Paramount Pictures, Inc.*, 334 U.S. 131, 161 (1948), *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 975 (7th Cir. 1995), and *James Julian, Inc. v. Raytheon Co.*, 557 F. Supp. 1058, 1065 (D. Del. 1983) support its theory of "acquiescence by inaction." (Dkt. 71 at 45-48). As explained by ETSI, and as TruePosition now apparently concedes, these cases are inapposite because in each of

develop based on due process and objective technical merit." (Dkt. 105 at 16). *Hydrolevel* says nothing of the sort.  Indeed, TruePosition's novel interpretation of *Hydrolevel* would read the "concerted action" element out of Section 1 entirely, and would subject a standards organization to antitrust liability whenever its procedural rules were violated.  This is not the law under *Hydrolevel*, and TruePosition identifies no authority that says otherwise.

Rather, as previously discussed in connection with ETSI's motion to dismiss the original Complaint, in *Hydrolevel*, the Supreme Court held that a standard-setting organization ("SSO") may be held liable for the "anticompetitive practices of its *agents acting with apparent authority*." *Hydrolevel*, 456 U.S. at 574 (emphasis added); *see* Dkt. 102-1 at 12.  In *Hydrolevel*, for example, the interpretative letter that caused the alleged anticompetitive injury was drafted by the vice-chairman of the defendant SSO's sub-committee in which the anticompetitive conduct took place, issued on the SSO's official letterhead, and signed by one of the SSO's permanent employees.  456 U.S. at 560-62.  Both the agency relationship and the apparent authority were thus clearly established.

Here, by contrast, there are no factual allegations in the Amended Complaint that the Corporate Defendants were acting as agents of ETSI and under its apparent authority within 3GPP.  Even in its Opposition, TruePosition makes only the cryptic and conclusory argument that the Corporate Defendants acted "through their leadership positions within the ETSI-managed 3GPP apparatus and with its apparent authority."  (Dkt. 105 at 19).  Even if this conclusory allegation had been included in the Amended Complaint, however (which it was not), it does not allege specific facts sufficient to demonstrate that the Corporate Defendants were

---

those cases all defendants were alleged to have actively participated in the challenged anticompetitive conduct. (Dkt. 78 at 6; Dkt. 102-1 at 12 n.15).

acting as agents of ETSI and under ETSI's apparent authority.  *See, e.g.*, *In re Processed Egg Prods. I*, 821 F. Supp. 2d at 753 (complaint failed to state antitrust claim against organization based on conduct of its leadership and staff because it failed to "allege facts sufficient to demonstrate the agents were acting with the apparent authority of [the organization]").  Indeed, TruePosition's argument is refuted by the specific allegations in the Amended Complaint that the Corporate Defendants' alleged conduct was in violation of the rules of ETSI and 3GPP, and in contravention of and harmful to the interests of those SSOs and their member companies.  (*See* Amended Complaint ¶¶ 112, 143).

Accordingly, because TruePosition has still made no allegation or argument that ETSI engaged in any concerted action, and because TruePosition's efforts to impute liability to ETSI based on its affiliation with 3GPP and 3GPP's members, and pursuant to *Hydrolevel*, all are legally insufficient, TruePosition has failed to state a claim against ETSI under Section 1 of the Sherman Act.

## C.    THE OPPOSITION DOES NOT EXCUSE TRUEPOSITION'S FAILURE TO ESTABLISH ANTITRUST STANDING.

The Opposition does nothing to cure TruePosition's failure to allege any harm to competition resulting from the alleged conspiracy, and ignores entirely ETSI's showing that the Amended Complaint in fact disproves any causal connection between the alleged conspiracy and TruePosition's purported injuries.

*First*, TruePosition merely reiterates its speculative and conclusory allegations in the Amended Complaint that it technology, U-TDOA, has been "foreclosed" from the 3GPP 4G/LTE specification and that competition has been harmed as a result.  (Dkt. 105 at 6).  Even in its Opposition, TruePosition fails to identify *any* specific factual allegations of harm to the competitive marketplace, and fails to identify any other competitors who have been impacted by

11

the alleged exclusion of U-TDOA. *See Warfield Phila., L.P. v. Nat'l Passenger R.R. Corp.*, Civil Act. No. 09-1002, 2009 WL 4043112, at *5 (E.D. Pa. Nov. 20, 2009) (dismissing Sherman Act claim for failure to establish antitrust standing where plaintiff alleged "no facts … to support its claims that [the alleged misconduct] reduced, restrained, or eliminated competition in the relevant market or precluded others from entering it").

*Second*, TruePosition argues that it has suffered an antitrust injury because "[i]ts inability to have the U-TDOA technology adopted in the 4G/LTE standard" has prevented it from "be[ing] able to compete." (Dkt. 105 at 9). But, this remains only a conclusion, not a factual allegation. Moreover, the Amended Complaint directly refutes this argument by alleging that "TruePosition … ha[s] successfully marketed U-TDOA-based standalone products in the United States … and in other countries of the world" (Amended Complaint ¶ 47), and that TruePosition's standalone products could be used in 4G networks today with only minor software changes, without any need for the technology to be included in 4G standards at all. (*Id.* ¶ 21).[10]

*Third*, TruePosition's argument that the Amended Complaint adequately alleges a causal connection between the alleged conspiracy and the harm purportedly suffered by TruePosition does nothing more than repeat the conclusory allegations in the Amended Complaint that the alleged conduct of the Corporate Defendants has kept "U-TDOA out of the market for positioning technologies" and "eliminate[d] competition from TruePosition's superior products."

---

[10] TruePosition's reliance on *Eichorn v. AT & T Corp.*, 248 F.3d 131 (3d Cir. 2001) is misplaced. (Dkt. 105 at 6). In *Eichorn*, the Third Circuit: (i) addressed only the specific issue of antitrust injury in the context of an alleged employee no-hire agreement; and (ii) held that antitrust standing was established because of the showing on summary judgment that there was an impact on the market on a whole for such employee services. *See id.* at 141-42. Here, by contrast, as commented the Amended Complaint admits that TruePosition is competing in 3G, and pleads no specific factual allegations concerning its or anyone else's foreclosure from 4G. Also, although the *Eichorn* court discussed the antitrust injury issue, that was not a holding in the case, and the court ultimately affirmed dismissal of the Section 1 claims on other grounds.

(Dkt. 105 at 10-11). Again, this is a conclusion, not a factual allegation, and it is refuted by TruePosition's allegations that U-TDOA could be used today in connection with LTE networks simply by making software modifications. (Amended Complaint ¶ 21). As a result, based on that allegation in the Amended Complaint, the fact that U-TDOA has not yet been included in the LTE specification cannot be the cause of the speculative injuries alleged in the Amended Complaint.

*Fourth*, the Opposition does nothing to cure TruePosition's failure to allege, as it must to establish antitrust injury, that it and ETSI participate in the same market. *See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 415 (3d. Cir. 1997) (in order to satisfy the requirement of antitrust standing, it is necessary that "the injured party be a participant in the same market as the alleged malefactors"). TruePosition simply does not compete in any way with ETSI, nor does it claim to do so. Indeed, ETSI's "business" does not directly concern the purportedly relevant markets at all, but instead, as held by the Court, concerns the development of standards for the European Union. (Dkt. 86 at 31). TruePosition's inability to allege that ETSI participates in any market in which TruePosition competes weighs heavily against a claim of antitrust standing by TruePosition with respect to ETSI. *See Martorano v. PP & L Energy Plus*, 334 F. Supp. 2d 796, 800 (E.D. Pa. 2004) (dismissing for lack of antitrust standing where "[plaintiff's] complaint does not allege that it is either a competitor or a consumer of [defendant]").

## D. THE OPPOSITION ESTABLISHES THAT TRUEPOSITION'S CLAIMS ARE NOT RIPE FOR JUDICIAL REVIEW.

In its Opposition to ETSI's Rule 12(b)(1) motion, TruePosition retreats from the inherently speculative allegations in the Amended Complaint relating to the harms that it *might* suffer if – and only if – U-TDOA were excluded from the 4G/LTE specification. (*see* Dkt. 102-1

13

at 22-23 & n.24). Instead, TruePosition now argues (without support in the allegations of the Amended Complaint) that it is presently suffering harm as a result of alleged delays in the incorporation of U-TDOA in the specification. (Dkt. 105 at 12-15). Again, the Amended Complaint itself refutes TruePosition's argument.

*First*, TruePosition asserts that its claims are ripe because "TruePosition and the market and consumers are suffering an *ongoing* antitrust injury" resulting from the exclusion of U-TDOA from Release 9 in June 2010, which has "given competitors sufficient time to establish a strong position for their inferior product." (Dkt. 105 at 12-13 (emphasis in original)). But Plaintiffs have not even alleged (nor can they) that *any* positioning technologies (or any voice services at all) have been implemented in 4G, and TruePosition acknowledges in the Amended Complaint that it is presently successfully competing in the United States and around the world using its U-TDOA technology in 3G networks. (*See* Amended Complaint ¶ 47).

*Second*, TruePosition fares no better with its argument that the delayed incorporation of U-TDOA in the LTE specification has "blocked TruePosition's access to major markets." (Dkt. 105 at 15). Not only is this argument unsupported by any allegation in the Amended Complaint, it is again belied by TruePosition's acknowledgement that it is presently successfully competing using U-TDOA technology in 3G networks. (Amended Complaint ¶ 47).

*Finally*, TruePosition's argument that the alleged conspiracy has "deprived consumers of advanced technology" and "retarded innovation" (Dkt. 105 at 15) is also refuted by the allegations in the Amended Complaint that TruePosition's universal LMUs can be adapted through mere "software modifications" for deployment on LTE networks, and that TruePosition's customers can use "the same LMU hardware for current and future networking

14

technologies." (Amended Complaint ¶ 21).[11]  Thus, the Amended Complaint establishes that the very technology that TruePosition claims was kept from consumers has already been widely deployed in 3G networks, and could be deployed today in 4G/LTE networks with only minor software modifications.

In sum, because TruePosition has failed to allege that it has suffered any actual and concrete harm relating to the alleged conspiracy, the Amended Complaint is not ripe for judicial review and must be dismissed for lack of subject matter jurisdiction.

---

[11] In its Opposition, TruePosition argues that a workaround solution is not possible for U-TDOA in 4G/LTE (Dkt. 105 at 15), but it makes no attempt to reconcile this argument with the clearly inconsistent allegation in paragraph 21 of the Amended Complaint that a workaround is indeed possible with software modifications.

15

III.     **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in its Memorandum in Support of

its Motion to Dismiss the Amended Complaint, ETSI respectfully requests that TruePosition's

Amended Complaint be dismissed in its entirety as against ETSI, with prejudice.

May 7, 2012

**BINGHAM MCCUTCHEN LLP**

By:     /s/ Richard S. Taffet
        Richard S. Taffet, *admitted pro hac vice*
        Derek Care, *admitted pro hac vice*
        399 Park Avenue
        New York, NY 10022-4689
        (212) 705-7729
        richard.taffet@bingham.com
        derek.care@bingham.com

        William S.D. Cravens, *admitted pro hac vice*
        **BINGHAM McCUTCHEN LLP**
        2020 K Street N.W.
        Washington, DC 20006-1806
        (202) 373-6083
        william.cravens@bingham.com

        Stephen W. Armstrong
        **MONTGOMERY, MCCRACKEN,**
        **WALKER & RHOADS, LLP**
        123 South Broad Street
        Philadelphia, PA 19109
        (215) 772-7552
        sarmstrong@mmwr.com

        *Attorneys for European Telecommunications*
        *Standards Institute*

A/74933641.1

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2012, I served the foregoing Reply Memorandum In Support Of Defendant European Telecommunications Standards Institute's Motion To Dismiss the Amended Complaint, dated May 7, 2012, on all parties to this litigation by ECF and first class mail.

/s/ Derek Care
Derek Care