## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUEPOSITION, INC., <br>                                 Plaintiff, <br><br>     v. <br><br> LM ERICSSON TELEPHONE COMPANY <br> (Telefonaktiebolaget LM Ericsson), QUALCOMM <br> INC., ALCATEL-LUCENT, U.S.A., INC., THIRD <br> GENERATION PARTNERSHIP PROJECT a/k/a <br> 3GPP, and EUROPEAN TELECOMMUNICATIONS <br> STANDARDS INSTITUTE, <br>                                 Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CIVIL ACTION <br>     2:11-cv-04574-RFK |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## THIRD GENERATION PARTNERSHIP PROJECT'S MOTION TO DISMISS
## PLAINTIFF TRUEPOSITION, INC.'S AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    PROCEDURAL BACKGROUND........................................................... 3

III.   FACTUAL BACKGROUND.................................................................. 4

IV.    ARGUMENT ......................................................................................... 6

       A.   The Absence Of Agreement Compels Dismissal Of TruePosition's
            Sherman Act Section 1 Claim Against 3GPP ....................................... 7

       B.   TruePosition's Theory Of Antitrust Liability Based On *Hydrolevel* Is
            Misplaced............................................................................................ 12

V.     CONCLUSION.................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
    37 F.3d 996 (3d Cir. 1994)...................................................................12, 13

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982)........................................................................12, 13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009)..................................................................11

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)...............................................................................12

*Black v. JP Morgan Chase & Co.*,
    Civ. A. No. 10-848, 2011 WL 4102802 (W.D. Pa. Aug. 10, 2011) ........................10

*Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*,
    256 F. Supp. 2d 249 (D.N.J. 2003) ...............................................................7, 10

*Genesis Bio Pharm., Inc. v. Chiron Corp.*,
    27 Fed. Appx. 94 (3d Cir. 2002) ....................................................................9

*Hartman v. Deutsche Bank Nat'l Trust Co.*,
    Civ. A. No. 07-5407, 2008 WL 2996515 (E.D. Pa. Aug. 1, 2008)..........................2

*In re Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010).......................................................................12

*In re Le-Nature's, Inc.*,
    No. 9-MC-162, 2012 WL 363981 (W.D. Pa. Feb. 2, 2012) ................................14

*In re Pa. Title Ins. Antitrust Litig.*,
    648 F. Supp. 2d 663 (E.D. Pa. 2009) .............................................................10

*In re Processed Egg Prods. Antitrust Litig.*,
    08-md-02002, 2012 WL 1443625 (E.D. Pa. Apr. 24, 2012) ................................10

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ..................................................9, 10, 12, 13

*Lind v. New Hope Prop., LLC*,
    Civil No. 09-3757, 2010 WL 1493003 (D.N.J. Apr. 13, 2010)..............................9

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Liverman v. Gubernik,*
   Civ. A. No. 08-1562, 2008 WL 5427904 (E.D. Pa. Dec. 30, 2008) ...........................................5

*Marrese v. Am. Acad. of Orthopaedic Surgeons,*
   No. 91-1366, 1992 WL 246906 (7th Cir. 1992) ....................................................13

*Plouffe v. Gambone,*
   Civ. A. No. 11-6390, 2012 WL 2343381 (E.D. Pa. June 20, 2012) ...........................................2

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
   124 F.3d 430 (3d Cir. 1997).................................................................12

*UGI Corp. v. Piccione,*
   No. 88-1125, 1997 WL 698011 (E.D.Pa. Nov. 5, 1997) .......................................14

*U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC,*
   519 F. Supp. 2d 515 (E.D. Pa. 2006) .....................................................9

*W. Penn Allegheny Health Sys., Inc. v. UPMC,*
   627 F.3d 85 (3d Cir. 2010).................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P.
   4........................................................................................*passim*
   5 ........................................................................................4
   12........................................................................................1, 2

Defendant Third Generation Partnership Project ("3GPP") submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint ("Am. Compl.") of plaintiff TruePosition, Inc. ("TruePosition") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.   **PRELIMINARY STATEMENT**

As has now been well-discussed, the crux of the Amended Complaint's single claim for relief, is that the corporate defendants, LM Ericsson Telephone Company, Qualcomm Inc. and Alcatel-Lucent, U.S.A., Inc. (collectively the "Corporate Defendants"), by allegedly abusing their authority and violating 3GPP rules, conspired in violation of Section 1 of the Sherman Act to exclude an allegedly superior technology offered by TruePosition from a 4th generation mobile communication standard, known as Long Term Evolution ("LTE").  *See, e.g.*, Am. Compl. ¶¶ 1-2, 6-7, 36, 89, 143.[1]  3GPP, however, is *not* alleged to have engaged in *any* of the purported unlawful conspiratorial conduct that TruePosition claims was engaged in among the Corporate Defendants; nor is 3GPP alleged to have conducted any of the standards activities that allegedly gave rise to the purported conspiracy, which activities were performed solely by 3GPP's members and not 3GPP as an entity, assuming for present purposes that 3GPP is in fact an entity.  Indeed, the Amended Complaint on its face establishes that 3GPP lacks even the *capacity* to participate in or even consent to the alleged conspiracy, as 3GPP is alleged to be "wholly dependent" on now dismissed defendant European Telecommunications Standards Institute ("ETSI") for its organizational and administrative support (Am. Compl. ¶ 14),[2] and

---

[1]  *See also* Memorandum of Law in Support of Joint Motion of Defendants Qualcomm, Ericsson and Alcatel-Lucent to Dismiss the Amended Complaint of TruePosition, Inc., dated March 16, 2012 (Dkt. 103-1) at 6-7.

[2]  By Stipulation and Order entered August 10, 2012, TruePosition dismissed its Amended Complaint against ETSI with prejudice.  (Dkt. 130).

others (and not 3GPP) are alleged to set policy and bear responsibility for 3GPP's governance. *Id.* ¶ 118.

Thus, the Amended Complaint conclusorily and contradictorily alleges, without factual support, only that 3GPP was (i) responsible for monitoring the conduct of the Corporate Defendants and enforcing its rules, (ii) that 3GPP received notice (based on an alleged communication by TruePosition *to ETSI*) of the Corporate Defendants' allegedly unlawful conduct, and (iii) 3GPP failed to investigate or remedy those actions. *Id.* at ¶¶ 116, 120-21, 144. As a result of such inaction, 3GPP allegedly joined in the purported conspiracy. *Id.* at ¶¶ 121, 145.

As explained below, such allegations fail to state a claim under Section 1 of the Sherman Act as a matter of law, and the deficiencies of TruePosition's Amended Complaint cannot be remedied. TruePosition's Amended Complaint should thus be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), without leave to replead and with prejudice.[3] *See Plouffe v. Gambone*, Civ. A. No. 11-6390, 2012 WL 2343381, at *6 (E.D. Pa. June 20, 2012) (dismissing amended complaint with prejudice where plaintiff failed to cure deficiencies in his original complaint and where further amendment would be futile); *Hartman v. Deutsche Bank Nat'l Trust Co.*, Civ. A. No. 07-5407, 2008 WL 2996515, at *6 (E.D. Pa. Aug. 1, 2008) (same).

---

[3] As with TruePosition's original Complaint, and as previously briefed in ETSI's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint, dated March 16, 2012 (Dkt. 102-1), TruePosition also fails to allege facts in the Amended Complaint sufficient to establish that it suffered antitrust injury, or that its claims are ripe for adjudication, thus requiring dismissal of its claim pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) respectively. To avoid burdening the Court with repetitive arguments, 3GPP incorporates by reference the arguments proffered by ETSI on the antitrust injury and ripeness issues as if fully set forth herein. *See* Dkt. 102-1 at 18-25; Reply Memorandum of Law In Support of ETSI's Motion to Dismiss the Amended Complaint, dated May 7, 2012 (Dkt. 111) at 11-15.

Further, since 3GPP's alleged violation of Section 1 of the Sherman Act is derivative of the alleged unlawful conspiracy among the Corporate Defendants, dismissal of TruePosition's claim against them would be dispositive of the claim against 3GPP.

## II.    PROCEDURAL BACKGROUND

No service of the original Complaint was effected on 3GPP.  Yet, on November 14, 2011, TruePosition filed an Application for Entry of Default against 3GPP for its purported failure to respond to TruePosition's original Complaint.   Dkt. 76.   The affidavits accompanying the Application established that TruePosition had not served 3GPP in a manner authorized by Fed. R. Civ. P. 4, and instead described two legally ineffective attempts to serve process on 3GPP: *first*, by registered mail to 3GPP at its headquarters in France without authorization of the Court (Dkt. 76-2 at ¶ 2); and *second*, by attempted delivery of the summons and complaint by a French process server to an ETSI employee who was not authorized to accept service on behalf of 3GPP, and who properly refused to accept such service.  *Id.* at ¶¶ 9-10.   Further, TruePosition never filed a return of service, as required by Fed. R. Civ. P. 4(l).   As a result, the Clerk properly did not enter default, and instead, referred the Application to the Court.   On November 22, Counsel for 3GPP entered a special appearance (Dkt. 77) for the sole purpose of responding to the original Application.

On January 6, 2012, without deciding TruePosition's Application, the Court dismissed TruePosition's original Complaint, with leave to amend within 30 days.  *See* Memorandum of Decision, dated January 6, 2012 (Dkt. 86) ("Mem.") at 2, 42.   TruePosition filed its Amended Complaint on February 6, 2012.   TruePosition did not thereafter attempt to serve the Amended Complaint on 3GPP in any manner permitted under Fed. R. Civ. P. 4; nor did it file proof of such service of process.   Nonetheless, four months later, on June 14, 2012, TruePosition filed an Amended Application for Entry of Default against 3GPP (Dkt. 114) ("Amended Application"). The Amended Application largely repeated the arguments TruePosition made in its initial Application concerning TruePosition's legally deficient and therefore ineffective attempts to serve 3GPP with the original Complaint (*id.* at ¶¶ 2-15), but also asserted, incorrectly, that

-3-

counsel's previous special appearance on behalf of 3GPP to challenge the first Application allowed TruePosition to serve the Amended Complaint on 3GPP's counsel under Fed. R. Civ. P. 5. *Id.* at ¶¶ 16-22.

On June 29, 2012, the Court denied the Amended Application. Dkt. 122 at ¶ 1. The Court nonetheless permitted 3GPP 20 days to attempt service of process on 3GPP via registered mail pursuant to Fed. R. Civ. P. 4(f)(3). *Id.* at ¶ 4.

Now 3GPP appears in this case for the first time to respond to the Amended Complaint. Such appearance is pursuant to the Stipulation and Order entered July 10, whereby 3GPP and TruePosition agreed that 3GPP's counsel would accept service of process of the Amended Complaint on behalf of 3GPP, and that 3GPP would respond to the Amended Complaint. Dkt. 125.

### III.    FACTUAL BACKGROUND

According to the Amended Complaint, 3GPP was formed in 1998 as an unincorporated association and standard setting organization ("SSO") located in France. 3GPP's business is alleged to be to "fairly and impartially to create global standards for mobile telecommunications technologies." Am. Compl. ¶ 14. 3GPP, however, allegedly promulgates *no* standards. That is done by six regional Organizational Partners ("OPs") in their respective regions, including ETSI in Europe and the Alliance for Telecommunication Industry Solutions in the United States. *Id.* ¶¶ 14, 33. 3GPP also is alleged to have no governing board, officers or employees. Rather, it is alleged that "3GPP is wholly dependent upon ETSI for its organization and administrative support." *Id.* ¶ 14. Likewise, 3GPP is not alleged to either set its own policy or to be responsible for its own governance. TruePosition alleges that governance of 3GPP is the joint responsibility of the OPs (*Id.* ¶ 118), but this allegation is contradicted by 3GPP's own Working

A/75106812.1

Procedures, to which reference is made in the Amended Complaint,[4] which provide only that the OPs act "as a body of appeal" to decide procedural matters referred by 3GPP's members pursuant to Article 12 of 3GPP's Working Procedures, and place no affirmative duty on the OPs (or any other party) to monitor and enforce compliance with the Working Procedures.[5] Notably, the Amended Complaint includes no allegation of an appeal by TruePosition under Article 12 of the Working Procedures concerning the subject matter of this case or any other matter.  The agreements among the OPs relating to 3GPP, to which reference is also made in the Amended Complaint, further make clear that 3GPP "is not to be construed as a legal entity."[6] Moreover, 3GPP standards development activities are conducted solely through the activities of the 3GPP membership.[7] Such membership in 3GPP is comprised of "hundreds of international companies that participate in 3GPP through their membership in an Organizational Partner." *Id.* ¶ 14. These include the Corporate Defendants, as well as TruePosition. *Id.* ¶¶ 10, 14.

The standards development activities at issue in this case involve the development of the LTE mobile communications specification.  Am. Compl. ¶ 1.  The Corporate Defendants are alleged to have engaged in concerted action to exclude TruePosition's allegedly superior technology from that specification.  *See, e.g., id.* ¶¶ 48-113.[8]  TruePosition further alleges that

---

[4] *See* Am. Compl. ¶ 35.  Accordingly, the Court may consider the Working Procedures on this motion to dismiss. *See, e.g., Liverman v. Gubernik*, Civ. A. No. 08-1562, 2008 WL 5427904, at *3 (E.D. Pa. Dec. 30, 2008) ("When deciding a motion to dismiss under Rule 12(b)(6), a court may properly consider the factual allegations contained in the complaint" as well as "documents referenced therein.").

[5] Declaration of William S.D. Cravens In Support of Defendant Third Generation Partnership Project's Motion to Dismiss Plaintiff TruePosition, Inc.'s Amended Complaint, dated August 8, 2012 ("Cravens Decl."), Exh. A at Article 12.

[6] Cravens Decl., Exh. B at 1.

[7] Am. Compl. ¶ 37 ("Proposals to include technology features in the 3GPP standards (known as 'work items') … are created through private discussions among members of a Working Group *outside the formal meeting context*.") (emphasis added).

[8] 3GPP takes no position concerning the adequacy of the Amended Complaint's allegations for purposes of stating an unlawful conspiracy for purposes of Section 1 of the Sherman Act as respects the Corporate Defendants.

A/75106812.1

the success of the alleged conspiracy was contingent on the Corporate Defendants' purported violations of 3GPP rules and procedures. *See id.* ¶¶ 2 ("[T]he success of the conspiracy has depended on the corporate defendants' combined ability to coordinate actions that violated 3GPP rules."); 6 ("Only by the corporate defendants' concerted efforts to misuse the standard-setting process, and to abuse the authority of 3GPP, have the corporate defendants succeeded in ramming their inferior technology into the 3GPP 4G standard and shutting U-TDOA out."); 36 (corporate defendants needed "to violate these 3GPP rules"); 143 (Corporate Defendants undertook their actions "by exploiting the authority of 3GPP ... and violating the rules, procedures, and due process requirements of 3GPP").

3GPP, for its part, is not alleged to have engaged in any concerted action with the Corporate Defendants. Nor is it alleged to have had any motive to do so, or that it acted in any way contrary to its economic interests. Rather, even though the conduct by the Corporate Defendants allegedly was in abuse of and contrary to 3GPP rules, TruePosition illogically alleges the conclusion that such conduct was with the apparent authority of 3GPP, Am. Compl. ¶¶ 114-15, and that 3GPP was responsible for monitoring such conduct. *Id.* ¶ 116. In addition, allegedly based upon informal reports by TruePosition to an ETSI employee, 3GPP is alleged, without factual support, to have purportedly been on notice of the Corporate Defendants' alleged misconduct, and by failing to remedy it or ensure compliance with its rules, to have been complicit in and to have acquiesced to the alleged conspiracy among the Corporate Defendants. *Id.* ¶¶ 120-21, 145.

## IV.    ARGUMENT

As in the original Complaint, TruePosition's theory of liability with respect to 3GPP is one of acquiescence. Mem. at 16; Am. Compl. ¶¶ 120-121. 3GPP is alleged, without factual support, only to have purportedly been on notice of the Corporate Defendants' alleged

misconduct, and to have failed to remedy it, and based solely on such alleged inaction to have been complicit in the alleged conspiracy among the Corporate Defendants.  *Id.* ¶¶ 120-121, 141. The Amended Complaint, thus, continues to allege that 3GPP should be liable for the alleged anticompetitive conspiracy of the Corporate Defendants, even though no allegations (factual or conclusory) are stated that 3GPP reached *any* agreement with the Corporate Defendants concerning the purported exclusion of TruePosition's technology from the LTE standard.

This theory is fatally flawed as a matter of law, and is entirely deficient to support a claim under Section 1 of the Sherman Act.

**A.     The Absence Of Agreement Compels Dismissal Of TruePosition's Sherman Act Section 1 Claim Against 3GPP**

As the Court discussed in dismissing TruePosition's original Complaint, "[t]o prevail on a section 1 claim …, a plaintiff must establish an agreement … conspiracy or concerted action" which "exists when there is a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme." Mem. at 36 (citation omitted). A plaintiff must further allege that "the conspirators had a conscious commitment to a common scheme *designed to achieve an unlawful objective*." Mem. at 36-37 (citation omitted, emphasis in original). Here, the Amended Complaint falls far short of meeting this standard, and indeed precludes any conclusion that 3GPP was part of the alleged unlawful conspiracy.

*First*, as with the original Complaint, the Amended Complaint fails to allege any agreement between 3GPP and the Corporate Defendants, or that 3GPP otherwise acted in any conscious manner that was consistent with or in furtherance of the alleged conspiracy by the Corporate Defendants.  This alone defeats TruePosition's conspiracy claim against 3GPP.  *See Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 256 F. Supp. 2d 249, 273 (D.N.J. 2003)

-7-

("proof of knowing, intentional participation in" an alleged conspiracy is required to state a claim under Sherman Act).

The Amended Complaint's lack of allegations concerning 3GPP's motives and intentions further doom TruePosition's conspiracy allegations against 3GPP.  Notably, in juxtaposition to the allegations directed to the Corporate Defendants (*see, e.g.*, Am. Compl. ¶¶ 102-113), the Amended Complaint is absolutely silent regarding any motive of 3GPP to conspire with the Corporate Defendants or any acts by 3GPP against its economic interests.[9]  Indeed, the Amended Complaint's allegation that 3GPP's business is "fairly and impartially to create global standards for mobile telecommunications technologies based on objective technical merit," (*Id.* ¶ 14), combined with the allegations that *all* of the allegedly unlawful conduct by the Corporate Defendants was in abuse of or contrary to 3GPP's rules (*see, e.g., id.* ¶¶ 2, 5, 36, 41, 47, 105, 112, 142(j), 143), precludes any conclusion that 3GPP had a conscious commitment to a common scheme with the Corporate Defendants.

*Second*, ascribing conduct or motive to 3GPP in relation to the alleged conspiracy is further precluded by the Amended Complaint's concession that 3GPP, assuming it is an entity at all, did not engage in any relevant standards development activities (*id.* ¶ 14 (3GPP "wholly dependent on ETSI for organizational and administrative tasks")), and simply provided a structure in which 3GPP members could develop standards (*see supra* at n.7).[10]  Indeed, as even 3GPP acknowledges, 3GPP standards development activities are conducted solely through the activities of the 3GPP membership, which is comprised of "hundreds of international companies

---

[9]  Here, too, 3GPP takes no position regarding whether the allegations directed to the Corporate Defendants adequately allege any motives or intentions by those Defendants sufficient to support the pleading of an antitrust conspiracy among them.

[10]  *See also* TruePosition's Opposition to Defendant European Telecommunications Standards Institute's Motion to Dismiss Amended Complaint, dated April 16, 2012 (Dkt. 105) at 1 ("TruePosition alleges that the corporate co-defendants, acting through their leadership positions within the *ETSI-managed 3GPP apparatus* … attempted to thwart the standardization of U-TDOA.") (emphasis added).

A/75106812.1

that participate in 3GPP through their membership in an Organizational Partner." Am. Compl. ¶ 14. As such, the Amended Complaint establishes at best that 3GPP was a passive environment in which certain other parties are alleged to have engaged in unlawful conduct. That is a far cry from alleging facts that the passive environment (3GPP) had a meeting of minds with the alleged Corporate Defendant conspirators to achieve an unlawful objective.

*Third*, TruePosition's conclusory allegation that 3GPP acquiesced to the alleged conspiracy is defeated by its specific factual allegations revealing that 3GPP, itself as an entity, engaged in no actions or conduct from which it can be concluded that it affirmatively acquiesced in any conspiratorial conduct. *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 753 (E.D. Pa. 2011) ("*Processed Egg I*") (liability can be imputed to an association only if association participated in the conspiracy as an entity). As commented above, 3GPP is not even alleged to either set its own policy or to be responsible for its own governance. Even TruePosition alleges, albeit incorrectly, that the policy and governance of 3GPP is controlled by the OPs, not by 3GPP. Am. Compl. ¶ 118. Moreover, in reality, the OPs do not have such governance responsibility, and are only authorized to sit as a body of appeal to decide procedural matters referred by 3GPP's members, an opportunity that was never taken advantage of by TruePosition. *See supra* at 4 & n.5. As a result, TruePosition's allegations and facts properly considered by the Court require rejection of any conclusion that 3GPP's alleged inaction reflects any acquiescence to – let alone participation in – any alleged conspiracy.[11]

---

[11] *See Genesis Bio Pharm., Inc. v. Chiron Corp.*, 27 Fed. Appx. 94, 99-100 (3d Cir. 2002) (rejecting conclusory allegations contradicted by documents underlying plaintiff's complaint); *Lind v. New Hope Prop., LLC*, Civil No. 09-3757, 2010 WL 1493003, at *6 (D.N.J. Apr. 13, 2010) ("Plaintiffs' conclusory allegations regarding the alleged conspiracy, entirely unsupported by specific factual allegations (and actually contradicted by their factual allegations), are insufficient to render their conspiracy charge … plausible."); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 520 (E.D. Pa. 2006) (district court not required to "accept as true conclusory allegations contradicted by documents underlying the complaint").

-9-

*Fourth*, even if TruePosition's conclusory assertion that 3GPP had knowledge of, and acquiesced to, the Corporate Defendants' conduct (*see id.* ¶¶ 120-21) is unnecessarily and incorrectly taken as true, such passive knowledge and inaction will not suffice as a matter of law to satisfy Section 1's concerted action element. *See Processed Egg I*, 821 F. Supp. 2d at 752 (allegation that association and its members "were aware of [and] supported" the alleged conspiracy failed to state concerted action sufficient for Section 1 claim); *In re Processed Egg Prods. Antitrust Litig.*, 08-md-02002, 2012 WL 1443625, at *5 (E.D. Pa. Apr. 24, 2012) ("*Processed Egg II*") (same).[12] Similarly, the law does not permit the imputation of any conduct allegedly engaged in by 3GPP members – *i.e.*, the Corporate Defendants – to 3GPP based solely on the Corporate Defendants' membership status in 3GPP. That theory has been repeatedly rejected by courts in the Third Circuit, including twice by this court; rather, participation of an association's members in an alleged conspiracy is insufficient to establish that the association joined or participated in the alleged conspiracy, either directly or as a matter of secondary liability. *See Processed Egg I*, 821 F. Supp. 2d at 750-53; *Processed Egg II*, 2012 WL 1443625, at *5; *see also Carpet Group*, 256 F. Supp. 2d at 274 (rejecting argument that "membership [in an organization alleged to have violated Section 1 of the Sherman Act] alone coupled with knowledge of illegal activity is sufficient to impose civil [antitrust] liability").[13]

---

[12] *See also Black v. JP Morgan Chase & Co.*, Civ. A. No. 10-848, 2011 WL 4102802, at *31-32 (W.D. Pa. Aug. 10, 2011) (allegation that corporate parent "possessed knowledge of, and/or acquiesced in, the alleged conspiratorial conduct of their subsidiary" did not establish parent's "direct and independent participation" in the conspiracy); *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688-89 (E.D. Pa. 2009) ("Because plaintiffs allege that parents merely acquiesced in their subsidiaries' conduct, the complaint lacks … specific allegations" of direct participation in the conspiracy by the parent).

[13] In prior briefing in opposition to ETSI's Motion to Dismiss the Amended Complaint, TruePosition attempted to distinguish the *Processed Egg I* and *Carpet Group Int'l* decisions on the ground that they involved "trade associations" rather than the type of amorphous activity as represented by 3GPP. *See* Dkt. 105 at 17. TruePosition offered no rationale for such a distinction then, and there exists none now, especially when the Amended Complaint expressly alleges that 3GPP is an "association." Am. Compl. ¶ 14. If anything, the *Processed Egg* and *Carpet Group Int'l* decisions apply even more strongly with respect to 3GPP because of its lack of organizational structure and non-involvement in the actual development of the standard at issue.

*Finally*, the allegations regarding 3GPP's duty to monitor the conduct of its members and enforce compliance with 3GPP rules and processes (*see, e.g.*, Am. Compl. ¶¶ 121, 145) do not cure the Amended Complaint's deficiencies. As an initial matter, these allegations are wholly conclusory and devoid of reference to any factual evidence that would support such conclusions. They should, therefore, be disregarded. *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (in ruling on sufficiency of a complaint, "courts should disregard the complaint's legal conclusions and determine whether the remaining factual allegations suggest that the plaintiff has a plausible - as opposed to merely conceivable - claim for relief.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949-50 (2009)). Indeed, TruePosition's conclusory statements concerning a purported affirmative duty by 3GPP to police the conduct of its members are inconsistent with the 3GPP rules allegedly violated by the Corporate Defendants, which impose no such duty. *See* Am. Compl. ¶ 35. Specifically, none of the 3GPP Working Procedures or other documents relied on by TruePosition impose any obligation on 3GPP to monitor or supervise its members.[14] This only confirms the inadequacy of these allegations.[15]

Even more telling, however, is the absence from the Amended Complaint of any allegations regarding how 3GPP's failure to supervise would constitute anything more than, at best, a possible breach of contract or negligence claim, and these are not even supportable. As shown, TruePosition does not, and cannot, point to any factual basis that would establish 3GPP's agreement to assume any duty to supervise; the 3GPP rules referenced in the Amended Complaint do not support such a conclusion.[16] And, in all events, even if a breach of contract or

---

[14] *See generally* Cravens Decl., Exhs. A-C.

[15] *See* cases cited *supra* at n.11.

[16] *See* Cravens Decl., Exh. A at Articles 3, 23, 25.

A/75106812.1

negligence claim could be supported, this is insufficient to make out an antitrust claim. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 527 (1983) (allegations that might establish breach of contract or common law torts were nonetheless "plainly not subject to review under the federal antitrust laws"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 441 & n.16 (3d Cir. 1997) (allegations that might afford plaintiffs the "right to sue for breach of contract" were nonetheless insufficient to state antitrust claim). Further, if the crux of TruePosition's antitrust claim is based on 3GPP's alleged negligence in undertaking its purported duty to supervise, such inaction, as previously discussed, fails to plausibly establish participation in an antitrust conspiracy because it does not establish or even suggest any agreement between 3GPP and the Corporate Defendant relating to the alleged conspiracy. *See supra* at 10.

**B.      TruePosition's Theory Of Antitrust Liability Based On *Hydrolevel* Is Misplaced**

Where a party is "not plausibly alleged … to have entered into unlawful agreements, there must be some 'other basis [for] imputing § 1 liability to'" that party. *Processed Egg I*, 821 F. Supp. 2d at 747 (quoting *In re Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010)). Here, TruePosition seemingly seeks to impute liability to 3GPP based on the Supreme Court's decision in *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982). In *Hydrolevel*, the Supreme Court held that an SSO may be held liable for "anticompetitive practices of all *its agents acting with apparent authority*." *Id.* at 574 (emphasis added); *see also Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1010 (3d Cir. 1994) ("In considering the antitrust implications of [a Section 1 claim against a professional association], our first concern must be whether plaintiffs' allegations demonstrate an antitrust violation" by the association or its agents acting on behalf of the association); *Processed Egg I*, 821 F. Supp. 2d at 753 (complaint failed to state antitrust claim against organization based on

A/75106812.1

alleged conduct of its leadership and staff because it failed to "allege facts sufficient to demonstrate the agents were acting with the apparent authority of [the organization]").

For at least the following reasons TruePosition's reliance on *Hydrolevel* is misplaced.

*First*, *Hydrolevel* cannot be read to relieve TruePosition of the requirement of alleging concerted action by 3GPP in connection with the alleged conspiracy by the Corporate Defendants. *Alvord-Polk*, 37 F.3d 996 at 1009 ("[T]he *Hydrolevel* rule that an association[] … may … be[] held liable for the actions of its agents cannot be extended to defeat the 'concerted action' requirement of section 1.").[17] TruePosition's failure to allege any such concerted action by 3GPP thus remains fatal to its claim against 3GPP regardless of *Hydrolevel*.

*Second*, TruePosition's *Hydrolevel* theory is essentially based on the unsupported allegation that the Corporate Defendants engaged in the alleged unlawful conduct under the apparent authority of 3GPP. Am. Compl. ¶¶ 114-15. Such conclusory allegations, however, bear no consideration because they are directly contradicted by the allegations stating that the Corporate Defendants could achieve their alleged unlawful conspiracy only by abusing and violating 3GPP rules. *See supra* at 5. Such allegations render *Hydrolevel* inapposite here. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, No. 91-1366, 1992 WL 246906, at *4 (7th Cir. 1992) (distinguishing circumstances in *Hydrolevel* – in which "it was clear that the people who committed the antitrust violation were agents of the defendant: they were officers of defendant, purporting to act officially in the defendant's behalf"); *Processed Egg I*, 821 F. Supp. 2d at 753

---

[17] In its prior briefing in opposition to ETSI's Motion to Dismiss the Amended Complaint, TruePosition argued that *Hydrolevel* stands for the proposition that a "standard-setting body … faces antitrust liability whenever it allows the process by which it arrives at decisions to include or exclude certain technologies to be captured by committee chairs who manipulate the process toward the interest of their employers rather than allowing standards to develop based on due process and objective technical merit." Dkt. 105 at 16. This novel interpretation of *Hydrolevel* is in direct conflict with the Third Circuit's holding in *Alvord-Polk* as it would read the "concerted action" element out of Section 1 entirely. It would also lead to the absurd result that an SSO would be subject to antitrust liability whenever its procedural rules are violated. We are not aware of any authority that supports such a novel interpretation of *Hydrolevel*, nor has TruePosition identified any such authority in its prior briefing.

-13-

(no claim stated where plaintiff failed to "allege facts sufficient to demonstrate the agents were acting with [] apparent authority").

*Third*, it is the law of the case that in the absence of direct evidence (or here allegation) of a conspiracy, a plaintiff such as TruePosition must allege actions against interest to establish liability under Section 1 of the Sherman Act – and nothing in *Hydrolevel* is to the contrary. Mem. at 42-43.[18] Here, in contrast to the allegations directed to the Corporate Defendants, TruePosition fails to allege any conduct by 3GPP that is claimed to be against 3GPP's interests. Again, the only conduct alleged with respect to 3GPP is *inaction*, which, as a matter of law, is insufficient to state an antitrust conspiracy claim. *See supra* at 10.

---

[18] This issue was fully litigated in connection with the dismissal of TruePosition's original Complaint, and relitigation of the issue is barred. *See In re Le-Nature's, Inc.*, No. 9-MC-162, 2012 WL 363981, at *2 (W.D. Pa. Feb. 2, 2012) ("relitigation of issues previously determined in the same litigation" is barred under the law of the case doctrine) (quoting *UGI Corp. v. Piccione*, No. 88-1125, 1997 WL 698011, at *7 n.11 (E.D.Pa. Nov. 5, 1997)).

A/75106812.1

## V.    CONCLUSION

For all of the foregoing reasons, TruePosition's Amended Complaint fails to state a claim under Section 1 of the Sherman Act against 3GPP.  The Amended Complaint should, therefore, be dismissed without leave to replead and with prejudice as to 3GPP.

Dated:  August 15, 2012

**BINGHAM MCCUTCHEN LLP**

By:    /s/ Richard S. Taffet
     Richard S. Taffet, *admitted pro hac vice*
     Derek Care, *admitted pro hac vice*
     399 Park Avenue
     New York, NY 10022-4689
     (212) 705-7729
     richard.taffet@bingham.com
     derek.care@bingham.com

     William S.D. Cravens, *admitted pro hac vice*
     **BINGHAM McCUTCHEN LLP**
     william.cravens@bingham.com
     2020 K Street N.W.
     Washington, DC  20006-1806
     (202) 373-6083
     william.cravens@bingham.com

     Stephen W. Armstrong
     **MONTGOMERY, MCCRACKEN,**
     **WALKER & RHOADS, LLP**
     123 South Broad Street
     Philadelphia, PA  19109
     (215) 772-7552
     sarmstrong@mmwr.com

     *Attorneys for Defendant*
     *Third Generation Partnership Project*

A/75106812.1