IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUEPOSITION, INC., <br>           Plaintiff, <br><br> v. <br><br> LM ERICSSON TELEPHONE COMPANY (Telefonaktiebolaget LM Ericsson), QUALCOMM INC., ALCATEL-LUCENT, U.S.A., INC., and THIRD GENERATION PARTNERSHIP PROJECT a/k/a 3GPP, <br>           Defendants. | CIVIL ACTION <br> 2:11-cv-04574-RFK |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT THIRD GENERATION PARTNERSHIP PROJECT'S
<u>MOTION TO DISMISS TRUEPOSITION, INC.'S AMENDED COMPLAINT</u>**

A/75162943.1

## TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|------|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | ARGUMENT | | 3 |
|   | A. | The Amended Complaint Precludes Any Reliance On An Apparent Authority Theory Under *Hydrolevel* | 3 |
|   | B. | TruePosition's Relabeled "Ratification" Theory Is Factually And Legally Unsound | 6 |
| III. | CONCLUSION | | 8 |

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ................................................................................................................5

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
  37 F.3d 996 (3d Cir. 1994) .......................................................................................................3

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*,
  456 U.S. 556 (1982) ....................................................................................................1, 2, 3, 5

*Bates Through Murphy v. Shearson Lehman Bros., Inc.*,
  42 F.3d 79 (1st Cir. 1994) .........................................................................................................4

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) .....................................................................................................5

*Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*,
  102 F.3d 1327 (2d Cir. 1996) ...................................................................................................5

*In re Processed Egg Prods. Antitrust Litig.*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011) .....................................................................................5, 7

*In re Processed Egg Prods. Antitrust Litig.*,
  08-md-02002, 2012 WL 1443625 (E.D. Pa. Apr. 24, 2012) ....................................................7

*U.S. v. One Parcel of Land Located at 7326 Highway 45 North, Three Lakes,
  Oneida Cnty., Wis.*, 965 F.2d 311 (7th Cir. 1992) ...................................................................5

*Union City Barge Line, Inc. v. Union Carbide Corp.*,
  823 F.2d 129 (5th Cir. 1987) ....................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................1

Restatement (Second) of Agency, § 261 cmt. a (1958) ...................................................................3

Defendant Third Generation Partnership Project ("3GPP") submits this Reply Brief in further support of its Motion to Dismiss the Amended Complaint of plaintiff TruePosition, Inc. ("TruePosition") pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 131), and in response to TruePosition's Opposition to that Motion (Dkt. 140).

## I. PRELIMINARY STATEMENT

In opposition to 3GPP's motion to dismiss the Amended Complaint, TruePosition raises no dispute that the crux of its single antitrust claim is that the corporate defendants, LM Ericsson Telephone Company, Qualcomm Inc. and Alcatel-Lucent, U.S.A., Inc. (collectively the "Corporate Defendants") conspired to violate 3GPP rules and exclude an allegedly superior technology offered by TruePosition from a 4th generation mobile communication standard, known as Long Term Evolution.[1]  TruePosition makes no argument that 3GPP participated in that alleged conspiracy.  Rather, it now frames what it views as the sole issue for this Court to decide on 3GPP's motion as "whether the Amended Complaint ... alleges plausible grounds to hold 3GPP liable, based on the Corporate Defendants' abuse of authority 3GPP vested in them." (Dkt. 140 at 1).  And, it asserts that the answer to this question is found in the Supreme Court's decision in *American Society of Mechanical Engineers v. Hydrolevel Corp.*, where the Supreme Court applied specific principles of agency law to hold a standards setting organization – ASME – liable under the antitrust laws for the conduct of its agents acting with apparent authority.[2] (Dkt. 140 at 1).

Based on this narrow framing of the issue before the Court, TruePosition attempts to distance itself from its theory, as reflected by the allegations of the Amended Complaint (and as

---

[1] *See* Dkt. 131-1 at 1; Dkt. 140 at 1.

[2] 456 U.S. 556 (1982).

A/75162943.1

reflected in the original Complaint), that 3GPP's inclusion in the alleged conspiracy among the Corporate Defendants should be imputed on a theory of "acquiescence" – *i.e.*, that the allegedly unlawful conduct of the Corporate Defendants was made known to 3GPP and it did nothing about it. (*Id.* at 2). Yet, TruePosition hedges and seeks to relabel this same theory as one of ratification. (*Id.* at 2 n.4).

Regardless of whether TruePosition's narrowly framed approach or if its relabeled ratification theory is considered, however, its arguments fail as a matter of law and in light of its pleading.

*First*, distinct from *Hydrolevel*, TruePosition's pleading and arguments leave no room for the conclusion that the Corporate Defendants, by allegedly engaging in conduct contrary to and in abuse of 3GPP's established rules and policies, were acting with the apparent authority of 3GPP in pursuing their allegedly unlawful conduct. TruePosition expressly contends that the Corporate Defendants' allegedly unlawful conduct was open and notorious – *i.e.*, that it was known at the time it occurred, including to TruePosition. This eliminates any suggestion that TruePosition was under a misimpression concerning whether the Corporate Defendants were acting within or outside whatever authority they may have had as chairs of applicable 3GPP committees, and it cannot rely upon an apparent authority theory under applicable agency law principles. *Hydrolevel* is thus inapposite.

*Second*, try as it may to abandon its flawed "acquiescence by inaction" theory, as it rightly should, TruePosition's ratification theory still relies on the argument that 3GPP should be deemed to have conspired with the Corporate Defendants because it had notice of the Corporate Defendants' allegedly unlawful conspiratorial conduct, and it did nothing. (Dkt. 140 at 6-7).

2

Regardless of its label, therefore, TruePosition still would have 3GPP be an antitrust conspirator simply based on its inaction. The law rejects such a theory.

## II. ARGUMENT

### A. THE AMENDED COMPLAINT PRECLUDES ANY RELIANCE ON AN APPARENT AUTHORITY THEORY UNDER *HYDROLEVEL*.

In *Hydrolevel*, the Supreme Court held, consistent with established principles of agency law, that a standard-setting organization ("SSO") may be held liable for the "anticompetitive practices of … its agents *acting with apparent authority*." *Hydrolevel*, 456 U.S. at 574 (emphasis added). In so holding, the Supreme Court relied on the Restatement (Second) of Agency, which provides that liability under a theory of apparent authority "is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him." *Id.* at 566-67, quoting Restatement (Second) of Agency, § 261 cmt. a (1958).

Applying that standard, the Supreme Court found that apparent authority existed in *Hydrolevel* because the interpretative letter that led to the alleged anticompetitive injury was issued on the SSO's official letterhead, and was signed by one of the SSO's permanent employees. Nothing, with respect to the letter, gave any indication that would have put third parties on notice that the agents who issued the letter were *not* acting on behalf of the SSO and under its authority. *Id.* at 566-67.

Thus, *Hydrolevel* holds no more than that "a principal will be liable for an antitrust violation if an agent acting with apparent authority violates the antitrust laws." *Alvord-Polk, Inc.*

3

*v. F. Schumacher & Co.*, 37 F.3d 996, 1009 (3d Cir. 1994).[3] Here, however, the Amended Complaint and TruePosition's arguments preclude any conclusion that the Corporate Defendants were acting under the apparent authority of 3GPP when they engaged in their allegedly unlawful conduct.

Dispositively, TruePosition's entire case rests on its allegations that the Corporate Defendants engaged in their allegedly unlawful conduct "repeatedly and *openly*" in violation of 3GPP's rules. (Amended Complaint ¶ 112 (emphasis added); *see also id.* ¶¶ 1-2, 6-7, 36, 89, 143). TruePosition even alleges that it was obvious to it that the Corporate Defendants' allegedly unlawful conduct was in violation of 3GPP's rules (*id.* ¶¶ 60, 78), and that led it allegedly to object to such conduct. (*Id.* ¶¶ 82, 87, 90, 93, 120).[4]

Assuming the truth of these allegations (and arguments), TruePosition cannot succeed under an apparent authority theory as a matter of law. The Corporate Defendants' allegedly unlawful conduct simply could not have seemed to TruePosition as being the legitimate exercise of authority under 3GPP's rules. To the contrary, TruePosition was under *no* misimpression. According to it, the Corporate Defendants' alleged conduct was blatantly in violation of 3GPP's rules. *See Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 139 (5th Cir. 1987) (agent's acceptance of kickbacks that were obviously contrary to principal's interests precluded any third party from reasonably believing that he was acting on behalf of and under the authority of his principal); *see also Bates Through Murphy v. Shearson Lehman Bros., Inc.*, 42 F.3d 79, 82-83 (1st Cir. 1994) (securities broker's obviously irregular conduct and failure to

---

[3] *Accord* Dkt. 140 at 12 n.14.

[4] *See also* Dkt. 140 at 6-7 ("[E]very one of [the alleged abuses of the Corporate Defendants] was committed in open sessions of 3GPP committees."), 11 ("[T]he violation of 3GPP rules were open [and] notorious.").

4

follow proper procedures put investor on notice that broker was not acting under the authority of brokerage); *U.S. v. One Parcel of Land Located at 7326 Highway 45 North, Three Lakes, Oneida Cnty., Wis.*, 965 F.2d 311, 318-19 (7th Cir. 1992) (agent's obviously criminal conduct would have precluded a third party from believing he was acting in the ordinary course of the principal's business, and under its apparent authority). *Hydrolevel*, thus, has no applicability to the case pled here. *See Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1333 (2d Cir. 1996) (finding no apparent authority under *Hydrolevel* where a third party would have recognized from the agent's obviously irregular transactions with respect to insurance policy that he was not acting on behalf of his principal).[5]

Moreover, even if TruePosition's factual allegations and arguments did not specifically preclude and refute any showing of apparent authority (which they do), the Amended Complaint on its face is deficient because fails to plead facts demonstrating that an agent of the organization acted with its apparent authority. *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 753 (E.D. Pa. 2011) ("*Processed Egg I*") (complaint failed to state antitrust claim against organization based on conduct of its leadership and staff because it failed to "allege facts sufficient to demonstrate the agents were acting with the apparent authority of [the organization]"). TruePosition alleges no such facts, simply stating the conclusion that the Corporate Defendants were acting "under the apparent authority of 3GPP." (Amended Complaint ¶¶ 114-15).

---

[5] TruePosition's discussions of cases involving standards setting generally (*see* Dkt. 140 at 5), and of 3GPP's counsel's 16 year-old article (*id.* at 11 n.12), are of no import. Neither *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988) nor *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) involved issues of apparent authority or the imputation of conspiratorial conduct of SSO members to an SSO. Moreover, TruePosition concedes that 3GPP is governed by the precise type of rules and procedures that Mr. Taffet's article suggests. (*See* Amended Complaint ¶ 35; Dkt. 140 at 5-6). These are the very procedural safeguards that TruePosition alleges the Corporate Defendants violated "repeatedly and openly." (Amended Complaint ¶ 112).

B.  **TRUEPOSITION'S RELABELED "RATIFICATION" THEORY IS FACTUALLY AND LEGALLY UNSOUND.**

TruePosition's argument that it is not pursuing a theory of acquiescence (Dkt. 140 at 2) reflects a dramatic recasting of the Amended Complaint, and is belied by its arguments of a "ratification" theory based upon 3GPP's alleged failure to act to stop the Corporate Defendants' allegedly unlawful conduct.[6] (Dkt. 140 at 6-8).

The Amended Complaint makes clear that TruePosition seeks to make 3GPP part of the alleged conspiracy among the Corporate Defendants because it failed to "monitor and enforce the SSO Rules, and to respond to TruePosition's specific complaints concerning violations of the SSO Rules." (Amended Complaint ¶ 121). As a result, according to the Amended Complaint, 3GPP "acquiesced in, [is] responsible for, and complicit in, the abuse of authority and anticompetitive conduct by Ericsson, Qualcomm, and Alcatel-Lucent." (*Id.*). TruePosition's opposition argues to the same effect – *i.e.*, 3GPP failed to enforce its rules and due process generally (Dkt. 140 at 6); notwithstanding notice from TruePosition, "3GPP took no action to investigate, remedy, or halt" the Corporate Defendants' alleged ongoing violations (*id.* at 7); and by ignoring the alleged actual notice from TruePosition, failing to exercise oversight or enforcement of its rules and due process requirements, it enabled the Corporate Defendants to commandeer the 3GPP standard-setting apparatus. (*Id.* at 9).

So, far from not pursuing a theory of acquiescence, TruePosition has simply re-labeled it as one of "ratification." (Dkt. 140 at 2 n.4, 8).[7] It remains a theory that would have the alleged conspiratorial conduct of the Corporate Defendants imputed to 3GPP based on its *inaction* – a

---

[6] TruePosition's recasting of its theory is also inconsistent with the Court's prior finding that "TruePosition's theory of liability against [3GPP] is one of acquiescence." (Dkt. 86 at 16).

[7] In the Amended Complaint, TruePosition even uses the terms "acquiesced in" and "ratified" interchangeably. (*See, e.g.*, Amended Complaint ¶¶ 121-22).

6

legally unsound and flawed theory. (*See* Dkt. 131-1 at 10 & n.12-13, citing *Processed Egg I*, 821 F. Supp. 2d at 753 (allegation that association and its members "were aware of [and] supported" the alleged conspiracy failed to state concerted action sufficient for Section 1 claim); *In re Processed Egg Prods. Antitrust Litig.*, 08-md-02002, 2012 WL 1443625, at *5 (E.D. Pa. Apr. 24, 2012) (same)).

Notably, TruePosition offers no legal authority to the contrary, nor any basis (factual or legal) that would impose upon 3GPP the duty argued by TruePosition to enforce its rules and police conduct claimed by a member such as TruePosition as improper, beyond providing that member avenues for appeal,[8] of which TruePosition concededly failed to avail itself. (Dkt. 140 at 7 n.9).[9]

---

[8] *See* Dkt. 131-1 at 5; Declaration of William S.D. Cravens in Support of 3GPP's Motion to Dismiss TruePosition's Amended Complaint, dated August 15, 2012 (Dkt. 131-2) ("Cravens Decl."), Exh. A. at Article 12.

[9] TruePosition's argument that "such an appeal would have been futile" because at all relevant times an Ericsson employee was the chairman or one of the four members of the appeals panel, is simply speculative. Moreover, under 3GPP's rules an appeal to the panel of which the Ericsson representative sat would have been under Article 14 of 3GPP's Working Procedures. That, however, was only one of several appeals mechanisms available to TruePosition. *See* Cravens Decl., Exh. A. at Articles 12 (discussing appeals to the 3GPP Organizational Partners); 29 (discussing appeals to the 3GPP Technical Working Groups). TruePosition pursued none of them.

### III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in its Memorandum in Support of its Motion to Dismiss the Amended Complaint, TruePosition cannot escape the deficiencies of its Amended Complaint as respects 3GPP. Its theories of liability are legally flawed and contradicted by its own allegations and arguments. These defects cannot be cured, and 3GPP therefore respectfully requests that TruePosition's Amended Complaint be dismissed in its entirety as against 3GPP, with prejudice.

September 19, 2012

                            BINGHAM MCCUTCHEN LLP

By: /s/ Richard S. Taffet
Richard S. Taffet, *admitted pro hac vice*
Derek Care, *admitted pro hac vice*
399 Park Avenue
New York, NY 10022-4689
(212) 705-7729
richard.taffet@bingham.com
derek.care@bingham.com

William S.D. Cravens, *admitted pro hac vice*
**BINGHAM McCUTCHEN LLP**
2020 K Street N.W.
Washington, DC 20006-1806
(202) 373-6083
william.cravens@bingham.com

Stephen W. Armstrong
**MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP**
123 South Broad Street
Philadelphia, PA 19109
(215) 772-7552
sarmstrong@mmwr.com

*Attorneys for Third Generation Partnership Project*

## CERTIFICATE OF SERVICE

      I hereby certify that on September 19, 2012, I served the foregoing Reply Memorandum In Support Of Defendant Third Generation Partnership Project's Motion To Dismiss the Amended Complaint, dated September 19, 2012, on all parties to this litigation by ECF.

                                              /s/ Derek Care
                                              Derek Care

A/75162943.1