IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRUEPOSITION, INC. | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:11-cv-4574 (RK) |
| v. | ) | |
| | ) | |
| LM ERICSSON TELEPHONE COMPANY, | ) | |
| | ) | |
| QUALCOMM INC., | ) | |
| | ) | |
| ALCATEL-LUCENT USA INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THIRD GENERATION PARTNERSHIP | ) | |
| PROJECT, a/k/a 3GPP | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

AND NOW, this _____ day of _____, upon consideration of Plaintiff

TruePosition, Inc.'s Motion to Compel Discovery Directed to Defendant Qualcomm Inc., IT

IS HEREBY ORDERED that the Motion is GRANTED.  Qualcomm Inc. shall produce

documents responsive to Requests for Production 34 and 35 and Second Requests for

Production 1 and 2 from January 1, 2003 forward, and documents responsive to Request for

Production 17 to the extent they relate to activities within 3GPP, ATIS, ETSI, OMA or

CSRIC.

BY THE COURT

_____
Hon. Robert F. Kelly, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRUEPOSITION, INC.                          )
               Plaintiff,          )
                                   )     Case No. 2:11-cv-4574 (RK)
v.                                          )
                                   )
LM ERICSSON TELEPHONE COMPANY,              )
                                   )
QUALCOMM INC.,                              )
                                   )
ALCATEL-LUCENT USA INC.,                    )
                                   )
and                                         )
                                   )
THIRD GENERATION PARTNERSHIP                )
PROJECT, a/k/a 3GPP                         )
                                   )
               Defendants.         )
                                   )

**PLAINTIFF TRUEPOSITION, INC.'S MOTION TO
COMPEL DISCOVERY DIRECTED TO DEFENDANT QUALCOMM INC.**

    Plaintiff TruePosition, Inc. hereby moves the Court to compel defendant Qualcomm

Inc. to produce documents pursuant to Federal Rules of Civil Procedure 37(a) and 26(g), and

the Stipulated Order Establishing Protocol for Electronic Discovery (Dkt. No. 175).  The

grounds set forth for this Motion are set forth in the accompanying Memorandum of Law and

the Declaration of David Golden, with Exhibits.

Date:  August 22, 2013                      Respectfully submitted,

                                                       <u>       s/John G. Harkins, Jr.           </u>
                                                        John G. Harkins, Jr. (Atty. I.D. 4441)
                                                        Colleen Healy Simpson (Atty.  I.D. 84956)
                                                        HARKINS CUNNINGHAM LLP
                                                        4000 Two Commerce Square
                                                        2001 Market Street
                                                        Philadelphia, PA 19103-7044
                                                        (215) 851-6700

- and –

Douglas E. Rosenthal
Seth D. Greenstein
Aymeric Dumas-Eymard
David Golden
Nneka Ukpai
CONSTANTINE CANNON LLP
1301 K Street, NW, Suite 1050 East Tower
Washington, D.C. 20005
(202) 204-3500

Gordon Schnell
Alysia Solow
Jean Kim
Axel Bernabe
Joel A. Chernov
Taline Sahakian
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, N.Y. 10017
(212) 350-2700

Stuart Salen
Shelby Haverson
TRUEPOSITION, INC.
1000 Chesterbrook Blvd., Suite 200
Berwyn, PA 19312
(610) 680-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRUEPOSITION, INC. | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:11-cv-4574 (RK) |
| v. | ) | |
| | ) | |
| LM ERICSSON TELEPHONE COMPANY, | ) | |
| | ) | |
| QUALCOMM INC., | ) | |
| | ) | |
| ALCATEL-LUCENT USA INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THIRD GENERATION PARTNERSHIP | ) | |
| PROJECT, a/k/a 3GPP | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF TRUEPOSITION, INC.'S
MOTION TO COMPEL DISCOVERY DIRECTED TO DEFENDANT QUALCOMM INC.**

**I.     INTRODUCTION**

Plaintiff TruePosition, Inc. ("TruePosition") submits this memorandum of law in support of

its motion to compel discovery directed to Defendant Qualcomm Inc. ("Qualcomm").  Qualcomm

refuses to produce two narrow categories of highly relevant documents: (1) documents relating to

Qualcomm's prior violations of the due process rules of Third Generation Partnership Project

("3GPP") and four closely-related standard setting organizations ("SSOs") (Requests for Production

("RFPs") 34 & 35 and Second RFPs 1 & 2); and (2) communications between Qualcomm and its

competitors about standardizing positioning technology for LTE networks in other SSOs (RFP 17).[1]

---

[1]  TruePosition has several separate discovery disputes with Qualcomm related to search terms to
be applied to search ESI for review and production, the date range applicable to these search terms, and
custodians to be searched. The parties may require assistance from the Court, but these more
procedural issues can better be addressed separately, if necessary.

This discovery not only directly corresponds to the allegations in the Amended Complaint, it is probative of Qualcomm's "plus factors"—traditional conspiracy, and motive, intent, and opportunities to conspire—which this Court has already found relevant to TruePosition's Sherman Act claims.

This case involves the anticompetitive conduct of three telecom giants – Qualcomm, Ericsson and Alcatel-Lucent – who acted in concert to abuse the due process rules of an international SSO, Defendant 3GPP, and thereby exclude TruePosition's positioning technology from the 3GPP standards for 4G networks (and therefore from the market for positioning equipment).  Qualcomm has taken the unsupportable position that documents related to its prior violations of SSO rules are irrelevant here.  It has also taken the position that communications among the alleged conspirators at industry organizations, frequently a hotbed for collusive activity in antitrust cases, regarding the very technology at issue in this case, are not relevant.  That position is also indefensible.  In addition to the "general policy of allowing liberal discovery in antitrust cases," *Am. Health Sys., Inc. v. Liberty Health Sys.*, Civ. A. No. 90-3112, 1991 U.S. Dist. LEXIS 2612, at *6 (E.D. Pa. Mar. 5, 1991), this Court has already held that Defendants' past conduct—discovery about which Qualcomm refuses to provide—is relevant to motive to conspire.  *TruePosition, Inc. v. LM Ericsson Tel. Co., et al.*, Civ. A. No. 11-4574, 2012 U.S. Dist. LEXIS 117744, at *19-21, *33-34 (E.D. Pa. Aug. 21, 2012) (found at Dkt. No. 132).  And documents already produced in this litigation show that Qualcomm and its co-Defendants had regular exchanges, outside of 3GPP, that go directly to the heart of the antitrust conspiracy alleged in the Amended Complaint.

The discovery Qualcomm refuses to produce goes not only to motive, intent, and opportunity to conspire, but could provide an operative roadmap for showing how Defendants achieved their unlawful objective this time.  For Qualcomm is a known and repeat offender in the context of SSOs.[2]

---

[2]   Qualcomm's behavior gained notoriety in the 2003-2006 timeframe during which Qualcomm was held liable by a California federal court for subverting another standard setting organization and

The discovery it attempts to wall off goes to the deep and uncomfortable heart of the matter—that Qualcomm <u>deliberately</u> doesn't play by SSO rules.  There is no legitimate basis for refusing to produce the discovery sought and Qualcomm has rejected TruePosition's numerous attempts to narrow its requests to alleviate any claims of burden.  Therefore, pursuant to Federal Rules of Civil Procedure 37(a) and 26(g), and the Stipulated Order Establishing Protocol for Electronic Discovery (Dkt. No. 175), TruePosition respectfully moves the Court to compel the production of materials responsive to Requests for Production 17, 34, and 35 and Second Requests for Production 1 & 2.

## II.    FACTUAL BACKGROUND

### A.    TruePosition's Conspiracy Claim and Defendants' Motive to Conspire

Defendants Qualcomm, LM Ericsson Telephone Company ("Ericsson") and Alcatel-Lucent USA, Inc. ("ALU") (collectively, the "Corporate Defendants") are major players in the international telecommunications market.  *TruePosition*, 2012 U.S. Dist. LEXIS 117744, at *4.  TruePosition alleges that Defendants conspired to exclude TruePosition's U-TDOA positioning technology from the 4G/LTE mobile network standards being promulgated by 3GPP, in order to gain a decisive lead in getting to market their competing O-TDOA positioning technology.  *Id.* at *3-6.

The 2003-2006 timeframe set the stage for Defendants' conspiracy.  *Id.* at *22-52.  The Corporate Defendants understood, from their prior unsuccessful attempts to block U-TDOA from the 2G and 3G standards, that they had to act <u>together</u> to exclude U-TDOA from the 4G/LTE standards

---

attempting to conceal its efforts.  *Qualcomm Inc. v. Broadcom Corp.*, 539 F. Supp. 2d 1214, 1248 (S.D. Cal. 2007), *aff'd in part*, 548 F.3d 1004 (Fed. Cir. 2008) ("[T]he eventual collapse of Qualcomm's concealment efforts exposes the carefully orchestrated plan and the deadly determination of Qualcomm to achieve its goal of holding hostage the entire industry desiring to practice the H.264 standard.").  Qualcomm's vote-stacking misconduct also led the Institute of Electrical and Electronics Engineers, Inc. ("IEEE"), an SSO, to suspend and unwind the activities of a working group dealing with standards for mobile broadband wireless access, citing "undue influence by Qualcomm."  *See* Declaration of David Golden, dated August 22, 2013 ("Golden Decl."), Ex. A.  Qualcomm has also been sued for allegedly conspiring to manipulate standard setting processes within 3GPP and other SSOs.  *See, e.g., Golden Bridge Tech., Inc. v. Nokia, Inc., et al.*, Case No. 2:05-cv-00170 (E.D. Tx.); *Corr Wireless Comm'ns, L.L.C. et al v. AT&T, Inc., et al*, Civ. A. No. 3:12-cv-0036 (N.D. Miss.).

in 2008.  *Id.* at *33.  This Court recognized the importance of these prior events in its decision

denying Defendants' motion to dismiss:

> It is noteworthy that TruePosition argues that Ericsson and ALU
> had each unsuccessfully independently opposed TruePosition's
> efforts to create the "work-around" solution so that its LMUs could
> work with the 2G GSM RAN.  This is important because one of
> the premises upon which TruePosition's conspiracy claim lies is
> that Ericsson and ALU needed to coordinate their efforts with each
> other and Qualcomm in order to successfully preclude and forestall
> TruePosition's UTDOA technology from being included in the 4G
> LTE standard.

*Id.* at *33 (citations omitted).

   **B.      Standard-Setting Organizations and Defendants' Violations of Due Process
           Rules**

   TruePosition alleges that Defendants effectuated their conspiracy through their abuse and

violation of 3GPP's due process rules.[3]  *TruePosition*, 2012 U.S. Dist. LEXIS 117744, at *3-6.

Exclusion from 3GPP's 4G/LTE standard effectively excludes a technology from competing in the

relevant mobile telecommunications markets and guarantees commercial failure.  *Id.* at *6.

Defendants are alleged to have improperly leveraged their leadership positions in key 3GPP Working

Groups to circumvent the due process safeguards required of and by 3GPP, to benefit their own

economic interests.  *Id.* at *40.

   Qualcomm recognizes that other SSOs developing wireless network standards are so related

to Defendants' activities within 3GPP that they are deemed to be part of the same mobile

communications network standards "ecosystem."   *See* Golden Decl. Ex. F.   In other words, the

---

[3]   3GPP's Organizational Partners are regional SSOs that work closely with 3GPP in standard-
setting activities related to positioning technology. The European Telecommunications Standards
Institute ("ETSI") and the Alliance for Telecommunications Industry Solutions ("ATIS") are the
most pertinent of the Organizational Partners:  ETSI contributes to emergency telecommunications
standards and acts as the operational arm of 3GPP, *id.* Exs. B and C, and ATIS develops standards
and serves as a forum for emergency services networks including E911 location accuracy.  *Id.* Ex. D.
Qualcomm and the other Corporate Defendants are active members in both ETSI and ATIS and have
held leadership positions therein as they have in 3GPP.  *See, e.g.*, *id.* Ex. E at 10.

other SSOs are interdependent with 3GPP, and decisions made at 3GPP impact and are impacted by the work of these other SSOs.  These include 3GPP2,[4] the Institute of Electrical and Electronics Engineers ("IEEE").[5] and the Open Mobile Alliance ("OMA").[6]  Similarly, documents from Qualcomm already produced in the litigation demonstrate that exchanges regarding positioning technology occur regularly at these and other organizations in which the Corporate Defendants participate.[7]

        REDACTED

---

[4]   3GPP2 is a sister organization to 3GPP responsible for wireless standards associated with CDMA wireless networks, including positioning technologies. *See id.* Ex. G.

[5]   IEEE maintains wireless network standards and liaises with 3GPP to coordinate the standardization of wireless technologies.  *See id.* Ex. H.  *See also* n.2, *supra*.

[6]   OMA develops open standards for the mobile phone industry, has created specifications for location services and has overlaps and dependencies with 3GPP for location service enhancements. *Id.* Ex. I.

[7]   Among these other organizations is the Communications Security, Reliability and Interoperability Council ("CSRIC"), which provides reports and recommendations to the FCC to ensure optimal security and reliability of telecommunications, including the accuracy of and best practices for E911 technology.  *Id.* Ex. J.

[8]   REDACTED

                                    Although TruePosition will, if an agreement cannot be reached, address Qualcomm's refusal to search particular custodians in a separate motion, Qualcomm's intransigence amplifies the reasons why TruePosition now seeks a determination that discovery from outside of the 3GPP context is indeed relevant to its conspiracy allegations.

5

REDACTED

9

## C.    The Contested Discovery – Other SSOs and Prior Violations of SSO Rules

TruePosition served its first set of Requests for Production upon Defendant Qualcomm on

December 21, 2012.  *See* Golden Decl. Ex. P.  TruePosition served its Second Set of Requests for

Production on June 25, 2013 to supplement two of its initial Requests.  *See id.* Ex. Q.  The parties

have conducted numerous meet and confers and exchanges of correspondence in an attempt to reach

agreement on the scope of the RFPs.  Although the parties have resolved many of their

disagreements, they have apparently reached impasse with respect to the following five RFPs:

> **Request No. 34:**  All documents concerning alleged, potential, or
> actual violations of the rules, regulations, procedures, guidelines,
> due process requirements, or other policies of 3GPP or any of its
> Organizational Partners.  (from January 1, 2003 forward)
>
> **Request No. 35:**  All documents concerning any appeals within
> 3GPP or any of its Organizational Partners relating to any alleged,
> potential, or actual violations of any rules, regulations, procedures,
> guidelines, due process requirements, or other policies.  (from
> January 1, 2003 forward)
>
> **Second Request No 1:**  All Documents concerning alleged or
> actual violations of the rules, regulations, procedures, guidelines,
> due process requirements, or other policies of IEEE or 3GPP2 by
> or against You or any of the Corporate Defendants.
>
> **Second Request No. 2:** All Documents concerning any appeals
> within IEEE or 3GPP2, relating to any alleged or actual violations
> of any rules, regulations, procedures, guidelines, due process
> requirements, or other policies of IEEE or 3GPP2 by or against
> You or any of the Corporate Defendants.

---

[9]   The relevance of discussions in OMA is further demonstrated by the December 2008 Work Item
submitted by Qualcomm at 3GPP, which specifically states its intention to support "OMA SUPL."
*See* Golden Decl. Ex. O.   A location solution based solely on SUPL would by definition exclude U-
TDOA, since U-TDOA operates on the control plane, and not the user plane.

**Request No. 17:**  All documents concerning standardizing
Positioning Technologies for LTE networks including U-TDOA
and O-TDOA.  (from January 1, 2007 forward)

    *1.*    *Discovery on Violations of SSO Rules*

Requests 34 and 45 seek discovery relating to prior rule violations of 3GPP and its

Organizational Partners ETSI and ATIS.  *See* Golden Decl. Ex. R at 4.  Although Qualcomm refuses

to concede the relevance of this discovery, it initially suggested that it would conduct reasonable

searches for documents that explicitly reference allegations of violations of the rules of 3GPP, ETSI

or ATSI from 2007 forward.  *See id.* Ex. S at 3.  However, Qualcomm has now reneged on this

agreement insofar as it concerns ETSI and ATIS because it refuses to employ electronically stored

information ("ESI") search terms that would capture responsive documents — stating that any search

including the terms "ETSI" or "ATIS" is "irrelevant."  *Id.* at Ex. T (Excel attachment to letter).

Qualcomm has provided no explanation as to how responsive documents related to prior rule

violations at ETSI or ATIS would otherwise make their way into its wholly electronic production.

Nor has it provided hit rates, made any burden arguments, or provided any insight into the hows and

whys of what is planning to do.  Hence, its Responses to RFPs 34 and 35 lack the probity required by

the Stipulated Order Establishing for Electronic Discovery (Dkt. No. 175) (G.1, G.6(e), G8) and the

Federal Rules governing this case, Fed. R. Civ. P. 26(g) (Signing Disclosures and Discovery

Requests, Responses, Objections).

Qualcomm has further issued a blanket rejection to production of any documents responsive

to RFPs 34 and 35 prior to 2007, including documents related to prior violations at 3GPP itself,

Golden Decl. Ex. U at 8, contending that responsive documents preceding 2007 are irrelevant to

whether it violated 3GGP's rules or conspired in 2007-2008.  *Id.*

As for TruePosition's Second RFPs Nos. 1 and 2, which seek discovery related to prior

violations at 3GPP2 and IEEE, Qualcomm has categorically refused to search for or produce any

responsive documents on the basis of relevance.  Golden Decl. Ex. V at 4-5.  Hence, the parties are at

an impasse.

     2.          _Discovery on the Standardization of Positioning Technology for LTE_

     RFP 17 seeks documents and communications relating to the standardization of positioning technology for LTE networks _no matter where those documents and communications originated_. Qualcomm has taken the position that discovery from outside of 3GPP is not relevant and any documents covered by it will not be produced.  Golden Decl. Ex. U at 3-4.   For example, an exchange between Defendants Qualcomm and Ericsson at an OMA meeting regarding their efforts to block competing positioning technology from the 4G/LTE standards would be deemed irrelevant because the exchange does not specifically mention TruePosition, 3GPP or U-TDOA.  But Qualcomm has already acknowledged the relevance of its efforts to standardize positioning technology in OMA because an "objective" of the December 2008  Work Item submitted by Qualcomm to 3GPP[10] was, explicitly, to make it "compatible with" the OMA SUPL positioning standard that excludes U-TDOA.  _See_ Golden Decl. Ex. O (3GPP Work Item Description, Positioning Support for LTE, RP-080995).[11]  Hence, Qualcomm's exchanges with Ericsson and Alcatel-Lucent about standardizing positioning technology in OMA SUPL go directly to the Corporate Defendants' motive and intent to conspire to exclude U-TDOA within 3GPP.  And documents already produced in the litigation tie the two together.  _See_ Golden Decl. Ex. N at QCTRUE00149723 (discussing, in November 2008, using 3GPP instead of OMA to "resolve" positioning standards as OMA SUPL may "not be in time for LTE deployment").

     In an effort to resolve the issue without court intervention, TruePosition has diligently

---

[10]   TruePosition alleges that Qualcomm conspired with Ericsson and ALU to secretly prepare this Work Item, which was submitted late, and included only O-TDOA as a terrestrial positioning technology for the 4G LTE standard.  _TruePosition_, 2012 U.S. Dist. LEXIS 117744, at *35-36.

[11]   Indeed, Qualcomm has publicly stated its intention to attempt to triangulate the standards of SSOs with positioning technology standards favorable to Qualcomm into the others.  _See_ Golden Decl. Ex. F at 10 ("Qualcomm recommends that 3GPP, 3GPP2, OMA, IETF, IEEE, et al and the member companies cooperate at the requirements and systems level to avoid fragmentation of the indoor location ecosystem.").

attempted to work with Qualcomm to narrow the scope of RFP 17 by jointly determining a specified list of SSOs and industry organizations regarding which Qualcomm shall produce responsive documents.  TruePosition has ultimately offered to limit responsive discovery on RFP 17 to that related to two SSOs—ATIS and OMA—and an industry organization—CSRIC.  *See id.* Ex. W.  But Qualcomm has refused to agree to produce any documents responsive to RFP 17 relating to any organization besides 3GPP.  The parties are at an impasse.

### III.    ARGUMENT

#### A.    <u>Legal Standard</u>

Relevance is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case."  *Am. Health Sys.*, 1991 U.S. Dist. LEXIS 2612, at *6.  "Where there is doubt over relevance, [Rule 26] indicates that the court should be permissive in granting the discovery request."  *Smithkline Beecham Corp. v. Apotex Corp.*, Civ. A. No. 99-cv-4304, 2006 U.S. Dist. LEXIS 4276, at *2 (E.D. Pa. Jan. 31, 2006) (internal quotations omitted).  Moreover, "discovery in antitrust litigation is most broadly permitted and the burden or cost of providing the information sought is less weighty a consideration than in other cases."  *New Park Entm't v. Elec. Factory Concerts, Inc.*, Civ. A. No. 98-775, 2000 U.S. Dist. LEXIS 531, at *11 (E.D. Pa. Jan. 13, 2000) (internal quotations omitted).

#### B.    **Discovery of Prior Rule Violations Is Relevant to Demonstrating Defendants' <u>Intent, Motive, and Opportunity to Conspire</u>**

RFPs 34 & 35 and Second RFPs 1 & 2 seek documents and information regarding violations of 3GPP's and related SSO's rules.  The requested discovery goes to the heart of TruePosition's conspiracy claim.  It is through violations of these SSO rules that Defendants effectuated their conspiracy to block TruePosition's U-TDOA positioning technology from the 4G/LTE standards.  The requests are narrowly tailored and target conduct similar to that alleged in this action (violations of SSO rules), at the same organizations (3GPP and its organizational partners and related entities),

and by the same industry players (Qualcomm, Ericsson, ALU and other 3GPP members). This discovery is critical for several reasons.

     *1.*   <u>Evidence of Motive to Conspire</u>

Discovery about Qualcomm's earlier attempts to thwart SSO rules and procedures goes directly to Qualcomm's motive to conspire.  TruePosition has alleged that Defendants understood, from their unilateral efforts to exclude U-TDOA from the earlier 2G and 3G positioning standards that they needed to coordinate their actions in 2008 to succeed in excluding U-TDOA from the 4G/LTE standard.  *TruePosition*, 2012 U.S. Dist. LEXIS 117744, at *33-34.  Discovery regarding prior rule violations could provide evidence that Defendants ultimately decided to conspire due to these earlier failed efforts.[12]  Such evidence goes directly to one of the "plus factors"—motive—that this Court has recognized substantiates other parallel conduct in the context of a conspiracy.  *Id.* at *15 (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 321-22 (3d Cir. 2010)).

     *2.*   <u>Evidence of Intent to Conspire</u>

The discovery sought also could provide information regarding Qualcomm's intent to conspire and effectuation of the conspiracy to exclude U-TDOA from the LTE standards in 2008.  It could show, for example, that Qualcomm routinely flouted 3GPP rules and used its leadership positions in key 3GPP Working Groups to gain an advantage for technology in which Qualcomm had a stake, demonstrating Qualcomm's ability, pattern, or practice of breaking SSO rules and engaging

---

[12]  Qualcomm has argued that TruePosition is not entitled to discovery from the 2003-2006 timeframe because there is no allegation that Qualcomm opposed the inclusion of U-TDOA in 2G and 3G.  But that does not preclude that Qualcomm *did* oppose its inclusion and/or formed the motive to conspire upon observing Ericsson and ALU's failed efforts from this earlier period.  The requested discovery relates to the history behind Defendants' conspiracy and is well within the relevant scope of discovery.  *See Kleen Prods. LLC v. Packaging Corp. of Am.*, Case No. 10 C 5711, 2013 U.S. Dist. LEXIS 3016, at *28-29 (N.D. Ill. Jan. 9, 2013) (compelling production of "stage-setting" events preceding the alleged conspiracy which plaintiffs alleged "provided the Defendants with the motivation to conspire").

in anticompetitive conduct, making it more probable that it did so in 2008.[13]  It could also

demonstrate that Qualcomm previously or in other circumstances has acted in coordination with

Defendant Ericsson and/or ALU to violate 3GPP rules in order to advance their technology over

competitors', making it more probable that Defendants conspired in 2008.

Discovery of prior alleged or actual violations of antitrust laws is routinely granted.  As this

Court has reasoned, "Information concerning other formal claims and lawsuits . . . involving antitrust

issues is relevant to [defendant's] intent to engage in improper business conduct, and may lead to the

discovery of other relevant evidence."  *See New Park*, 2000 U.S. Dist. LEXIS 531, at *7.  Similarly,

Defendants' conspiratorial conduct here centered on their coordinated violations of 3GPP due

process rules, and discovery of prior violations is relevant to Defendants' intent to conspire.

    *3.*       <u>Evidence of Opportunity to Conspire</u>

Discovery of prior violations could also provide information regarding how the rules of

3GPP, ATIS, and ETSI are enforced, if at all.  This discovery is relevant for two reasons.  First,

because SSO activity is shielded from antitrust liability only when due process rules are in place and

enforced.  *TruePosition*, 2012 U.S. Dist. LEXIS 117744, at *64 (citing *Broadcom Corp. v.*

*Qualcomm Inc.*, 501 F.3d 297, 309-10 (3d Cir. 2007)).  Second, because the Corporate Defendants at

various times held positions of authority within these organizations, and may have leveraged their

authority to bias the work of those SSOs as has been shown in 3GPP.  Indeed, Qualcomm boasts of

its leadership in 3GPP for standardizing positioning technology.  *See* Golden Decl. Ex. AA at 17.

When events that pre-date the formation of a conspiracy provide evidence of conspiratorial

motive or any other element of a claim, courts have routinely provided for discovery that pre-dates,

---

[13]   Indeed, as discussed in n.2 *supra*, Qualcomm's resistance to producing this discovery is
unsurprising given the notoriety it gained during the 2003-2006 timeframe for its violations of SSO
rules and anticompetitive conduct. *See* Golden Decl. Exs. X and Y.  Qualcomm has also run afoul of
SSO procedures in Europe, resulting in numerous complaints filed with the European Commission
requesting investigation into Qualcomm's anticompetitive conduct.  *See id.* Ex. Z.

in some cases by many years, the alleged conspiracy. *See Quonset Real Estate Corp. v. Paramount Film Distrib. Corp.*, 50 F.R.D. 240, 241 (S.D.N.Y. 1970) (permitting discovery ten years prior to earliest conspiratorial act because "where intent is a vital element in the allegations the Court is reluctant to deny plaintiff the opportunity to gather evidence"); *Maritime Cinema Serv. Corp. v. Movies en Route, Inc.*, 60 F.R.D. 587, 591 (S.D.N.Y. 1973) (permitting discovery four years prior to alleged damages). The 2003-2010 timeframe for these RFPs is reasonably tailored to capture events that are relevant to key elements of TruePosition's conspiracy claim (motive, intent, and opportunity to conspire) and falls well within the scope of discovery provided by Rule 26.[14]

4.    *Evidence Implying a Traditional Conspiracy*

Finally, the discovery sought by the RFPs relating to prior actual and alleged rule violations at SSOs may provide evidence that the SSOs at issue lend themselves to a traditional conspiracy amongst competitors. Evidence implying a traditional conspiracy is another "plus factor" used to evaluate Section 1 cases in the Third Circuit. *TruePosition*, 2012 U.S. Dist. LEXIS 117744, *15-22. As this Court has recognized, SSOs are a "unique backdrop" to the conspiracy alleged by TruePosition in this case, *id.* at 21. Indeed, SSOs involve regularly scheduled meetings of competitors tasked with taking collective action. In a functional SSO, an individual player would not be able to violate the rules or due process requirements acting alone. Hence, evidence of prior actual, potential, or alleged SSO rule violations by the Corporate Defendants—which could not effectively be done alone—could show Qualcomm's awareness of  SSOs as a potential forum for conspiratorial conduct, and provide additional evidence for this case implying a traditional conspiracy.

---

[14]   Notably, Qualcomm and the other Defendants have sought discovery from TruePosition going back before 2002, and TruePosition has agreed to produce it. Allowing Qualcomm to refuse to produce discovery regarding SSO rule violations when it has sought and will obtain much broader discovery of same from TruePosition is particularly absurd because it is Qualcomm's violations of SSO rules, not TruePosition's, that are at issue in this litigation.

**C.      Discovery Relating to Communications Outside of 3GPP Is Relevant Evidence of Conspiracy**

RFP 17 seeks documents and communications regarding the standardization of positioning technology for LTE.  Qualcomm claims that documents arising in the context of other SSOs and industry organizations are irrelevant here.  This position is insupportable as documents already produced by Qualcomm demonstrate that relevant exchanges regarding positioning technology among the Corporate Defendants occur <u>regularly</u> at other organizations.  *See supra* at 4-6.

ETSI, ATIS, OMA and CSRIC routinely work with 3GPP on standard-setting for positioning technologies and were involved in setting, promulgating and/or providing a forum for discussions regarding the 4G/LTE standards.  *See id.*  All Corporate Defendants, including Qualcomm, are members.  In fact, Qualcomm has publicly recommended that 3GPP, OMA, and related SSOs "cooperate at the requirements and systems level to avoid fragmentation of the indoor location ecosystem."  Golden Decl. Ex. F at 10.  In other words, Qualcomm concedes its goal to be using standardization efforts in one SSO to leverage the positioning standards of the others.  Documents responsive to RFP 17 could thus provide <u>direct</u> evidence of the Corporate Defendants' conspiracy.

Exchanges among competitors at trade and industry organizations can provide evidence of a conspiracy and are discoverable.  *See Am. Soc. Of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 571 (1982) ("a standard-setting organization . . . can be rife with opportunities for anticompetitive activity."); *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 492 (E.D. Pa. 2005) (compelling production of trade association materials, reasoning that evidence of defendants' communications "through the aegis of a trade association may [] be relevant to establish the existence of a conspiracy or combination"); *see also TruePosition*, 2012 U.S. Dist. LEXIS 117744, at *65 ("It is clear that in the standard setting organizational setting, opportunities for agreement are prolific.").  Indeed, a high level of communications among competitors is also another "plus factor" used by courts in evaluating Section 1 claims.  *See Blomkest Fertilizer, Inc. v. Potash*

13

*Corp. of Sask., Inc.*, 203 F.3d 1028, 1033 (8th Cir. 2000); *cf. SmithKline*, 2006 U.S. Dist. LEXIS

4276, at *9 (compelling production of documents relating to defendant's communications with SSOs

reasoning "[i]t is clear that communications between a corporation and a standards-setting

organization can form the basis of an antitrust claim"); *In re Rail Freight Fuel Surcharge Antitrust

Litig.*, Misc. No. 07-489, 2009 U.S. Dist. LEXIS 99187, at *30 (D.D.C. Oct. 23, 2009) (finding

additional burden of discovery overcome by its potential utility reasoning, "courts have traditionally

found that meetings among competitors may be crucial circumstantial evidence of conspiratorial

intent."). This is prototypical, unquestionably relevant discovery for a Section 1 case.

Qualcomm's blanket refusal to produce documents relating to this limited set of two SSOs

and an industry organization is unsupported by any showing of burden. The request is narrowly

tailored, seeks documents from a limited timeframe (January 1, 2007 forward) and involves the

4G/LTE standards from which TruePosition alleges U-TDOA was excluded.[15] The wealth of case

law and the standards-related activities of ATIS, OMA, and CSRIC demonstrate that they are

relevant and must be produced.[16]

## IV.    CONCLUSION

Qualcomm has taken unreasonable and contradictory positions in discovery and is

withholding documents which obviously exist that are clearly and facially relevant to TruePosition's

conspiracy claims. TruePosition respectfully requests that the Court issue a determination that

discovery responsive to RFPs 17, 34 & 35 and Second RFPs 1 & 2 is relevant to the case, order

---

[15]   To the extent Qualcomm may contend that any relevant documents would be captured by key search terms, such contention dodges the point. The parties' dispute is over whether documents related to exchanges at ATIS, OMA, and CSRIC are relevant to begin with.

[16]   The discovery is also calculated to obtain further support for TruePosition's market definition and allegations regarding the nature of competition in positioning technology. These organizations shape standards for positioning technologies and insure compliance with regulatory requirements like E911. Therefore, discovery of their activities and discussions regarding standardizing positioning technology for LTE would provide a wealth of information regarding the parameters of and competition in the relevant markets.

Qualcomm to produce documents responsive to RFPs 34 & 35 and Second RFPS 1 & 2 from January 1, 2003 forward, and order Qualcomm to produce documents responsive to RFP 17 to the extent they relate to activities within 3GPP, ATIS, ETSI, OMA or CSRIC.

Date:  August 22, 2013                         Respectfully submitted,

                                               _____s/John G. Harkins, Jr._____
                                               John G. Harkins, Jr. (Atty. I.D. 4441)
                                               Colleen Healy Simpson (Atty.  I.D. 84956)
                                               HARKINS CUNNINGHAM LLP
                                               4000 Two Commerce Square
                                               2001 Market Street
                                               Philadelphia, PA 19103-7044
                                               (215) 851-6700

                                               Douglas E. Rosenthal
                                               Seth D. Greenstein
                                               Aymeric Dumas-Eymard
                                               David Golden
                                               Nneka Ukpai
                                               CONSTANTINE CANNON LLP
                                               1301 K Street, NW, Suite 1050 East Tower
                                               Washington, D.C. 20005
                                               (202) 204-3500

                                               Gordon Schnell
                                               Alysia Solow
                                               Jean Kim
                                               Axel Bernabe
                                               Joel A. Chernov
                                               Taline Sahakian
                                               CONSTANTINE CANNON LLP
                                               335 Madison Avenue, 9th Floor
                                               New York, N.Y. 10017
                                               (212) 350-2700

                                               Stuart Salen
                                               Shelby Haverson
                                               TRUEPOSITION, INC.
                                               1000 Chesterbrook Blvd., Suite 200
                                               Berwyn, PA 19312
                                               (610) 680-1000

                                               Attorneys for TruePosition, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUEPOSITION, INC. )<br>                             Plaintiff,           )<br>                                                   )<br>v.                                               )<br>                                                   )<br>LM ERICSSON TELEPHONE COMPANY, )<br>                                                   )<br>QUALCOMM INC.,                          )<br>                                                   )<br>ALCATEL-LUCENT USA INC.,          )<br>                                                   )<br>and                                             )<br>                                                   )<br>THIRD GENERATION PARTNERSHIP )<br>PROJECT, a/k/a 3GPP                     )<br>                                                   )<br>                             Defendants.       )<br>                                                   ) | Case No. 2:11-cv-4574 (RK) |

## CERTIFICATE OF COMPLIANCE

In compliance with Federal Rules of Civil Procedure 26(c) and 37(a)(2)(B) and Local Rule 26.1(f), undersigned counsel hereby certifies that counsel representing plaintiff has in good faith conferred and attempted to confer on a number of occasions through oral conversations and written correspondence with counsel for defendants in efforts to obtain without court action the materials sought by Plaintiff TruePosition, Inc.'s Motion to Compel Discovery Directed to Defendant Qualcomm Inc.  Despite these efforts, the parties have been unable to resolve the disputes.


_____ s/Jean Kim _____

August 22, 2013

## <u>CERTIFICATE OF SERVICE</u>

I, Evelyn R. Protano, hereby certify that on August 22, 2013 I caused true and correct copies of Plaintiff TruePosition, Inc.'s Motion to Compel Discovery Directed to Defendant Qualcomm Inc.; and Declaration of David Golden, with Exhibits in support thereof, to be served upon the following by ECF and the following means:

### <u>BY HAND DELIVERY</u>

Stephen W. Armstrong
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
sarmstrong@mmwr.com

Steven E. Bizar
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Ste. 3200
Philadelphia, PA 19102-2555
steven.bizar@bipc.com

Robert N. Feltoon
Conrad O'Brien PC
1500 Market Street
Centre Square West Tower, Ste. 3900
Philadelphia, PA 19102-2100
rfeltoon@conradobrien.com

Francis P. Newell
Peter Michael Ryan
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
fnewell@cozen.com
pryan@cozen.com

**<u>BY FIRST CLASS MAIL</u>**

Kevin J. Arquit
Peri L. Zelig
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954
karquit@stblaw.com
pzelig@stblaw.com

Roger G. Brooks
Gary A. Bornstein
Yonatan Even
John D. Biancamano
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, N.Y. 10019-7475
rbrooks@cravath.com
gbornstein@cravath.com
yevens@cravath.com
jbiancamano@cravath.com

Derek Care
Richard S. Taffet
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689
derek.care@bingham.com
richard.taffet@bingham.com

William S.D. Cravens
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, DC 20006-1806
william.cravens@bingham.com

Conor A. Reidy
Peter C. Thomas
Simpson Thacher & Bartlett LLP
1155 F Street, N.W.
Washington, DC 20004
CReidy@stblaw.com
pthomas@stblaw.com

2

Ali M. Stoeppelwerth
Brian Boynton
Perry Lange
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
ali.stoeppelwerth@wilmerhale.com
brian.boynton@wilmerhale.com
perry.lange@wilmerhale.com

s/Evelyn R. Protano
_____

3