IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUEPOSITION, INC.<br><br>             Plaintiff,<br><br>  vs.<br><br>LM ERICSSON TELEPHONE COMPANY (TELEFONAKTIEBOLAGET LM ERICSSON)<br><br>QUALCOMM, INC.<br><br>ALCATEL-LUCENT USA INC.<br><br>and<br><br>THIRD GENERATION PARTNERSHIP PROJECT A/K/A 3GPP<br><br>             Defendants. | Case No. 2:11-cv-4574-RK |

## **ORDER**

    AND NOW, this _____ day of _____, 2013, upon consideration of the Motion to Compel Discovery Directed to Defendant Qualcomm filed by Plaintiff TruePosition (Dkt. 202), and the response of Qualcomm thereto,

    IT IS HEREBY ORDERED that the Motion is DENIED as set out in the accompanying Memorandum Opinion.

                     BY THE COURT

                     _____

                     R. Kelly, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRUEPOSITION, INC.<br><br>          Plaintiff,<br><br>  vs.<br><br>LM ERICSSON TELEPHONE COMPANY (TELEFONAKTIEBOLAGET LM ERICSSON)<br><br>QUALCOMM, INC.<br><br>ALCATEL-LUCENT USA INC.<br><br>and<br><br>THIRD GENERATION PARTNERSHIP PROJECT A/K/A 3GPP<br><br>          Defendants. | Case No. 2:11-cv-4574-RK |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF
TRUEPOSITION'S MOTION TO COMPEL DISCOVERY
<u>DIRECTED TO DEFENDANT QUALCOMM</u>**

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ............................................................................... 3
II.   ARGUMENT ..................................................................................................... 5
      A.    Qualcomm Has Provided—Not "Refused"—Hit Data. ............................. 5
      B.    Qualcomm Was Not Obligated to Provide Hit Data for Queries to
            Which it Objected on Relevance Grounds. ................................................ 7
      C.    Qualcomm Now Provides a Full Hit Report Further Demonstrating
            the Burden and Overbreadth of TruePosition's Query Demands. ............. 10
      D.    TruePosition's Demand for "*Unique*" Hit Figures is Misguided............... 12
III.  CONCLUSION................................................................................................ 15

Defendant Qualcomm, Inc. ("Qualcomm") submits this Memorandum in Opposition to Plaintiff TruePosition's Motion to Compel Discovery Directed To Qualcomm ("Motion") (Dkt. 202).

Introduction

TruePosition moves this Court to order Qualcomm to provide it with unique "hit" data for 56 queries, asserting that Qualcomm has failed and in fact "refused" to provide requisite data to substantiate certain burden claims. That simply is not true, and TruePosition omits relevant facts and distorts others to argue otherwise.

*First*, Qualcomm *has* provided TruePosition with hit data where Qualcomm objected to the burden imposed by particular queries. Indeed, Qualcomm's hit reports allowed the parties to reach agreement on very extensive search terms; to date, the agreed-to search queries comprise 62 search queries that "hit" a universe of over 800,000 documents. Qualcomm has already produced many of those documents, and its review up to this point indicates that this universe of documents covers the waterfront of topics at issue in this case.

*Second*, Qualcomm has declined to provide hit data only where its objection to any given query was grounded primarily on facial irrelevance, and for good reason: a search query that on its face would hit irrelevant documents cannot be redeemed by a low hit rate. In this case, many of TruePosition's search queries—and most of the ones that remain in dispute—are queries that on their face include search terms that reach far beyond what is even arguably relevant to this litigation.[1] For such

---

[1] As a prime example of this, and as explained in more detail below, *see infra* at 11, Qualcomm has pointed out to the Court that queries 27 and 37 in TruePosition's Motion (*see* Mot. Ex. 2 at queries 27 and 37), go far beyond the topics at issue in this litigation and proposed, instead, much narrower queries. (Dkt. 201 at 11.) This Court has now

queries, Qualcomm provided detailed objections—and, often, proposed revisions—but not hit rates.  This is consistent with the approach taken by TruePosition itself, and with the ESI Order.

*Third*, notwithstanding its well-founded relevance objections, in an attempt to diminish the burden on this Court, Qualcomm attaches herewith a detailed hit report showing the number of documents hit by each of the queries still at issue.  This report further demonstrates the overbreadth of TruePosition's demands, showing that many hit over 100,000 documents each and that, in the aggregate, these queries hit over 1.2 million documents on top of the documents that Qualcomm has previously agreed to review.  The expansive scope of these queries is particularly egregious given the fact that, as noted above, the agreed-to queries already are very extensive and appear to hit on all documents pertaining to the topics at issue in this case.

*Finally*, there is simply no basis for TruePosition's request for a report of "unique" hits for each of the many disputed queries—*i.e.*, a report counting the number of documents "hit" by each query *but not by any other query*.  Such a report is not called for by the ESI Order, which is reason enough to deny TruePosition's demand that Qualcomm generate and provide one now.  Moreover, because a "unique hit" report sweeping in more than 50 queries would be meaningless and misleading, granting TruePosition's motion will not achieve the ultimate goal of the parties and the court, namely settling upon a list of queries that is reasonably drawn to finding responsive documents within the scope of TruePosition's allegations in this case.  The individual hit

---

accepted Qualcomm's position and ordered Qualcomm to run only the much narrower versions of queries 27 and 37 that were originally proposed by Qualcomm—versions that raise no burden issue and thus do not require the provision of a hit rate.  (*Compare* Dkt. 207 at 1-2, *with* Dkt. 201-1 Ex. 13 at 2.)

reports for all remaining disputed queries that Qualcomm has furnished in spite of its relevance objections provides a tool for resolving the substantive dispute over the individual queries. For reasons explained in greater detail below, a "unique hit" report is only likely to prolong an already protracted process.

I.      FACTUAL BACKGROUND

TruePosition's attempt to portray Qualcomm as recalcitrant in document production stands the facts on their head.

In January 2013, the parties agreed and the Court ordered (in the Stipulated Order Establishing Protocol for Electronic Discovery (Dkt. 175), entered on January 23, 2013 (the "ESI Order")), that the parties would use search terms to identify, from the great mass of electronically stored information in the hands of the parties' document custodians and non-custodial data sources, potentially responsive documents that would then be subject to review. Promptly after the Order was entered, in February, Qualcomm proposed to TruePosition a comprehensive set of many search terms to be applied to Qualcomm's data from 10 Qualcomm custodians and non-custodial data sources covering the relevant issues in this case. (October 10, 2013 Declaration of John Biancamano ("Biancamano Dec."), Ex. 1 (Feb. 26, 2013 Letter).) Qualcomm did not permit disputes concerning potential additional search terms to hold up its production, but instead began reviewing the documents identified by Qualcomm's search terms, and producing responsive documents by early April—months before TruePosition first produced any non-public documents, apart from organizational charts, to Defendants. (Biancamano Dec. ¶ 2.) To date, Qualcomm has produced over 1.2 million pages of responsive material—almost twice the page-count of TruePosition's production to date. (Biancamano Dec. ¶ 3.)

Meanwhile, Qualcomm has also negotiated actively and in good faith with TruePosition about its demand that Qualcomm use many additional search queries. Many of these are extraordinarily rambling, multi-part queries that on their face range far beyond even arguable relevance, and in fact sweep in huge amounts of irrelevant material. (*See infra* nn. 6-9.) In the course of discussions between the parties, Qualcomm has provided hit data repeatedly, more than sufficient to demonstrate that TruePosition needs to substantially revise (and indeed curtail) its search-term demands to focus more appropriately on matters relevant to this lawsuit. Nevertheless, Qualcomm also has agreed to accept many of TruePosition's demands to add search terms in an effort to reach compromise and avoid wasting the time of the parties and the Court. Overall, Qualcomm has agreed to 62 queries requested by TruePosition, and has added 8 more custodians. (Biancamano Dec. ¶ 4.) Using these compound and multi-part search queries, Qualcomm has agreed to search its documents using more than 1,000 search terms (*see id.*)—far beyond the number of search terms contemplated by any relevant precedent.

These 62 agreed-to search queries alone hit over 800,000 documents (October 10 Declaration of Lisa Douglas ("Douglas Dec.") ¶ 2)—already placing Qualcomm under a very heavy burden. More importantly, the search terms that are already agreed-to and in use thoroughly cover the issues actually in dispute in this case, ensuring, for instance, that *every* document from the agreed custodians that relates to Qualcomm's Work Item that is at the center of TruePosition's allegations, or to TruePosition's UTDOA technology, or to TruePosition itself, is being identified and reviewed.

TruePosition, however, appears to be intent on prolonging an endless search-term dispute. Thus, TruePosition has attempted to misuse every compromise offer that Qualcomm has made as a ratchet, by purporting to "accept" Qualcomm's offer while in fact treating the portions it likes as a concession and demanding much more.[2] (*See* Biancamano Dec. Ex. 2 (Sept. 6, 2013 Letter).) It is difficult to negotiate usefully in such a context. At the end of the most recent discussion between the parties concerning search terms—in what Qualcomm believed to be a sign of progress—TruePosition undertook to review its demands to determine if certain queries could be eliminated or narrowed. (Biancamano Dec. ¶¶ 13-15.) Instead, TruePosition filed this Motion without any further discussion or notice. (Biancamano Dec. ¶ 15.)

II.   ARGUMENT

    A.   <u>Qualcomm Has Provided—Not "Refused"—Hit Data.</u>

As noted above, in the months since the ESI Order was entered by the Court, Qualcomm has negotiated in good faith with TruePosition, and has greatly expanded the scope of its search in response to one request after another from TruePosition. In that context, where Qualcomm objected to search queries on the basis of burden, Qualcomm has been forthcoming with hit data that amply substantiates the need for TruePosition to rein in its unreasonable search term demands:

---

[2] For example, in its August 20 proposal—the most recent proposal TruePosition has made—TruePosition purported to accept Qualcomm's July 31 counteroffers concerning two queries, only to turn around and propose as freestanding queries the objectionable portions that Qualcomm had omitted. (Biancamano Dec. ¶¶ 8-9; Mot. Ex. 2 at queries 9 and 10.) As another example, Qualcomm on July 31 counterproposed, on a query concerning positioning, to omit from TruePosition's proposed query a term that has nothing to do with positioning technologies—specifically, a term reflecting the title of an Ericsson-published document. On August 20, TruePosition purported to accept Qualcomm's counteroffer, while at the same time proposing the Ericsson-published document title as a freestanding term. (Biancamano Dec. ¶¶ 10-11.)

5

- On June 27, during a meet-and-confer, Qualcomm provided TruePosition with hit rate data for virtually every query then proposed that Qualcomm argued would be burdensome, as well as other queries that Qualcomm had identified as facially overbroad (*i.e.*, queries that include search terms that are irrelevant to any issue in this case). Included in this, for example, was data showing that queries concerning 3GPP, Ericsson, the 3GPP working procedures, and Alcatel-Lucent would each hit over 875,000, 440,000, 290,000, and 270,000 documents, respectively. (Biancamano Dec. ¶¶ 5, 12.)

- On July 31, Qualcomm gave TruePosition hit data showing that the agreed terms and Qualcomm's counterproposed terms would encompass nearly 700,000 documents for Qualcomm to review. (Biancamano Dec. ¶ 6; *id.* Ex. 3.)

- On July 31, Qualcomm also gave TruePosition hit data for 16 queries for which Qualcomm claimed burden, showing that those queries as proposed or as narrowed by Qualcomm would hit over: 515,000, 470,000, 320,000, 300,000, 260,000, 285,000, 250,000, 220,000, 160,000, 140,000, 140,000, 125,000, 115,000, 100,000, 105,000 and 36,000 documents. (Biancamano Dec. ¶¶ 7, 12; *id.* Ex. 3.)[3]

- On September 6, Qualcomm gave TruePosition hit data showing that the agreed terms and Qualcomm's counterproposed terms at this stage in the negotiations would now encompass over 850,000 documents. (Biancamano Dec. Ex. 2 (Sept. 6, 2013 Letter).)

- On September 16, Qualcomm gave TruePosition hit data showing that the agreed terms and Qualcomm's counterproposed terms would now encompass nearly 1 million documents. (Sept. 16, 2013 Declaration of Robert Feltoon in Support of Qualcomm's Opposition to TruePosition's Motion to Compel (Dkt. 201-1 ¶ 7).)

- On September 16, Qualcomm also gave TruePosition hit data showing that queries concerning ATIS and ETSI would encompass over 250,000 documents each. (*Id*. at ¶ 8.)

- On September 17, during a meet-and-confer, Qualcomm gave TruePosition hit data showing that even a subset of the queries that TruePosition now demands would add an additional 1.2 million

---

[3] Of the 56 queries for which TruePosition now demands unique hit data, 19 are among those queries concerning which Qualcomm had *already* provided hit data, sometimes on multiple occasions. (Biancamano Dec. ¶ 12 (June 27: queries 8, 15, 24, 25, 26, 28, 31, 35, and 38) (July 31: queries 13, 14, 17, 20, 24, 25, 26, 32, 38, 39, 40, 41, 45, and 47).)

> documents *on top of* the documents that Qualcomm has already agreed to review. (Biancamano Dec. ¶ 13.)[4]

- On September 17, Qualcomm offered to provide additional hit data for individual queries after TruePosition responded to the issues of facial relevance and overbreadth that Qualcomm had raised. (Biancamano Dec. ¶ 14.)

As this summary makes clear, TruePosition's suggestion that Qualcomm has "refused" to provide meaningful hit data is simply not true; Qualcomm has provided extensive hit data where it believed a query to be objectionable on burden grounds, and has done so repeatedly. And importantly, this iterative process allowed the parties to reach agreement on very extensive search terms; as noted above, Qualcomm has agreed to use over 1,000 search terms comprising 62 queries (*see* Biancamano Dec ¶ 4), hitting well over 800,000 documents (*see* Douglas Dec ¶ 2), including—based on Qualcomm's review and productions to date—documents pertaining, even remotely, to the core issues in dispute in this case.

B.  Qualcomm Was Not Obligated to Provide Hit Data for Queries to Which it Objected on Relevance Grounds.

What is true is that Qualcomm has not provided hit data for every query to which it objects on the basis of relevance. This is because, where a query on its face seeks irrelevant documents, the question of "burden" is inapposite, and to provide hit data invites the wrong conversation. A party is not entitled to demand that its opponent apply *irrelevant* queries, and thus search for and review *irrelevant* documents, so long as those

---

[4] The 1.2 million additional documents are generated by the 29 queries that TruePosition was identifying as "in dispute" at that point in the negotiations, which are a subset of the 56 queries that it makes the subject of its Motion. Contrary to what TruePosition claims in its Motion, Qualcomm specifically told TruePosition during this meet-and-confer that this was the total number of documents hit by those 29 queries *over and above* those documents that Qualcomm had agreed to review. (Biancamano Dec. ¶ 13.)

7

irrelevant demands are "not burdensome". Such queries are inherently improper and constitute an impermissible fishing expedition—regardless of how many documents they may "hit". Thus, where the core problem is that a query targets irrelevant material, Qualcomm has responded appropriately by explaining the irrelevance, and in a number of cases by proposing specific modifications to correct the problem.[5] And many of TruePosition's queries do, on their face, target vast swaths of irrelevant material, including:

- a long query that would encompass *any* reference to "opposing" *any* "work item" on *any* topic on *any* standard within *any* of 11 different standards-setting organizations, as well as *any* reference to "complying" with *any* "standard" associated with *any* of those 11 SSOs—in addition to an immense array of additional documents;[6]

- a query that would sweep in *any* reference to *any* 3GPP "working procedure" in *any* context;[7]

- a query that would encompass *every* reference to "positioning technology" in *any* context and for *any* purpose—in addition to much else;[8] and

---

[5] For example, as of July 9, as TruePosition recognized (*see* Biancamano Dec. Ex. 5 (TruePosition July 9, 2013 Letter)), the *only* hit data demanded by TruePosition up to that point in negotiations that Qualcomm had declined to provide was data concerning certain queries as applied to documents from before 2007. Qualcomm declined to provide this data on the basis of the inherent irrelevance of this time period—more than two years before the alleged conspiracy—not because of "burden". The Court's October 1, 2013 Order supports this position. (Dkt. No. 207.) *See also supra* n.1 (noting that Qualcomm provided counterproposals limiting queries 27 and 37 because the queries were facially overbroad—and this Court accepted Qualcomm's proposed revisions).

[6] Mot. Ex. 2 at query 36 ["(3gpp OR 3gpp2 OR arib OR ccsa OR tta OR ttc OR etsi OR atis OR esif OR ieee OR oma OR cdma) AND ((complain* OR appeal* OR oppos* OR comply OR protest OR contest* OR break* OR unfair* OR delay*) w/75 ((work* W/3 item*) OR wi OR wid OR wids OR develop* OR procedure* OR duty OR duties OR oblig* OR conduct* OR submi* OR specification* OR ts OR tsg OR chair* OR regulat* OR process OR standard*))"]. As indicated in Douglas Dec. Ex. 1, this request hits on more than half a million documents.

[7] *Id.* at query 38 ["(('working procedure' OR 'working procedures') AND (3gpp OR 'third generation') OR (wp W/25 (3gpp OR 'third generation')))"].

8

- a query that would sweep in *every* reference to *any* "rule", "policy" or "procedure" of *any* "SSO", regardless of topic—in addition to a great many other documents.[9]

Where, on the other hand, the core objection was of undue burden, Qualcomm *has* provided hit data.

This was and remains the correct dividing line. It is consistent with both logic and the terms of the ESI Order. It is consistent with the parties' practice through these negotiations. Thus, when the parties were negotiating the search queries to be applied to TruePosition's data, TruePosition objected to certain queries on the grounds that on their face they would encompass "facially overbroad" and "irrelevant" documents, without providing any "hit reports" for those queries. (Biancamano Dec. Ex. 6 (TruePosition May 8, 2013 Letter).) Defendants addressed these "facial irrelevance" concerns by making narrowed proposals on the basis of TruePosition's qualitative objections—not by complaining that TruePosition owed "hit data" under the ESI Order. (Biancamano Dec. Ex. 7 (Qualcomm May 28, 2013 Letter).)

It is important to note in this context that as negotiations progressed, the parties were able to resolve many of Qualcomm's burden objections. The bulk of the outstanding disputed search queries are therefore ones where Qualcomm's objection is predicated not (or not only) on burden grounds, but on relevance grounds. Thus, against the backdrop of Qualcomm's agreement to run extensive searches already hitting over 800,000 documents, comprising most, if not all, of the relevant documents in this case, a

---

[8] *Id.* at query 23 ["positioning w/5 (indoor OR urban OR canyon OR accura* OR tech* OR contribution*)"].

[9] *Id.* at query 28 ["((set* W/2 standard*) OR sso* OR sdo*) W/150 (rule OR rules OR ruled OR ruling OR rulings OR policy OR policies OR procedure OR procedures OR procedural OR power OR powerful OR market OR markets)"].

hit report on many disputed queries that on their face are designed to hit *irrelevant* documents could hardly lead the parties in the right direction towards final resolution.

      C.      Qualcomm Now Provides a Full Hit Report Further Demonstrating the Burden and Overbreadth of TruePosition's Query Demands.

With all that said, Qualcomm's goal throughout has been to reach agreement on searches and complete its production. Qualcomm believes that extensive agreement has already been reached—and that complete agreement could yet be reached—by negotiation. Qualcomm has no desire to waste the time of this Court, and so long as the issue of relevance is kept front and center, then hit data will merely confirm that TruePosition's irrelevant queries also add up to a very large and unreasonable burden. Therefore, in an effort to short-cut needless dispute, Qualcomm has asked its discovery vendor to compile a full hit report for each of the queries still under discussion, within the time period 2007 forward, and provides the results of that analysis herewith.[10] (*See* Douglas Dec. Ex. 1.)

We note that thirteen of the queries on TruePosition's list are now moot or decided and thus not listed in the attached hit report, for the following reasons:

- Upon review of the hit data prepared by its discovery vendor, Qualcomm determined that confining certain of the queries to the time period from 2007 forward rendered the impact of those queries so small that it is not worth spending time arguing about even facial irrelevance, and Qualcomm will include those queries (for 2007 and forward) in its review, mooting any issue concerning hit reports for those queries. These are queries: 4, 5, 13, 33 and 50. (*See* Biancamano Dec. ¶ 4.)

---

[10] TruePosition demands that 23 of its queries be extended into years before 2007 (many as early as 1998). (*See* Mot. Ex. 2 at queries 1, 6, 7, 11, 16, 17, 19 (back to 1998); *id* at queries 2, 4, 5, 8, 26-29, 32, 33, 35, 37, 40, 42, 55, 56 (back to 2003).) However, Qualcomm believes that the subject matter of these queries before 2007 (already more than two years before the alleged conspiracy) cannot be relevant to this case, and the Court recently agreed with respect to different queries raised by TruePosition directed to pre-2007 documents. (*See* October 1, 2013 Order (Dkt. No. 207).)

- As to four more queries on TruePosition's list—6, 7, 8 and 11—Qualcomm had already agreed to these search terms as of July 31, 2013, and consistent with the Court's October 1 Order, will run these queries to cover the period January 1, 2007 and forward.  (*See* Biancamano Dec. Ex. 3; *see also* Dkt. No. 207.)

- With respect to queries 27 and 37, the Court in its October 1 Order already rejected these queries as facially overbroad and irrelevant.  (Dkt. No. 207.)  As Qualcomm pointed out to the Court, these queries encompassed nonresponsive documents by employing terms such as "influential" and "policy", which have nothing to do the topic to which the queries are directed—ETSI and ATIS rule-violation and appeals.  (*See* Dkt. 201 at 11; Dkt. 201-1 Ex. 13.)  The Court accepted Qualcomm's position and adopted the appropriately tailored queries proposed by Qualcomm in its September 10 letter.  (*Compare* Dkt. 207 at 1-2, *with* Dkt. 201-1 Ex. 13 at 2.)  Accordingly, Qualcomm will apply the queries in the form provided by the Court in its Order.

- On the other hand, Queries 55 and 56 relate exclusively to the subject of TruePosition's Second Requests for Production Nos. 1 and 2, as to which the Court's October 1 Order decided that no production is necessary.  Accordingly, these search queries have been removed from the list.

The hit report annexed hereto simply re-confirms that TruePosition's remaining 43 queries would sweep in hundreds of thousands of irrelevant documents.  For example, the hit report confirms that the four queries cited above are facially irrelevant (*see supra* nn. 6-9), and hit over 590,000, 343,000, 252,000, and 50,000 documents respectively.  (Douglas Dec. Ex. 1.)  It also shows that 10 additional queries each hit over 100,000 documents, and that 21 more each encompass tens of thousands of documents.  (*Id*.)

TruePosition therefore has all the hit data and information it needs—and more—to choose which queries it should withdraw, which it will revise to address Qualcomm's previously explained relevance objections, and which (if any) it wishes to stand on.  The ball is fairly in TruePosition's court promptly to put forth a reasonable proposal for resolution of remaining search-term demands.

D.   TruePosition's Demand for "*Unique*" Hit Figures is Misguided.

TruePosition purports to demand different figures, however. It demands "the number of *unique* documents 'hit' by each such query *that would not otherwise be required to be produced in response to any other queries*". (Mot. at 10 (emphasis added).) However, in negotiating the ESI Order, the parties did not agree to provide "unique" hit reports, and in the present setting this information would not in fact be useful to "support any claim that a particular search term is overbroad or burdensome". (ESI Order at § G.6(e).) On the contrary, it would be severely confusing and misleading.

The "hit report" provided herewith by Qualcomm gives solid, useful facts: how many documents are encompassed by each query, as well as the aggregate number of documents that all queries at issue would hit above and beyond the over 800,000 documents already hit by the agreed-to search terms. Specifically, as set forth in the hit report, the remaining 43 queries at issue would add over 1.2 million documents above those encompassed by agreed search terms. (*See* Douglas Dec. Ex. 1.) This gives insight both into burden, and also into likely relevance: given the nature and breadth of the already agreed-to queries, the fact that the additional queries would more than double the number of documents to be reviewed—to over 2 million documents—is clearly indicative of search terms that reach predominately *irrelevant* documents.

By contrast, and importantly, a per-query count of "unique" hits under TruePosition's definition is almost literally meaningless. To illustrate by a simple example: if ten proposed broad queries collectively hit one million documents, but each document is "hit" by at least two queries, then the number of "unique hits" for each one of these queries (under TruePosition's definition) is *zero*, and the total number of "unique hits" for these ten queries is also zero. (*See* Douglas Dec. ¶ 4.) Meanwhile, the *burden* is

one million documents.  To illustrate by an actual example, consider query 41, which would encompass any document that contains the letters "lcs".  (Mot. Ex. 2 at query 41.)  Now also consider query 35, which among other documents, would encompass any document that includes the letters "lcs" within a broad proximity to other words.  (*Id.* at query 35.)  Whatever "lcs" documents are encompassed within query 35 will by definition be encompassed by query 41, such that these documents will be *subtracted out of and not reported at all* among the unique hits for either of these queries.

As a result of this property, as the number and breadth of overlapping disputed queries for which unique data is sought increases, the number of documents that are omitted from a report of "unique" hits increases, too.  Thus, although a "unique hits" figure may provide useful information where the parties are examining just one or a few potential additional queries (and indeed Qualcomm itself requested "unique" data with respect to a handful of specific requests in that context in the past), such statistics will provide wildly low and misleading figures when examining a list of 107, 56 or 43 broad and overlapping queries.

Further exacerbating the problems inherent in "unique hit" statistics under TruePosition's definition, the numbers would be unstable and shifting; indeed, they would be obsolete the moment any query is added, removed, or altered in any way.  (*See* Douglas Dec. ¶ 4.)  If a query is added to the list, the number of "unique hits" for other queries will drop (to the extent there is any overlap).  If an overlapping query is dropped from the list or narrowed, the number of "unique hits" for the other queries will *increase*—even though the total number of documents hit by the set will necessary *decrease* or, at most, remain unchanged.  This chaotic property of the "unique" hit data

TruePosition demands renders such data particularly unreliable in the context of a dynamic negotiation, such as this one, with so many queries still in dispute. To attempt to update "unique hit" data every time a query is revised or an agreement is reached as to particular queries would indeed be a continuous and burdensome process.[11]

In sum, the hit data that Qualcomm has now provided is the best and most informative data that there can be where a lengthy list of queries is under discussion; with this lengthy list, the "unique hit" data demanded by TruePosition will confuse and conceal, wildly under-representing both the documents hit by individual queries and the total burden associated with the entire list. The hit information provided herewith is the proper tool for the parties to use in concluding their negotiations concerning search queries.

---

[11] The Declaration of Tuan Nguyen-Huynh submitted in support of TruePosition's Motion (Dkt. 202-1) simplifies and minimizes the complexity of compiling TruePosition's proposed terms into useable information and data. That compilation requires several steps, including: standardizing syntax of the queries; generating an initial hit report; deduplicating results; including document families; and running additional processing to isolate "unique" hits. (Douglas Dec. ¶ 5.) That repeated process promises to consume more time than the "three hours or less" project that TruePosition describes in its Motion. (Mot. at 8.)

III.     CONCLUSION

For the foregoing reasons, the Court should deny TruePosition's Motion to Compel in its entirety.

Dated: October 10, 2013                    Respectfully submitted,

                                                    /s/ Robert N. Feltoon

Robert N. Feltoon
CONRAD OBRIEN PC
1500 Market Street
West Tower - Suite 3900
Philadelphia, PA 19102
(215) 864-8064

Roger G. Brooks, *admitted pro hac vice*
Yonatan Even, *admitted pro hac vice*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Counsel for Qualcomm Incorporated*

## **CERTIFICATE OF SERVICE**

I, Robert N. Feltoon, hereby certify that I caused a true and correct copy of the foregoing Memorandum in Opposition to Plaintiff TruePosition's Motion to Compel Discovery Directed To Qualcomm, Declaration of John Biancamano and accompanying exhibits, Declaration of Lisa Douglas and accompanying exhibit, and proposed Order to be electronically filed pursuant to the Court's electronic court filing system, and that the filing is available for downloading and viewing from the electronic court filing system.


                                              */s/ Robert N. Feltoon*
                                              Robert N. Feltoon

Dated: October 10, 2013