IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUEPOSITION, INC.<br><br>　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>LM ERICSSON TELEPHONE COMPANY (TELEFONAKTIEBOLAGET LM ERICSSON)<br><br>QUALCOMM, INC.<br><br>ALCATEL-LUCENT USA INC.<br><br>and<br><br>THIRD GENERATION PARTNERSHIP PROJECT A/K/A 3GPP<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:11-cv-4574-RK<br><br>**REDACTED** |

**MEMORANDUM IN SUPPORT OF DEFENDANT QUALCOMM INC.'S
MOTION TO COMPEL PLAINTIFF TRUEPOSITION, INC. TO ANSWER
<u>CERTAIN INTERROGATORIES</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

I.  TRUEPOSITION SHOULD BE REQUIRED TO IDENTIFY
    COMMUNICATIONS WITH CUSTOMERS OR POTENTIAL
    CUSTOMERS ABOUT 3GPP STANDARDIZATION OF UTDOA IN
    RESPONSE TO QUALCOMM'S INTERROGATORY NO. 3 ............................. 4

    A.  TruePosition Has Not Answered Qualcomm's Interrogatory
        Concerning Customer Communications About Standardization of
        UTDOA. ....................................................................................................... 4

    B.  Qualcomm is Entitled to a Full Answer to Its Interrogatory
        Concerning Customer Communications About Standardization of
        UTDOA. ....................................................................................................... 6

    C.  Responding to Qualcomm's Interrogatory No. 3 is not
        Burdensome. ................................................................................................ 7

II. TRUEPOSITION SHOULD BE REQUIRED TO IDENTIFY SPECIFIC
    SALES AND SALES OPPORTUNITIES THAT IT ALLEGES WERE
    LOST DUE TO THE CLAIMED CONSPIRACY IN RESPONSE TO
    QUALCOMM'S INTERROGATORY NO. 4. ..................................................... 8

CONCLUSION ....................................................................................................................... 13

Defendant Qualcomm Inc. ("Qualcomm") submits this Motion to Compel Interrogatory Responses Directed to Plaintiff TruePosition, Inc. ("TruePosition"), pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii), to compel TruePosition to respond substantively and fully to two interrogatories seeking identification of (i) any oral or written communications with existing or potential customers concerning inclusion of UTDOA in, delay in inclusion of UTDOA in, or exclusion of UTDOA from, the 3GPP 4G/LTE technical specification; and (ii) any lost sales opportunities purportedly caused by the alleged conspiracy.  Each of these issues goes to the heart of TruePosition's case. Qualcomm is entitled to complete and accurate answers to its Interrogatories now, in order to enable it to prepare its defense and plan for additional discovery (including third party discovery).

INTRODUCTION

The theory of TruePosition's case is that potential customers have refused to buy its products *because* the UTDOA positioning technology that TruePosition markets has not, until recently, been made part of the 4G/LTE technical specification— allegedly because of anticompetitive actions by the Defendants.  Specifically, TruePosition alleges, with no supporting detail, that inclusion of its positioning technology in the 3GPP standard for 4G/LTE is "vital to [its] commercial success" (Am. Compl. ¶ 4; Dkt. No. 91) and that as a result of the exclusion of UTDOA from the 3GPP 4G/LTE specification (*e.g.*, Am. Compl. ¶ 2), TruePosition has been:  (i) "foreclosed from developing, manufacturing or selling its U-TDOA positioning products"; (ii) "foreclosed . . . from bidding for potential contracts to sell its U-TDOA positioning products"; and (iii) "harmed in its efforts to sell positioning equipment for 2G and 3G networks" (Am. Compl. ¶ 138).

Qualcomm, on the other hand, believes that this litigation is completely baseless and that, while TruePosition's sales have indeed plummeted in recent years, it has not lost a *single* sale due to any delay in TruePosition achieving 3GPP consensus to include UTDOA in the LTE specification.

On the contrary ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Qualcomm further believes that the reasons for TruePosition's commercial failure in 4G (and, prior to that, in 3G) are clearly reflected in the public record, which shows that the *only* two major customers in TruePosition's history—T-Mobile and AT&T—decided to migrate away from UTDOA beginning in 2007, *before* the alleged conspiracy began, many years before LTE was expected to be commercially rolled out, and for reasons unrelated to any (future) exclusion of UTDOA from the 4G/LTE technical specification. T-Mobile has stated publicly that it decided to migrate away from TruePosition's technology to A-GPS because TruePosition's technology was unable to meet FCC accuracy requirements.[1] AT&T—a TruePosition customer that TruePosition's Amended Complaint hails as a supporter of TruePosition's technology—has publicly derided as "patently false" TruePosition's theory that UTDOA was excluded in the 3GPP standard-setting process

---

[1] T-Mobile USA, Inc., Reply Comments of T-Mobile USA, Inc. (FCC) (Nov. 16, 2013), at 2 ("TruePosition ignores the fact that network based providers such as T-Mobile were prompted to migrate to A-GPS and away from U-TDOA as their primary location technology because (among other reasons) U-TDOA could not meet the FCC's accuracy requirements on a county-based level in all counties—even at the [lowest] accuracy threshold."), attached as Ex. 1 to Declaration of Benjamin Diessel in Support of Motion to Compel Plaintiff TruePosition, Inc. to Answer Certain Interrogatories ("Diessel Decl.").

for 4G/LTE to serve "the business interests of a few participating manufacturers".[2] And as Defendants set forth in their prior Motion to Compel, both T-Mobile and AT&T were denouncing TruePosition's technology to the FCC as too costly and too complex—and TruePosition's positioning performance claims as "biased", "without basis", and "inaccurate"—by 2007 and 2008, well before the alleged conspiracy that TruePosition now seeks to blame for its apparent commercial troubles.  (Dkt. No. 227-1, at 6).

TruePosition will surely protest that "causation" is a complex factual question, but Qualcomm has attempted to cut through the baseless allegations and the supposed complexity by asking just two simple questions in two Interrogatories:

- When *if ever* have potential customers raised with TruePosition any concern at all about whether UTDOA was or would be included in the LTE standard?[3]  and

- Exactly what sales has TruePosition lost *because* of the alleged delay in including UTDOA in the LTE standard?[4]

As detailed in this motion, TruePosition has given absolutely meaningless and content-free answers to these two Interrogatories, and has even refused to confer with Qualcomm to address the inadequacy of its answers.[5]  TruePosition has no legal basis to

---

[2] AT&T Inc., Reply Comments of AT&T, Inc. (FCC) (Feb. 18, 2011), at 24, attached as Ex. 2 to Diessel Decl.

[3] Interrogatory No. 3: "Identify all communications with any customer or potential customer concerning inclusion of UTDOA in, delay in inclusion of UTDOA in, or exclusion of UTDOA from, the 3GPP/4G LTE technical specification."  Def. Qualcomm's First Set of Interrogs. Directed to Pl. TruePosition, Inc. (Sept. 20, 2013) ("Qualcomm Interrogatories"), at 5, attached as Ex. 3 to Diessel Decl.

[4] Interrogatory No. 4: "Identify each Lost Sales Opportunity that TruePosition claims occurred as a result of the alleged conspiracy."  Qualcomm Interrogatories, at 5.

[5] Qualcomm asked to meet and confer on November 12, 2013, to discuss TruePosition's meritless refusal to provide discovery concerning its foreign government customers and its refusal substantively to respond to these interrogatories.  *See* Letter from B. Diessel to T. Sahakian (Nov. 12, 2013), at 3, attached as Ex. 4 to Diessel Decl.

3

deny this basic discovery into the factual bases for its core allegations of causation and harm. The Court should thus compel TruePosition to respond.

ARGUMENT

I. TRUEPOSITION SHOULD BE REQUIRED TO IDENTIFY COMMUNICATIONS WITH CUSTOMERS OR POTENTIAL CUSTOMERS ABOUT 3GPP STANDARDIZATION OF UTDOA IN RESPONSE TO QUALCOMM'S INTERROGATORY NO. 3.

   A. TruePosition Has Not Answered Qualcomm's Interrogatory Concerning Customer Communications About Standardization of UTDOA.

TruePosition asserts that it is the exclusion of its technology from the 4G/LTE technical specification that has caused TruePosition to lose sales. (*E.g.*, Am. Compl. ¶¶ 4, 137-38.) If, as Qualcomm believes, potential customers are not even raising with TruePosition the topic of whether UTDOA is or is not, or will be or will not be, part of the LTE standard, this fact will deal a strong if not fatal blow to TruePosition's speculative theory of competitive harm. Accordingly, Qualcomm's Interrogatory No. 3 asked TruePosition to identify with appropriate specificity each communication with actual or potential customers "concerning inclusion of UTDOA in, delay in inclusion of UTDOA in, or exclusion of UTDOA from, the 3GPP 4G/LTE technical specification". (Qualcomm Interrogatories, at 5.)

---

TruePosition responded on November 14, 2013 that it would not be appropriate to confer on all topics while Qualcomm's previous Motion To Compel was pending before this Court. *See* Letter from A. Sheedy to B. Diessel (Nov. 14, 2013), at 1-2, attached as Ex. 5 to Diessel Decl. Qualcomm again requested to confer on December 2, 2013 "leaving aside those issues that are the subject of the pending motion to compel". *See* Letter from B. Diessel to A. Sheedy (Dec. 2, 2013), at 3, attached as Ex. 6 to Diessel Decl. Qualcomm received no response, and on December 6, Qualcomm again asked to meet and confer. *See* Letter from B. Diessel to A. Sheedy (Dec. 6, 2013), attached as Ex. 7 to Diessel Decl. TruePosition wrote back to Qualcomm on December 9, stating it would stand on its deficient responses, and declined to meet and confer. *See* Letter from A. Sheedy to B. Diessel (December 9, 2013), attached as Ex. 8 to Diessel Decl.

TruePosition's Amended Response to Interrogatory No. 3, set forth below, is a non-answer:



(*See* excerpts from TruePosition's Amended Complaint, attached as Ex. 11 to Diessel Decl.)

As to the supposed identification of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6] Pl. TruePosition's Amended Responses and Objections to Def. Qualcomm's First Set of Interrogs. (Nov. 18, 2013), at 9 (emphasis added) ("Amended Responses"), attached as Ex. 9 to Diessel Decl. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pl. TruePosition's Responses and Objections to Def. Qualcomm's First Set of Interrogs. (Oct. 21, 2013), at 12 ("Responses"), attached as Ex. 10 to Diessel Decl.

[7] In any case, it is improper to answer an interrogatory by referring to paragraphs in a complaint. *See, e.g.*, *Collier v. Ecolab, Inc.*, 1996 WL 171536, at *1 (E.D. Pa. Apr. 10, 1996) ("Answers to interrogatories should be complete and should not refer to other documents such as pleadings or depositions"); *DiPietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. Nov. 4, 1992) (similar); *Stabilus, A Div. of Fichtel & Sachs Indus., Inc. v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 264 (E.D. Pa. Oct. 1, 1992) (similar).

[8] For oral communications, Qualcomm requested a rather ordinary "identification" consisting of "(1) the names of the parties to the communication; (2) the date or

5

████ Worse, what these ████████████████████████████ were about (if they took place) is entirely inscrutable: ████████████████████████████████ ████████████████████████████████████ Whatever that means, it is not what Qualcomm asked. Qualcomm asked a specific question: what communications (if any) has TruePosition had with customers concerning "*inclusion* of UTDOA in, *delay* in inclusion of UTDOA in, or *exclusion* of UTDOA from, the 3GPP/4G LTE technical specification" ████████████████████████ TruePosition's "response" does not even purport to respond to this question.

> B.  Qualcomm is Entitled to a Full Answer to Its Interrogatory Concerning Customer Communications About Standardization of UTDOA.

The law reinforces common sense to say that Qualcomm is entitled to a full answer to its Interrogatory, which goes straight to the foundation of the vague allegations of antitrust injury contained in TruePosition's complaint. Qualcomm is "entitled to know each source from which [TruePosition] gleaned the facts which [it] alleges support [its] claims"—in this case its claim that inclusion of UTDOA in the LTE specification (or any delay in that inclusion) has had anything at all to do with TruePosition's ability (or inability) to sell its product. *Pettyjohn v. Goodyear Tire & Rubber Co.*, 1992 WL 94895, at *5 (E.D. Pa. Apr. 20, 1992); *see also Clubcom, Inc. v. Captive Media, Inc.*, 2009 WL 454919, at *2 (W.D. Pa. Feb. 24, 2009) (granting defendant's motion to compel and ordering plaintiff to "provide a complete and specific response" to defendant's interrogatory seeking "each fact upon which [plaintiff] bases its

---

approximate date of the communication; (3) the substance of the communication; and (4) the method of communication." Qualcomm Interrogatories, at 2. For each written communication, Qualcomm similarly requested that TruePosition state "its (1) date; (2) author(s); addressee(s); and recipient(s); (3) type; (4) general subject matter; and (5) physical or electronic location". *Id.*

contention that it is entitled to recover damages"); *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 315 (E.D. Pa. Jan. 24, 1980) ("Defendants are entitled to know the factual content of plaintiff's claims with a reasonable degree of precision."); *see also* Fed. R. Civ. P. 26(b)(1) (permitting discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . .").

TruePosition's failure to respond to Qualcomm's Interrogatory No. 3 substantially prejudices Qualcomm's ability to prepare its defense. If customers were concerned about and discussed with TruePosition when or whether UTDOA would be included in the LTE specification, Qualcomm is entitled to know that, so that it can seek discovery on the nature, timing and context of that concern. If, on the other hand, customers did not care about this question, did not ask, and did not discuss the topic with TruePosition, Qualcomm is entitled to know that TruePosition is unable to identify any such communications. Either way, Qualcomm is entitled to a clear and responsive answer.

        C.        <u>Responding to Qualcomm's Interrogatory No. 3 is not Burdensome.</u>

Qualcomm believes that TruePosition has had few if any customer communications falling within Interrogatory No. 3, making a complete response non-burdensome. Still, even if TruePosition has had a number of such communications, the Interrogatory is appropriate and not unduly burdensome, as it is directed against a Plaintiff that initiated a lengthy, complex and costly antitrust suit. Significantly, TruePosition itself recently served two "all communications" interrogatories on

7

Qualcomm.[9]  Consistent with its obligations, Qualcomm launched a substantial effort to identify responsive oral communications, including conducting interviews of nine Qualcomm employees and review of thousands of documents.  (Diessel Decl. ¶ 5.)

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

TruePosition brought this lawsuit, and it is not shy to use the tools of discovery to serve its own ends.  TruePosition should be required to respond to Qualcomm's Interrogatory No. 3 by "identifying" responsive communications with detail and specificity.

II.     TRUEPOSITION SHOULD BE REQUIRED TO IDENTIFY SPECIFIC SALES AND SALES OPPORTUNITIES THAT IT ALLEGES WERE LOST DUE TO THE CLAIMED CONSPIRACY IN RESPONSE TO QUALCOMM'S INTERROGATORY NO. 4.

As an additional aspect of the critical issue of causation, there is the question of exactly *what* sales TruePosition has lost due to Defendants' alleged misdeeds.  TruePosition's products are not consumer items sold through innumerable anonymous transactions; ████████████████████████████████████████

---

[9] These topics for which TruePosition sought "all communications" are the following:  "all oral communications relating to the December 2008 Work Item from July 1, 2008 to March 31, 2009" (Interrogatory No. 2); and "all communications by those persons outside of Your company relating to simulations of U-TDOA for potential inclusion in a 3GPP standard for LTE" (Interrogatory No. 6).  Response of Def. Qualcomm, Inc. to Pl. TruePosition, Inc.'s First Set of Interrogs. (Sep. 30, 2013) ("Qualcomm's Responses"), at 11, 23, attached as Ex. 12 to Diessel Decl.

8

███████████████████████████████████████████████████

███ TruePosition alleges in Paragraph 138 of its Amended Complaint that it has been foreclosed from "selling its U-TDOA positioning products" and "bidding for potential contracts" as a result of the alleged conspiracy. Qualcomm's Interrogatory No. 4 asks in essence, "Foreclosed from what sales, and from bidding for which contracts?"[10] An accurate and unambiguous answer is critical to Qualcomm's ability to prepare its defense, most particularly to enable Qualcomm to identify necessary third party discovery from the counterparties associated with any claimed "lost sale" or "lost opportunity".

Again, however, TruePosition has given an entirely obfuscating and nonresponsive answer, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████ Instead, TruePosition's response reads in its entirety:

████████████████████████████████████████████

---

[10] Interrogatory No. 4 requires that TruePosition identify each "Lost Sales Opportunity" that TruePosition alleges was caused by the alleged conspiracy in Paragraph 138, and defines the term "Lost Sales Opportunity" to encompass "the alleged harms to TruePosition listed in Paragraph 138 of the Amended Complaint." Qualcomm Interrogatories, at 2 and 5. Qualcomm requested that TruePosition specifically identify each such Lost Sales Opportunity by stating: "(1) the dates during which the Lost Sales Opportunity was negotiated; (2) the potential customer and names of principal contacts; (3) the amount or approximate amount of revenue that TruePosition contends it would have recognized from the Lost Sales Opportunity, if consummated; (4) the product(s) or service(s) that were the subject of the Lost Sales Opportunity; (5) the Cellular Technology Generation to which the product(s) or service(s) were directed; and (6) the country in which the product(s) or service(s) that were the subject of the Lost Sales Opportunity would have been delivered and/or performed." *Id.* at 2-3.



Essentially every one of the hundreds of millions of cellular chipsets sold by Qualcomm in recent years contains technology that can support OTDOA and/or A-GPS positioning. The assertion ███████████████████████████████ ███████████████ is without basis. This is all the more apparent given the public record cited above showing that TruePosition's only two major historical customers—AT&T and T-Mobile—have abandoned or migrated away from TruePosition's technology due to its high cost and technical limitations, and not due to inclusion or exclusion from any standard. Beyond its claim to ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████ What TruePosition does not do is answer the question asked by Interrogatory No. 4, *i.e.*, identify all (or any) lost sales or lost bidding opportunities.

10

If, more than two years after it brought its case, TruePosition has nothing to support its damage claims but speculative generalities, and ███████████████████████████████████████████████████████████████████████████████████████████, then Qualcomm is entitled to learn that in response to its focused and specific Interrogatory.  *See Pettyjohn*, 1992 WL 94895, at *8 (stating that defendants have a right "to discover the basis of plaintiff's claim against them, for such is the purpose of discovery"); *DiPietro*, 144 F.R.D. at 280-81 (granting the defendant's motion to compel the plaintiff to "list what factors were included in her [damages] calculations and what formulae were applied in order to give defendant a reasonable opportunity to rebut plaintiff's damage analysis").

In an attempt to justify its non-answer, TruePosition has argued that Qualcomm's Interrogatory No. 4 is a "premature contention interrogatory" and that it is "more properly the subject of expert testimony".  (Responses at 12.)  The law is to the contrary.  An interrogatory that seeks—as does Interrogatory 4—identification of support for factual allegations in a complaint is entirely proper and is not a "contention interrogatory".  *See In re Automotive Refinishing Antitrust Litig.*, MDL 1426, 2006 WL 1479819, at *4 (E.D. Pa. May 26, 2006) (interrogatories seeking specific factual support for an allegation are not "contention interrogatories"); *see also King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5-6 (D.D.C. 1987) (granting defendants' motion to compel plaintiffs to answer interrogatories asking plaintiffs to "describe with particularity every loss suffered by plaintiff[s], as alleged in the Complaint", and agreeing that it is "inconceivable that, after bringing the claims in this case, plaintiffs have objected to interrogatories requesting

11

specific and detailed information" concerning "each loss").[11] TruePosition's attempt to delay its response until after expert reports are exchanged (*i.e.* until after fact discovery closes, thereby foreclosing any discovery into claimed lost sales), is similarly baseless. This Court distinguishes "facts relevant to damages" from "damage calculations, based on the[se] underlying facts . . . as prepared by experts." *Greenkeepers, Inc. v. Nike, Inc.*, 2009 WL 3581817, at *5 (E.D. Pa. Oct. 29, 2009). Whereas discovery concerning the latter may be deferred until expert discovery, the information sought by Qualcomm's interrogatory falls squarely into the former category and is appropriately the subject of discovery now. *See id.*; *see also Favreau v. Walmart Stores E., L.P*, 2011 WL 721504, at *2 (M.D. Fla. Feb. 22, 2011) (granting motion to compel plaintiff to answer an interrogatory asking plaintiff to identify the bases of its damages claims and stating that while an expert "may be necessary to refine the evidence of [its] losses, the plaintiff[] must have had some factual basis for concluding [it] had sustained losses at the time the complaint was filed"); *King*, 117 F.R.D. at 8-9 ("It is no answer for plaintiffs to assert that they will need discovery or to consult with an expert to determine their losses. They

---

[11] Even assuming, contrary to case law, that Qualcomm's Interrogatory No. 4 were deemed a "contention interrogatory", the substance of the interrogatory would nevertheless be properly asked and answered now to focus discovery in advance of summary judgment. *See King*, 117 F.R.D. at 5-6 & n.5 (granting defendants' motion to compel plaintiffs to answer loss-causation interrogatories despite plaintiffs' argument that the interrogatories were "contention interrogatories", and noting that responsive answers "early on during the pretrial stage can expose a substantial basis for a motion under Rule 11 or Rule 56, and thus lead to an expeditious and inexpensive determination of a lawsuit, or can lead to an early settlement of a case where the plaintiff discloses a strong basis in support of his claim"); *National Ass'n of Review Appraisers & Mortgage Underwriters, Inc. v. Appraisal Found.*, 64 F.3d 1130, 1135 (8th Cir. 1995) (affirming summary judgment for defendant "because the [plaintiffs] have failed to establish the existence of a triable fact on the issue of causation, an element essential to their [Sherman Act] case . . . ."), *cert. denied,* 517 U.S. 1189 (1996).

should have answered the interrogatories with such information as they then possessed . . . .").

## CONCLUSION

For the foregoing reasons, the Court should enter an order requiring TruePosition to give full, specific, and non-evasive answers to Qualcomm's Interrogatories Nos. 3 and 4, and in particular to "identify" all relevant communications (Interrogatory No. 3) and each lost sale or lost bidding opportunity (Interrogatory No. 4) consistent with the definition of "identify" set out in those Interrogatories (*see supra* nn. 8 & 10).


Date: January 6, 2014                     Respectfully submitted,

                                          /s/ Robert N. Feltoon

                                          Robert N. Feltoon
                                          CONRAD OBRIEN PC
                                             1500 Market Street
                                                West Tower - Suite 3900
                                                   Philadelphia, PA 19102
                                                      (215) 864-8064

                                          Roger G. Brooks
                                          Yonatan Even
                                             CRAVATH, SWAINE & MOORE LLP
                                                Worldwide Plaza
                                                   825 Eighth Avenue
                                                      New York, NY 10019
                                                         (212) 474-1000

                                          *Counsel for Qualcomm Incorporated*