IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUEPOSITION, INC.<br><br>                      Plaintiff,<br><br>vs.<br><br>LM ERICSSON TELEPHONE COMPANY (TELEFONAKTIEBOLAGET LM ERICSSON)<br><br>QUALCOMM, INC.<br><br>ALCATEL-LUCENT USA INC.<br><br>and<br><br>THIRD GENERATION PARTNERSHIP PROJECT A/K/A 3GPP<br><br>                      Defendants. | Case No. 2:11-cv-4574-RK<br><br>**REDACTED** |

**REPLY IN SUPPORT OF DEFENDANT QUALCOMM INCORPORATED'S MOTION TO COMPEL PLAINTIFF TRUEPOSITION, INC. TO ANSWER <u>CERTAIN INTERROGATORIES</u>**

In an attempt to understand the evidentiary basis for TruePosition's allegations of injury, Qualcomm posed two simple interrogatories, aimed at getting TruePosition to identify (i) any potential customer that has indicated to TruePosition it would not purchase TruePosition's technology due to a delay in its 4G/LTE standardization; and (ii) any potential sales to such customers that TruePosition has lost. In its Opposition, TruePosition continues to assert the existence of a "conspiracy to exclude U-TDOA from the 3GPP 4G/LTE standard" and a loss of sales "[a]s a result of this exclusion", but also continues to dodge these very simple questions and hide the evidentiary support (or lack thereof) for its assertions.[1]  To that end, TruePosition raises in its response three arguments that so distort Qualcomm's position as to require a brief response.

*First*, TruePosition misconstrues Qualcomm's Interrogatory No. 3 and suggests it requires a voluminous accounting of TruePosition's discussions in 3GPP; it does not.  *Second*, TruePosition points to a handful of irrelevant documents (which it did not file with the Court) and suggests they respond adequately to Interrogatory No. 3; they do not.  *Third*, TruePosition argues that it requires additional discovery *from Defendants* in order to respond to Interrogatory No. 4; it does not, and the argument—raised in the context of a motion to compel responses *from TruePosition*, not discovery from Defendants—is a red herring.  Qualcomm is entitled to a complete and responsive answer setting forth whatever factual bases TruePosition knows of, if any, for the injuries alleged in its complaint.

---

[1] Pl. TruePosition's Opp'n to Def. Qualcomm's Mot. to Compel Pl. TruePosition to Answer Certain Interrogs. (Dkt. No. 255) (Jan. 21, 2014) ("Opposition"), at 2.

I.      TRUEPOSITION SHOULD BE COMPELLED TO PROVIDE A FULL
        ANSWER TO INTERROGATORY NO. 3.

The public record reflects that rejection of TruePosition's technology by AT&T, T-Mobile and others had nothing to do with the date TruePosition's technology was added into the standard for 4G/LTE.[2] TruePosition maintains the opposite, claiming that inclusion in the 4G/LTE technical specification is a "commercial necessity", and blaming Defendants' alleged conspiracy to exclude its technology from Release 9 of the 4G/LTE technical specification for its commercial failure.[3] Interrogatory No. 3 asks TruePosition to substantiate these claims.

In refusing to respond to Interrogatory No. 3, TruePosition blatantly misinterprets the interrogatory as encompassing "every time it spoke at any 3GPP meeting from December 2008 to the present, and every time TruePosition or one of its customers mentioned 'LTE'".[4] But the Interrogatory has a much narrower object:  to ascertain whether TruePosition has any evidence showing that the *status*—exclusion, delay, or inclusion—of its UTDOA technology in the 4G/LTE technical specification has ever affected its *sales* efforts.[5] TruePosition's misinterpretation of the interrogatory

---

[2] *See* Mem. in Supp't of Def. Qualcomm Inc.'s Mot. to Compel Pl. TruePosition, Inc. to Answer Certain Interrogs. (Dkt. No. 249-1) (Jan. 6, 2014) ("Qualcomm's MTC"), at 2-3.  Although TruePosition continues to speak of its "exclusion" from the standard, at most it can argue delay; TruePosition's technology was accepted into the 4G/LTE standard in June 2013.

[3] Am. Compl. ¶ 138; Dkt. No. 91.

[4] Opposition, at 3.

[5] *See* Letter from B. Diessel to T. Sahakian (Nov. 12, 2013), at 3, attached as Ex. 4 to Declaration of Benjamin Diessel in Supp't of Def. Qualcomm Inc.'s Mot. to Compel Pl. TruePosition, Inc. to Answer Certain Interrogs. (Jan. 6, 2014) ("First Diessel Decl.")
Redacted

2

permeates the response in its Opposition, underpinning both its mootness and burden objections.

With respect to "mootness", TruePosition asserts that certain documents—which it identified solely by Bates number in Appendix A of its Opposition, but which it failed to attach to its Opposition filed under seal for the benefit of the Court—are sufficient to "dispose[] of Qualcomm's complaints regarding TruePosition's response to Interrogatory 3."[6] They do not even come close. Qualcomm has reviewed these documents, and attaches them to this Reply to demonstrate that nothing in this grab bag is remotely responsive to the obvious thrust of Interrogatory No. 3. Redacted

Redacted [7]

As to burden, TruePosition's objection is again predicated on its misinterpretation of Interrogatory No. 3. Responding to the question actually posed, rather than the one TruePosition has contrived in its Opposition, would be straightforward. If the nonresponsive documents that TruePosition attaches to its



---

[6] Opposition, at 8.

[7] Redacted (attached as Ex. 1 to Declaration of Benjamin H. Diessel in Supp't of Reply in Supp't of Def. Qualcomm Inc.'s Mot. to Compel Pl. TruePosition, Inc. to Answer Certain Interrogs. ("Second Diessel Decl.")), Redacted (Ex. 2 to Second Diessel Decl.), Redacted (Ex. 3 to Second Diessel Decl.). Redacted See Ex. 4 to Second Diessel Decl.

3

Opposition are the "best it has", then responding is hardly burdensome; it merely requires TruePosition to concede it can identify no instance where any potential customer identified standardization as a relevant factor in its decision whether to procure TruePosition's technology.  If, on the other hand, TruePosition knows of and is withholding *truly responsive* communications, it should be compelled to identify them.  But TruePosition cannot hide the ball with a bald and overblown assertion that "all . . . communications during the relevant period touched upon TruePosition's ability to sell U-TDOA products for LTE, which necessarily implicates U-TDOA's inclusion or exclusion in the 3GPP 4G/LTE standard".[8]

II.   TRUEPOSITION SHOULD BE COMPELLED TO PROVIDE A FULL ANSWER TO INTERROGATORY NO. 4.

Interrogatory No. 4 covers the flip side of Interrogatory No. 3, and asks TruePosition to substantiate the allegations in its complaint that it lost sales as a result of the alleged conspiracy,[9] rather than because of the cost and performance of its products, as repeatedly stated by wireless carriers in the public record.  TruePosition steadfastly refuses to identify even a *single* lost sale causally linked to any "conspiracy", while continuing to stand on an obfuscating and nonresponsive answer.

TruePosition tries to muddy the loss causation waters by referring back to *Defendants*' sales of any item involving positioning technologies, including "at least" Defendants' sales to AT&T, T-Mobile, Verizon and Sprint.[10]  But TruePosition was asked to identify the sales that it believes, based on evidence *in its possession*—most

---

[8] Opposition, at 7.

[9] *See* Am. Compl. ¶ 138.

[10] Opposition, at 10.

4

notably, any communications responsive to Interrogatory No. 3—that it lost "as a result of the alleged conspiracy".[11] The fact that carriers procured positioning technologies from vendors other than TruePosition is not evidence of sales that TruePosition has "lost"—let alone sales that it has lost "as a result of the alleged conspiracy", particularly in view of the public record in which TruePosition's principal carrier customers have strongly criticized both TruePosition's technology and its performance claims. TruePosition's response is thus a non sequitur, and a wholly inadequate response to Qualcomm's legitimate request that TruePosition identify facts, if any exist, that could support TruePosition's claim for damages in this case.[12]

In a truly bizarre twist, TruePosition also contends—in an opposition to a motion seeking to compel *its own* responses—that to provide "a more specific response detailing each lost sales opportunity", it needs *additional* discovery "*from defendants and third parties*",[13] including supplementary discovery from Defendants of documents from 2013. This is a non-starter as a matter of procedure, wrong as a matter of logic, and incorrect as a matter of law. As to procedure, TruePosition is improperly trying to renege

---

[11] Def. Qualcomm's First Set of Interrogs. Directed to Pl. TruePosition, Inc. (Sept. 20, 2013), at 5, attached as Ex. 3 to First Diessel Decl.

[12] The statement itself is also incredible on its face. There is no dispute that Qualcomm's customers and TruePosition's customers are not the same: TruePosition attempts to sell single-purpose, expensive, stationary, network-based equipment *to carriers* (such as AT&T or T-Mobile); Qualcomm sells multifunctional chips that power cellular phones and tablets to *manufacturers of mobile devices* (such as Samsung, Apple, and numerous others). TruePosition's generically-stated claim that it would have had the opportunity to make every sale made by Ericsson or ALU (companies that *do* deal with carriers, but sell them suites of equipment to operate their networks), is also implausible given the reasons stated by AT&T and T-Mobile in the public record for abandoning or migrating away from TruePosition's one-note technology.

[13] Opposition, at 10 (emphasis added).

5

on an agreement entered into over nine months ago, whereby 2013 documents would be carved out of discovery *by all parties*.[14]  As to logic, as noted above, if any potential customers have declined to buy TruePosition's UTDOA products because UTDOA was not yet incorporated into the 4G/LTE specification, then the evidence of that will be in their communications *with TruePosition*, not Defendants.  And as to law, if TruePosition does not have in its possession—and never had in its possession—evidence of the actual lost sales opportunities it alleged in Paragraph 138 of its Amended Complaint, it must concede that "it cannot furnish [such] details . . . say why and set forth the efforts . . . used to obtain the information".[15]  Otherwise, TruePosition must provide a "complete, explicit and responsive" answer to the Interrogatory disclosing which lost sales it was referring to in Paragraph 138 of its Amended Complaint.[16]

---

[14] *See, e.g.*, Letter from T. Sahakian to Counsel for Defendants (Mar. 6, 2013), at 5, attached as Ex. 5 to Second Diessel Decl.; Letter from J. Biancamano to C. Simpson (Apr. 3, 2013), at 6, attached as Ex. 6 to Second Diessel Decl.; Letter from S. Bizar to J. Kim (Apr. 9, 2013), at 1, attached as Ex. 7 to Second Diessel Decl.; Letter from P. Lange to A. Bernabe & J. Kim (Apr. 17, 2013), at 1, attached as Ex. 8 to Second Diessel Decl.  TruePosition knew then, as it knows now, that it has the burden of proving causation and antitrust injury as part of its affirmative case; Qualcomm's interrogatories have changed nothing about that.  If TruePosition believed discovery of documents from after December 31, 2012 was necessary to prove its case and damages, it could and should have said so long ago, in particular before the parties recently renegotiated the discovery schedule.

[15] *Milner v. Nat'l School of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977).

[16] *Id*.

CONCLUSION

For the foregoing reasons, the Court should grant Qualcomm's Motion to Compel.

Date:  January 27, 2014                              Respectfully submitted,

/s/ Robert N. Feltoon

Robert N. Feltoon
CONRAD OBRIEN PC
    1500 Market Street
        West Tower - Suite 3900
            Philadelphia, PA 19102
                (215) 864-8064

Roger G. Brooks
Yonatan Even
    CRAVATH, SWAINE & MOORE LLP
        Worldwide Plaza
            825 Eighth Avenue
                New York, NY 10019
                    (212) 474-1000

*Counsel for Qualcomm Incorporated*