IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUEPOSITION, INC. | ) |
|                   **Plaintiff,** | ) |
| | ) Case No. 2:11-cv-4574 (RK) |
| v. | ) |
| | ) |
| LM ERICSSON TELEPHONE COMPANY, | ) |
| | ) |
| QUALCOMM INC., | ) |
| | ) |
| ALCATEL-LUCENT USA INC., | ) |
| | ) |
| and | ) |
| | ) |
| THIRD GENERATION PARTNERSHIP PROJECT, a/k/a 3GPP | ) |
| | ) |
|                   **Defendants.** | ) |

## ORDER

AND NOW, this _____ day of _____, 2014, upon consideration of the Second Joint Motion of All Defendants to Compel Discovery Directed to Plaintiff TruePosition, Inc., and TruePosition's response thereto, IT IS HEREBY ORDERED that the Motion is DENIED.

BY THE COURT

_____
Hon. Robert F. Kelly, U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRUEPOSITION, INC.** | ) |
| **Plaintiff,** | ) |
| | ) Case No. 2:11-cv-4574 (RK) |
| v. | ) |
| | ) |
| **LM ERICSSON TELEPHONE COMPANY,** | ) |
| | ) |
| **QUALCOMM INC.,** | ) |
| | ) |
| **ALCATEL-LUCENT USA INC.,** | ) |
| | ) |
| and | ) |
| | ) |
| **THIRD GENERATION PARTNERSHIP PROJECT, a/k/a 3GPP** | ) |
| | ) |
| **Defendants.** | |

## TRUEPOSITION'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DOCUMENT DISCOVERY

In yet another attempt to misuse the discovery process to smear U-TDOA and prematurely argue summary judgment, Defendants have moved to compel on two manufactured issues and in the process have wasted the Court's and TruePosition's time.

First, Defendants argue that TruePosition refuses to produce requested drive test result data and will only do so if Defendants agree to unreasonable limitations on the production. This is not true. TruePosition had agreed – *prior to Defendants' motion* – to produce all this data for its two largest customers (AT&T and T-Mobile) and has since produced the data, more than 680,000 files. TruePosition likewise had proposed that Defendants review this data and get back to TruePosition if they had any follow-up requests (for instance, data for the smaller telephone carriers). Defendants made this motion instead. In any event, TruePosition has since produced the data for the smaller carriers as well. There is no more drive testing result data to produce. Accordingly, this part of Defendants' motion is moot.

Second, Defendants paint an equally misleading picture with respect to six search queries they claim TruePosition has "adamantly refused" to run. TruePosition has not refused to run these searches. It is merely insisting on some reasonable proximity limitations in the search terms to avoid the attorney review of more than 130,000 documents that will likely result in little to no incremental benefit to Defendants. Moreover, TruePosition proposed that Defendants review the production TruePosition agreed to produce in response to these six queries and get back to TruePosition with additional requests, if any, they deemed necessary. Defendants again refused to respond to this proposal, filing this motion instead. Defendants' motion to compel the six search queries should therefore be denied as unreasonably burdensome and premature.

I.      **TRUEPOSITION AGREED TO PRODUCE THE REQUESTED DRIVE TESTING RESULT DATA AND HAS SINCE PRODUCED IT.**

When Defendants filed their motion, TruePosition had already agreed to provide all drive testing result packages for TruePosition's two largest customers, AT&T and T-Mobile.  *See* Mot. Ex. 12.[1]  These consisted of summaries of tests plus massive amounts of raw back-up data.  TruePosition has since produced more than 680,000 files containing AT&T and T-Mobile drive testing results data.  This production alone is larger than the productions of Ericsson, Alcatel-Lucent and 3GPP combined.  TruePosition has also produced the other drive testing results it has identified for domestic smaller carriers.  TruePosition never refused to produce this data.[2]  Given the size of the data files, and the burden of production, TruePosition proposed that Defendants review the AT&T and T-Mobile production first to see if they wanted all the additional data.  Defendants never responded to that proposal.

As to the supposed conditions TruePosition has placed on these productions, Defendants have mischaracterized those as well.

First, TruePosition never "demanded" that Defendants refrain from using the data to show whether the technology meets the FCC's requirements.  Mot. at 10.  TruePosition provided Defendants with the caveats under which the carrier customers – the owners of the data – gave

---

[1]      "Mot." refers to Defendants' Motion to Compel (Dkt. 253) and "Mot. Ex." refers to the Exhibits to the Declaration of Benjamin H. Diessel (Dkt. 253-4).

[2]      TruePosition's statement that "this production would be in final resolution of the drive testing document request (Request 3)" was not a refusal to produce the data of secondary smaller carriers.  In the very next sentence of its letter, TruePosition made it clear that it would entertain "narrow follow-up requests" on this issue.  *See* Mot. Ex. 12 at 1.  TruePosition was merely indicating that it would not, in addition to making the gargantuan production it did, make additional productions based upon an expanded set of search terms for this Request.  *See* Mot. Ex. 12 at 3 (when discussing search terms for Request 3, TruePosition wrote: "Given the proposal to produce the drive test data as discussed above, we would continue to run our November 15 counter-proposal [for Request 3].").

3

permission to TruePosition to produce the data: (i) that this data did not reflect the carriers' compliance with the FCC's E911 requirements; and (ii) that the carriers did not intend to validate the data produced by TruePosition. These caveats are important to preserve foundational facts, from the owners of the data, regarding the purpose and uses of the data, and whether the data have been validated for any purpose.

Second, with respect to the format of the production, TruePosition merely proposed modified production parameters that would minimize the cost and burden of review and production (i.e. production in native, processing at the parent level, etc.). *See* Mot. Ex. 12 at 2.[3] Again, Defendants did not respond to these proposals but filed this motion to compel.

Defendants' motion to compel regarding drive testing should be denied as moot since the results have now been produced in their entirety (including for smaller carriers) and without any substantive limitations on Defendants' use of this data going forward. If Defendants have technical difficulties with the data, they should address them directly with TruePosition, as TruePosition attempted to do preemptively in the meet-and-confer process, and not as part of a motion to compel.

---

[3]    TruePosition made its processing proposal as a means to reduce the immense infeasible burden and expense of processing and Bates-stamping every page of the 680,000 files, proposing instead that the parties exchange individual documents that the Defendants wished to use in this proceeding. This is a procedure that mirrors an agreement reached between TruePosition and 3GPP with respect to production of the entire 3GPP website. Defendants did not even respond to this reasonable administrative proposal. TruePosition also asked that Defendants be responsible for acquiring the appropriate software to open the files that require special software, *because that is what Defendants said they would do during a telephonic meet-and-confer with TruePosition*. When TruePosition explained that the drive testing production contained various file types that may be difficult to open, Defendants asked for all of them and indicated that "between all of the Defendants" they would undoubtedly have access to all the required software to open the files and that TruePosition should therefore simply burn the files on a disk.

## II. TRUEPOSITION HAS AGREED TO RUN REASONABLE SEARCH QUERIES FOR THE SIX REQUESTS AT ISSUE.

With respect to their motion on the six disputed search queries, Defendants are similarly misrepresenting TruePosition's position by insinuating that TruePosition has refused outright to run *any* search queries in response to Defendants' requests. That is simply not correct.

To the contrary, TruePosition *has* agreed to run searches with the search terms Defendants have requested; but in order to address burden concerns, TruePosition has offered to run them with reasonable proximity connectors. In rejecting these proximity connectors, Defendants are attempting to impose additional burdens and delays on TruePosition's ability to complete its production. Not including reasonable proximity connectors will result in needless attorney review of more than a 130,000 documents with likely no incremental production benefit. This would be in addition to the over 300,000 documents that hit the six queries that TruePosition has already agreed to run and that it has agreed to review. TruePosition proposed that after making its production, Defendants come back and make any follow-up requests they deem necessary. *See* Mot. Ex. 12 at 4. Defendants ignored this invitation.

To be clear, for five of the six queries in dispute, the only disagreement between the parties relates to the scope of the proximity connector (i.e. AND, within 50 words, within 100 words, etc.) for the query, *not the actual terms in the query*.[4] *See* Sahakian Decl. at 2-13.[5] For instance for Request 12, which seeks documents regarding customer complaints, TruePosition agreed to search for U-TDOA (and multiple variations thereof) within 50 words of 25 different terms including such generic terms as complain*, cost*, price*, pricing, inaccura*, disrupt*,

---

[4] The sixth query that was in dispute concerns the drive test data (Request 3) in response to which Defendants have already received over 680,000 files of drive testing results data.

[5] "Sahakian Decl." refers to the Declaration of Taline Sahakian in Support of TruePosition's Opposition to Defendants' Motion to Compel Document Discovery and the paragraphs thereto.

dispute*, satisf* or dissatisf*.  *Id.* at 10.  Defendants insist on using an "AND" connector and thus want TruePosition to search for and review any document where any one of these 25 terms appears *anywhere* in a document containing the U-TDOA terminology.  *Id.* at 11.  Queries 6, 8, 9 and 13 raise similar proximity connector issues.  *See* Sahakian Decl. at 2-13.

The difference in hit rates between TruePosition's agreed-upon queries and Defendants' unreasonably expanded queries would unnecessarily increase the required review by more than 130,000 additional documents from the more than 300,000 documents that already hit the six queries TruePosition has already agreed to run.  *See* Sahakian Decl. at 14.  Yet, it would likely not result in any incremental benefit to Defendants.  For instance, if a customer is complaining about the cost of U-TDOA or is dissatisfied with the technology – U-TDOA within 50 words of complain* or cost* or dissatisfy* will almost certainly capture the responsive documents for review without needing to look at every document where those terms appear anywhere.  There is no legitimate need for expanding this search to cover every document where these terms appear anywhere in the document.

Defendants' insistence on expanded searches does not meet the proportionality standard of Federal Rule of Civil Procedure 26.  Under Rule 26, a court must consider whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(iii).  Here, the Court should limit Defendants' effort to expand the search queries since TruePosition's agreed upon search queries are more than sufficient to ensure that TruePosition will produce the documents covered by the document requests and the additional burden outweighs the likely benefit of expanding the search queries.

The Court should allow TruePosition to complete its document review of the documents identified by the agreed-upon existing search queries and, if Defendants have follow-up requests after reviewing the produced documents, they should address them to TruePosition in due course.  This is precisely what TruePosition proposed, and Defendants failed to respond to, during the meet-and-confer process.

## **CONCLUSION**

For all of the foregoing reasons, Defendants' Joint Motion to Compel TruePosition should be denied with respect to the additional search terms and should be deemed moot with respect to the drive testing data.

Dated:  January 27, 2014

Respectfully submitted,

s/John G. Harkins, Jr.
John G. Harkins, Jr. (Atty. I.D. 04441)
Colleen Healy Simpson (Atty.  I.D. 84956)
HARKINS CUNNINGHAM LLP
4000 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103-7044
(215) 851-6700

Douglas E. Rosenthal
Seth D. Greenstein
Allison Sheedy
David Golden
Nneka Ukpai
CONSTANTINE CANNON LLP
1301 K Street, NW, Suite 1050 East Tower
Washington, D.C. 20005
(202) 204-3500

Gordon Schnell
Alysia Solow
Jean Kim
Axel Bernabe
Taline Sahakian
Daniel Vitelli
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, N.Y. 10017
(212) 350-2700

Stuart Salen
Shelby Haverson
TRUEPOSITION, INC.
1000 Chesterbrook Blvd., Suite 200
Berwyn, PA 19312
(610) 680-1000

**CERTIFICATE OF SERVICE**

I, Evelyn R. Protano, hereby certify that on January 27, 2014 I caused true and correct copies of TruePosition's Opposition to Defendants' Motion to Compel Document Discovery, and the Declaration of Taline Sahakian in support thereof, to be served upon the following by ECF and e-mail:

Stephen W. Armstrong
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
sarmstrong@mmwr.com

Steven E. Bizar
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Ste. 3200
Philadelphia, PA 19102-2555
steven.bizar@bipc.com

Robert N. Feltoon
Conrad O'Brien PC
1500 Market Street
Centre Square West Tower, Ste. 3900
Philadelphia, PA 19102-2100
rfeltoon@conradobrien.com

Francis P. Newell
Peter Michael Ryan
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
fnewell@cozen.com
pryan@cozen.com

Kevin J. Arquit
Peri L. Zelig
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954
karquit@stblaw.com
pzelig@stblaw.com

Roger G. Brooks
Gary A. Bornstein
Yonatan Even
John D. Biancamano
Benjamin H. Diessel
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, N.Y. 10019-7475
rbrooks@cravath.com
gbornstein@cravath.com
yevens@cravath.com
jbiancamano@cravath.com
bdiessel@cravath.com

Derek Care
Richard S. Taffet
Trevor C. Wilmot
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689
derek.care@bingham.com
richard.taffet@bingham.com
trevor.wilmot@bingham.com

William S.D. Cravens
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, DC 20006-1806
william.cravens@bingham.com

Conor A. Reidy
Peter C. Thomas
Andrew Winerman
Simpson Thacher & Bartlett LLP
1155 F Street, N.W.
Washington, DC 20004
CReidy@stblaw.com
pthomas@stblaw.com
awinerman@stblaw.com

2

        Ali M. Stoeppelwerth
        Brian Boynton
        Perry Lange
        Wilmer Cutler Pickering Hale and Dorr LLP
        1875 Pennsylvania Avenue, NW
        Washington, DC 20006
        ali.stoeppelwerth@wilmerhale.com
        brian.boynton@wilmerhale.com
        perry.lange@wilmerhale.com


                                                                       s/ Evelyn R. Protano
                                                                       Evelyn R. Protano